**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **Americans For Fair Patent Use, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:10-cv-237** |
| | § | **JURY** |
| **Sprint Nextel Corp., Sprint Spectrum L.P., Apple Inc., Cellco Partnership d/b/a Verizon Wireless, and Samsung Telecommunications America, LLC** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## COMPLAINT FOR FALSE PATENT MARKING

Plaintiff Americans for Fair Patent Use, LLC ("AFPU") files this complaint against Defendants Sprint Nextel Corp. and Sprint Spectrum L.P. (collectively "Sprint"), Apple Inc. ("Apple"), Cellco Partnership d/b/a Verizon Wireless ("Verizon"), and Samsung Telecommunications America, LLC ("STA") and alleges as follows:

## NATURE OF THE ACTION

1.       This is an action for false patent marking arising under 35 U.S.C. § 292.

2.       As set forth in detail below, Sprint, Apple, Verizon and STA have repeatedly violated 35 U.S.C. § 292(a) by falsely marking numerous products with expired patents or patents that do not cover the marked products with the intent to deceive the public about the patent coverage for their products.

3.     AFPU seeks an award of monetary damages from the Defendants, one-half of which shall be paid to the United States pursuant to 35 U.S.C. § 292(b).

4.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332, 1338(a), and 1355(a).

## BACKGROUND

5.     Sprint, Apple, Verizon, and STA have violated 35 U.S.C. § 292(a) (the "False Marking Statute") by marking unpatented articles with the intent to deceive the public.

6.     More specifically, Sprint, Apple, Verizon and STA, with the intent to deceive the public, marked products with patents that are and were expired and, therefore, do not and could not cover the marked products.

7.     Additionally, Sprint and Verizon, with the intent to deceive the public, marked numerous products with patent numbers that do not cover the marked products.

8.     The marking and false marking statutes exist to give the public notice of patent rights.  Congress intended the public to rely on marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design.  *Clontech Laboratories, Inc. v. Invitrogen corp.*, 406 F.3d 1347, 1356 (Fed. Cir. 2005)

9.     Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas which are, in reality, a part of the public domain.  *Wine Ry. Appliance Co. v. Enterprise Ry. Equipment Co.*, 297 U.S. 387, 397 (1936).

10.     Acts of false marking deter innovation and stifle competition in the marketplace. *Forest Group, Inc. v. BonTool Co.*, 590 F.3d 1295, 1302 (Fed. Cir. 2009).  If an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market.  *Id.* at 1303.  False marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement.  *Id.*  False marking can

cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.  *Id.*

11.     Furthermore, false marking misleads the public into believing that a patentee controls the article in question (as well as like articles), and places the risk of determining whether the article is controlled on the public rather than the manufacturer or seller of the article, thereby increasing the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article.  *Clontech Laboratories, Inc. v. Invitrogen corp.*, 406 F.3d 1347, 1356-57 (Fed. Cir. 2005).

12.     Thus, in each instance where it is represented that an article is patented, a member of the public desiring to participate in the market for the marked article must incur the cost of determining whether the involved patents are valid and enforceable.  *Clontech*, 406 F.3d at 1356 n.6.  Failure to take on the costs of a reasonably competent search for information necessary to interpret each patent, investigation into prior art and other information bearing on the quality of the patents, and analysis thereof can result in a finding of willful infringement, which may treble the damages an infringer would otherwise have to pay.  *Id.*

13.     False markings may also create a misleading impression that the falsely marked product is technologically superior to previously available products, as articles bearing the term "patent" may be presumed to be novel, useful, and innovative.

14.     The False Marking Statute explicitly permits *qui tam* actions.  *Forest Group*, 590 F.3d at 1303.  Indeed, Congress's interest in preventing false marking was so great that it enacted a statute which sought to encourage parties to enforce the statute.  *Id.*  By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking.  *Id.* at 1303-4.

15.     Under 35 U.S.C. § 292, intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so.  *Clontech*, 406 F.3d at 1352.  Intent to deceive, while subjective in nature, is established in law by objective criteria.  *Id.*

16.     Furthermore, the mere assertion by a party that it did not intend to deceive will not suffice to escape statutory liability.  *Clontech*, 406 F.3d at 1352.  Such an assertion, standing alone, is worthless as proof of no intent to deceive where there is knowledge of falsehood.  *Id.*

17.     AFPU, on its own behalf and on behalf of the United States, seeks an award of monetary damages of $500 for each of Defendants' violations of 35 U.S.C. § 292(a), one-half of which shall be paid to the United States pursuant to 35 U.S.C. § 292(b).

## PARTIES

18.     AFPU is a Texas limited liability company and has its principal place of business at 5113 S.W. Parkway, Suite 140, Austin, Texas 78735.

19.     AFPU was established by F&B LLP to encourage the fair use of the patent system and deter abuse of the patent system, which harms the public welfare and stifles competition.

20.     Sprint's, Apple's, Verizon's and STA's false marking are examples of such harmful conduct.  AFPU represents the interests of the public against misuses of patents and the patent system by commercial entities, such as Sprint, Apple, Verizon and STA.

### *Sprint*

21.     Sprint Nextel is a corporation organized and existing under the laws of the State of Kansas and has its principal place of business at 200 S.W. 30th Street, Topeka, Kansas.

22.     On information and belief, Sprint Nextel has, or regularly retains, sophisticated legal counsel, and their legal counsel includes both in-house and outside lawyers.

23.     On information and belief, Sprint Nextel has a large in-house legal department with numerous patent lawyers.

24.     Sprint Nextel owns numerous patents and patent applications, and Sprint Nextel's intellectual property is of material importance to it.  Sprint Nextel Corp. Form 10-K for FY 2009.

25.     On information and belief, Sprint Nextel knows that patents expire and an expired patent cannot protect any product from competition.

26.     On information and belief, Sprint Nextel is aware of the False Marking Statute and knows that intentionally marking products with an expired patent or a patent that does not cover the product is a violation of that statute.

27.     Sprint Spectrum L.P. is a limited partnership organized under the laws of the State of Delaware and has its principal place of business at in Overland Park, Kansas.

28.     On information and belief, Sprint Spectrum has, or regularly retains, sophisticated legal counsel.  Their legal counsel includes both internal lawyers and external lawyers.

29.     On information and belief, Sprint Spectrum knows that patents expire and an expired patent cannot protect any product from competition.

30.     On information and belief, Sprint Spectrum is aware of the False Marking Statute and knows that intentionally marking products with an expired patent or a patent that does not cover the product is a violation of that statute.

## *Apple*

31.     Apple is a corporation organized and existing under the laws of the State of California and has its principal place of business at One Infinite Loop, Cupertino, CA 95014.

32.     Apple has, or regularly retains, sophisticated legal counsel.  Their legal counsel includes both internal lawyers and external lawyers.

33.     On information and belief, Apple has a large internal legal department with numerous patent lawyers.

34. Apple regularly files patent applications and is currently pursuing thousands of patent applications around the world. Form 10-K, Apple Inc. (2009).

35. Apple has a patent portfolio of several thousand issued patents in the United States and worldwide. Form 10-K, Apple Inc. (2009).

36. Apple was sued 27 times during the 2009 fiscal year for patent infringement, and as of the end of the 2009 fiscal year, Apple was defending against 47 patent infringement claims. Form 10-K, Apple Inc. (2009).

37. On information and belief, Apple knows that patents expire and an expired patent cannot protect any product from competition.

38. On information and belief, Apple is aware of the False Marking Statute and that intentionally marking products with an expired patent is a violation of that statute.

### *Verizon*

39. Verizon is a general partnership organized and existing under the laws of the State of Delaware and has its principal place of business at One Verizon Way, Basking Ridge, New Jersey 07920.

40. On information and belief, Verizon has, or regularly retains, sophisticated legal counsel.

41. Verizon owns or licenses numerous patents in the United States. Cellco Partnership 10-K for FY 2009.

42. On information and belief, Verizon knows that patents expire and an expired patent cannot protect any product from competition.

43. On information and belief, Verizon is aware of the False Marking Statute and knows that intentionally marking products with an expired patent or a patent that does not cover the product is a violation of that statute.

*STA*

44.     STA is a limited liability company and has its headquarters at 1301 E. Lookout Drive, Richardson, Texas, 75082.

45.     On information and belief, STA has, or regularly retains, sophisticated legal counsel.

46.     On information and belief, STA knows that patents expire and an expired patent cannot protect any product from competition.

47.     On information and belief, STA is aware of the False Marking Statute and knows that intentionally marking products with an expired patent or a patent that does not cover the product is a violation of that statute.

## PERSONAL JURISDICTION

*Sprint*

48.     Sprint regularly conducts business in this judicial district.

49.     Sprint sells (directly through its website, and through numerous retail stores, for example the Sprint stored located at 103 West Loop 281, Suite 304 in Longview, Texas) products in this judicial district or has purposefully shipped products to this judicial district through established distribution channels.

50.     Sprint is subject to personal jurisdiction in this judicial district because it has sufficient minimum contacts with the forum as a result of business conducted within the State of Texas and within the Eastern District of Texas.

51.     Sprint has systematic and continuous contact with this judicial district.

*Apple*

52.     Apple regularly conducts business in this judicial district.

53.     Apple sells products, such as the iPhone (directly through its website, www.apple.com, and through partner retailers, such as Wal-Mart, which have numerous stores in

this district, for example the Wal-Mart store located at 1701 E. End Blvd. N., Marshall, Texas 75670), in this judicial district and has purposefully shipped products to this judicial district through established distribution channels.

54.     Apple is subject to personal jurisdiction in this judicial district because it has sufficient minimum contacts with the forum as a result of business conducted within the State of Texas and within the Eastern District of Texas.

55.     Apple has systematic and continuous contact with this judicial district.

## *Verizon*

56.     Verizon regularly conducts business in this judicial district.

57.     Verizon sells (directly through its website, and through numerous retail stores, for example the Verizon stored located at 1006 E. End Blvd. N., Suite A, Marshall, TX 75670) products in this judicial district or has purposefully shipped products to this judicial district through established distribution channels.

58.     Verizon is subject to personal jurisdiction in this judicial district because it has sufficient minimum contacts with the forum as a result of business conducted within the State of Texas and within the Eastern District of Texas.

59.     Verizon has systematic and continuous contact with this judicial district.

60.     Venue is proper in the Eastern District of Texas under 28 U.S.C. §§ 1391 (b)-(c) and 1395 (a).

## *STA*

61.     STA regularly conducts business in this judicial district.

62.     STA has its headquarters in this district.

63.     STA has a customer care center in this district at 1000 Klein Road, Plano, Texas, 75074.

64.     STA is subject to personal jurisdiction in this judicial district because it has sufficient minimum contacts with the forum as a result of business conducted within the State of Texas and within the Eastern District of Texas.

65.     STA has systematic and continuous contact with this judicial district.

66.     Venue is proper in the Eastern District of Texas under 28 U.S.C. §§ 1391 (b)-(c) and 1395 (a).

## THE FALSELY MARKED PATENTS

67.     U.S. Patent D367,062 claims the ornamental design for an antenna as exemplified below:


Ex. A.

68.     U.S. Patent D372,248 claims the ornamental design for a communication device as exemplified below:



Ex. B.

69.     U.S. Patent D372,701 claims the ornamental design for a shrink wrap battery pack as exemplified below:



Ex. C.

70.     U.S. Patent D416,857 claims the ornamental design for a battery housing for a PCMCIA card modem as exemplified below:



Ex. D.

71.     U.S. Patent D442,170 claims the ornamental design for connector for an antenna as exemplified below:



Ex. E.

72.     U.S. Patent D452,495 claims the ornamental design for a wireless communication device for a personal data assistant as exemplified below:



Ex. F.

73.     U.S. Patent D452,496 claims the ornamental design for a wireless communication device for a personal data assistant as exemplified below:



Ex. G.

74.     U.S. Patent D459,303 claims the ornamental design for an audio connector for a PC Card as exemplified below:



Ex. H.

75.     U.S. Patent D559,256 claims the ornamental design for a wireless electronic communications card as exemplified below:



FIG. 1                    Ex. I.

76.     U.S. Patent D560,911 claims the ornamental design for a carrying case for an electronic communications card as exemplified below:



FIG. 4                    Ex. J.

77.     The application that became US Patent 4,577,216 (the "'216 patent") was filed on November 14, 1983 and issued as a patent on March 18, 1986.  Ex. K.

78.     U.S. Patent 4,577,216 expired November 14, 2003.

79.     The application that became US Patent 4,631,603 (the "'603 patent") was filed on April 17, 1985 and issued as a patent on December 23, 1986.  Ex. L.

80.     U.S. Patent 4,631,603 expired of April 17, 2005.

81.     The application that became US Patent 4,819,098 (the "'098 patent") was filed on April 14, 1987, claimed priority to an application filed November 23, 1983, and issued as a patent on April 4, 1989.  Ex. M

82.     U.S. Patent 4,819,098 expired April 4, 2006.

83.     The application that became US Patent 4,907,093 (the "'093 patent") was filed on November 1, 1988, claimed priority to an application filed August 11, 1986, and issued as a patent on March 6, 1990.  Ex. N.

-12-

84.     U.S. Patent 4,907,093 expired March 6, 2007.

85.     The application that became U.S. Patent 4,901,307 (the "'307 patent") was filed on October 17, 1986 and issued on February 13, 1990.  Ex. O

86.     The '307 patent expired February 13, 2007.

87.     The application that became U.S. Patent 5,056,109 (the "'109 patent") was filed on November 7, 1989 and issued on October 8, 1991.  Ex. P.

88.     The '109 patent expired November 7, 2009.

89.     The application that became U.S. Patent 5,101,501 (the "'501 patent") was filed on November 7, 1989 and issued on March 31, 1992.  Ex. Q.

90.     The '501 patent expired November 7, 2009.

91.     The application that became U.S. Patent 5,109,390 (the "'390 patent") was filed on November 7, 1989 and issued on April 28, 1992.  Ex. R.

92.     The '390 patent expired November 7, 2009.

93.     Placing a patent number in a user guide or user manual (or the equivalent thereto) which is sold with and accompanies a product provides constructive notice to the public under 35 U.S.C. § 287 that the product is covered by that patented.

94.     Placing a patent number on the packaging for a product provides constructive notice under 35 U.S.C. § 287 to the public that the product is covered by that patent.

95.     An expired patent cannot be infringed.

96.     An expired patent does not provide patent protection.

97.     A product marked with the patent number of a patent after that patent has expired is falsely marked.  *Pequignot v. Solo Cup Co.*, No. 2009-1547, --- F.3d ----, 2010 WL 2346649, at *5 (Fed. Cir. June 10, 2010).

98.     An expired patent does not provide any rights to exclude competition.

## SPRINT'S FALSE MARKING OF ITS PRODUCTS

99.     On information and belief, Sprint sells, offers to sell, has sold and/or has offered to sell the following products, which it has falsely marked with one or more expired or inapplicable patents within the last five years in the United States or continues to falsely mark with one or more expired or inapplicable patents in the United States: Ovation U727; AirCard 550; AirCard 580; AirCard 595; AirCard 595U; AirCard 597E; AirCard 402; Compass 597; 598U; Overdrive 3G/4G Hotspot; Merlin C777; and Airave (collectively the "Sprint Data Products").

100.    The AirCard 580, AirCard 595, AirCard 595U, AirCard 597E, AirCard 402, Compass 597, 598U, and Overdrive 3G/4G Hotspot do not and have never included an antenna connector as claimed in U.S. Patent D442,170.

101.    The AirCard 580, AirCard 595, AirCard 595U, AirCard 597E, AirCard 402, Compass 597, 598U, and Overdrive 3G/4G Hotspot do not and have never included an audio connector as claimed in U.S. Patent D459,303.

102.    A portion of the AirCard 550 is covered by US. Patent D459,303.

103.    The antenna sold with and included in the packaging for the AirCard 550 is covered by U.S. Patent D442,170.

104.    The Sprint Data Products do not and never have included the carrying case claimed in U.S. Patent D560,911.

### *Ovation U727*

105.    On information and belief, Sprint first began selling the Ovation U727 on or about September 27, 2007.

106.    Sprint marked the packaging of the Ovation U727 with the following, or similar, copyright and patent notices:

**Patent Notice**

be purchased separately. Operates within the CDMA network. This device will not op... ...
Licensed by QUALCOMM® Incorporated under one or more of the following United States Patents and/or their counterparts in other
nations: 4,901,307 5,490,165 5,056,109 5,504,773 5,101,501 5,506,865 5,109,390 5,511,073 5,228,054 5,535,239 5,267,261 5,544,196
5,267,262 5,568,483 5,337,338 5,600,754 5,414,796 5,657,420 5,416,797 5,659,569 5,710,784 5,778,338 Patents Pending

**Copyright Notice**

©2007 Sprint Nextel. All rights reserved.

107.    The '307 patent expired prior to Sprint's first sale of any Ovation U727.

108.    Sprint marked the packaging of the Ovation U727 with the patent number of the '307 patent after it expired.

109.    Sprint sold Ovation U727s with the packaging marked with the patent number of the '307 patent after it expired.

110.    Because the '307 patent expired before Sprint's first sale of any Ovation U727, Sprint did not have and never could have had a reasonable belief that the '307 patent covered the Ovation U727.

111.    Sprint falsely marked the Ovation U727 with the expired '307 patent with intent to decieve the public.

*The AirCard 550*

112.    On information and belief, Sprint sold the AirCard 550 beginning on or about November 18, 2002 through approximately early 2006.

113.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the AirCard 550 containing the following, or similar, copyright and patent notices:

**Patent Notice**

**Patents**

Portions of this product are covered by some or all of the following US patents:

| | | | |
|---|---|---|---|
| 5,515,013 | 5,617,106 | 5,629,960 | 5,682,602 |
| 5,748,449 | 5,845,216 | 5,847,553 | 5,878,234 |
| 5,890,057 | 5,929,815 | 6,169,884 | 6,191,741 |
| 6,199,168 | 6,327,154 | 6,339,405 | D367,062 |
| D372,248 | D372,701 | D416,857 | D442,170 |
| D452,495 | D452,496 | and other patents pending. | |

This product includes technology licensed from QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:

**QUALCOMM®**
**3G CDMA**

| | | | |
|---|---|---|---|
| 4901307 | 5056109 | 5101501 | 5109390 |
| 5228054 | 5267261 | 5267262 | 5337338 |
| 5414796 | 5416797 | 5490165 | 5504773 |
| 5506865 | 5511073 | 5535239 | 5544196 |
| 5568483 | 5600754 | 5657420 | 5659569 |
| 5710784 | 5778338 | | |

**Copyright Notice**

**Copyright**

Copyright © 2003 Sprint Spectrum L.P. All rights reserved. No reproduction in whole or in part without prior written approval.

©2003 Sierra Wireless, Inc. All rights reserved.

Document 2130185 Rev 4.1 (Nov.03)

114.   The AirCard 550 is not covered by any of U.S. Patent Nos. D367,062; D372,248; D372,701; D416,857; D452,495; D452,496.

115.   An ordinary observer would not believe that the AirCard 550 is covered by any of U.S. Patent Nos. D367,062; D372,248; D372,701; D416,857; D452,495; D452,496.

116.   The AirCard 550 does not include a battery.

117.   The AirCard 550 does not include a battery pack.

118.   The AirCard 550 does not include a battery housing.

119.    Sprint falsely marked the AirCard 550 with U.S. Patent Nos. D367,062; D372,248; D372,701; D416,857; D452,495; D452,496 with intent to deceive the public.

*The AirCard 580*

120.    On information and belief, Sprint sold the AirCard 580 beginning on or about March 3, 2005 and continuing through approximately mid 2007.

121.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the AirCard 580 containing the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

Portions of this product are covered by some or all of the following US patents:

| | | | | |
|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,682,602 | 5,845,216 | 5,847,553 |
| 5,878,234 | 5,890,057 | 5,929,815 | 6,169,884 | 6,191,741 |
| 6,199,168 | 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 |
| 6,561,851 | 6,643,501 | 6,653,979 | 6,697,030 | 6,785,830 |
| 6,845,249 | 6,847,830 | 6,876,697 | 6,879,585 | D442,170 |
| D459,303 | | | | |

and other patents pending.

Licensed by QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:      QUALCOMM®
                                                                                3G CDMA

| | | | | |
|---|---|---|---|---|
| 4901307 | 5056109 | 5101501 | 5109390 | 5228054 |
| 5267261 | 5267262 | 5337338 | 5414796 | 5416797 |
| 5490165 | 5504773 | 5506865 | 5511073 | 5535239 |
| 5544196 | 5568483 | 5600754 | 5657420 | 5659569 |
| 5710784 | 5778338 | | | |

Manufactured or sold by Sierra Wireless Inc., its Affiliates, or its Licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

## Copyright

© 2005 Sprint Nextel. All rights reserved. No reproduction in whole or in part without prior written approval. Sprint, the "Going Forward" logo, the NEXTEL name and logo, and all other trademarks are trademarks of Sprint Nextel.

©2005 Sierra Wireless. All rights reserved.

Document 2130612 Revision 1.0

122.    The AirCard 580 is not covered by either U.S. Patent No. D459,303 or D442,170.

123.    An ordinary observer would not believe that the AirCard 580 is covered by either U.S. Patent No. D459,303 or D442,170.

124.    Sprint falsely marked the AirCard 580 with U.S. Patent Nos. D459,303 and D442,170 with intent to deceive the public.

### *The AirCard 595*

125.    On information and belief, Sprint sold the AirCard 595 beginning on or about September 12, 2006, and continuing until mid-2009.

126.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the AirCard 595 containing the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

Portions of this product are covered by some or all of the following US patents:

| | | | | |
|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 |
| 5,890,057 | 5,929,815 | 6,169,884 | 6,191,741 | 6,199,168 |
| 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 | 6,561,851 |
| 6,643,501 | 6,653,979 | 6,697,030 | 6,785,830 | 6,845,249 |
| 6,847,830 | 6,876,697 | 6,879,585 | 6,886,049 | 6,986,171 |
| 6,985,757 | 7,023,878 | D442,170 | D459,303 | |

and other patents pending.

Licensed by QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:

QUALCOMM®
3G CDMA

| | | | | |
|---|---|---|---|---|
| 4901307 | 5056109 | 5101501 | 5109390 | 5228054 |
| 5267261 | 5267262 | 5337338 | 5414796 | 5416797 |
| 5490165 | 5504773 | 5506865 | 5511073 | 5535239 |
| 5544196 | 5568483 | 5600754 | 5657420 | 5659569 |
| 5710784 | 5778338 | | | |

Manufactured or sold by Sierra Wireless or its licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

**Copyright**

© 2006 Sprint Nextel. All rights reserved. No reproduction in whole or in part without prior written approval. Sprint, the "Going Forward" logo, and other trademarks are trademarks of Sprint Nextel.

©2006 Sierra Wireless. All rights reserved.

Document 2130685 Revision 1.1

127.    The AirCard 595 is not covered by either U.S. Patent No. D459,303 or D442,170.

128.    An ordinary observer would not believe that the AirCard 595 is covered by either U.S. Patent No. D459,303 or D442,170.

129.    Sprint falsely marked the AirCard 595 with U.S. Patent Nos. D459,303 and D442,170 with intent to deceive the public.

*The AirCard 595U*

130.    On information and belief, Sprint sold the AirCard 595U beginning on or about April 22, 2007, and continuing until early 2009.

131.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the AirCard 595U containing the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

Portions of this product are covered by some or all of the following US patents:

| | | | | |
|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 |
| 5,890,057 | 5,929,815 | 6,169,884 | 6,191,741 | 6,199,168 |
| 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 | 6,561,851 |
| 6,643,501 | 6,653,979 | 6,697,030 | 6,785,830 | 6,845,249 |
| 6,847,830 | 6,876,697 | 6,879,585 | 6,886,049 | 6,986,171 |
| 6,985,757 | 7,023,878 | 7,053,843 | 7,106,569 | D442,170 |
| D459,303 | | | | |

and other patents pending.

Licensed by QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:

**QUALCOMM®
3G CDMA**

| | | | | |
|---|---|---|---|---|
| 4901307 | 5056109 | 5101501 | 5109390 | 5228054 |
| 5267261 | 5267262 | 5337338 | 5414796 | 5416797 |
| 5490165 | 5504773 | 5506865 | 5511073 | 5535239 |
| 5544196 | 5568483 | 5600754 | 5657420 | 5659569 |
| 5710784 | 5778338 | | | |

Manufactured or sold by Sierra Wireless or its licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

## Copyright

©2007 Sprint Nextel. All rights reserved. No reproduction in whole or in part without prior written approval. Sprint, the "Going Forward" logo, and other trademarks are trademarks of Sprint Nextel.

©2007 Sierra Wireless. All rights reserved.

Document 2130751 Revision 2.0

132.   The AirCard 595U is not covered by either U.S. Patent No. D459,303 or D442,170.

133.   An ordinary observer would not believe that the AirCard 595U is covered by either U.S. Patent No. D459,303 or D442,170.

134.   Sprint falsely marked the AirCard 595U with U.S. Patent Nos. D459,303 and D442,170 with intent to deceive the public.

135.   The '307 patent expired before Sprint ever sold a single AirCard 595U.

136.    On information and belief, Sprint sold the AirCard 595U after the expiration of '307 patent and falsely marked such AirCard 595Us with the patent number of the expired '307 patent with intent to deceive the public.

137.    Sprint included the patent number of the '307 in the AirCard 595U user guide or user manual (or the equivalent thereto) after the '307 patent expired.

138.    Sprint sold AirCard 595Us with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

139.    Because the '307 patent expired before Sprint's first sale of any AirCard 595U, Sprint did not have and never could have had a reasonable belief that the '307 patent covered the AirCard 595U.

### *The AirCard 597E*

140.    On information and belief, Sprint sold the AirCard 597E beginning in or about May of 2007 and continuing until mid 2009.

141.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the AirCard 597E containing the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

Portions of this product are covered by some or all of the following US patents:

| | | | | |
|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 |
| 5,890,057 | 5,929,815 | 6,169,884 | 6,191,741 | 6,199,168 |
| 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 | 6,561,851 |
| 6,643,501 | 6,653,979 | 6,697,030 | 6,785,830 | 6,845,249 |
| 6,847,830 | 6,876,697 | 6,879,585 | 6,886,049 | 6,986,171 |
| 6,985,757 | 7,023,878 | 7,053,843 | 7,106,569 | D442,170 |
| D459,303 | | | | |

and other patents pending.

Licensed by QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:

**QUALCOMM® 3G CDMA**

| | | | | |
|---|---|---|---|---|
| 4901307 | 5056109 | 5101501 | 5109390 | 5228054 |
| 5267261 | 5267262 | 5337338 | 5414796 | 5416797 |
| 5490165 | 5504773 | 5506865 | 5511073 | 5535239 |
| 5544196 | 5568483 | 5600754 | 5657420 | 5659569 |
| 5710784 | 5778338 | | | |

Manufactured or sold by Sierra Wireless or its licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

## Copyright

©2007 Sprint Nextel. All rights reserved. No reproduction in whole or in part without prior written approval. SPRINT and other trademarks are trademarks of Sprint Nextel.

©2007 Sierra Wireless. All rights reserved.

Document 2130756 Revision 1.0

142.    The AirCard 597E is not covered by either U.S. Patent No. D459,303 or D442,170.

143.    An ordinary observer would not believe that the AirCard 597E is covered by either U.S. Patent No. D459,303 or D442,170.

144.    Sprint falsely marked the AirCard 597E with U.S. Patent Nos. D459,303 and D442,170 with intent to deceive the public.

145.    The '307 patent expired before Sprint ever sold a single AirCard 597E.

146.    On information and belief, Sprint sold the AirCard 597E after the expiration of '307 patent and falsely marked such AirCard 597Es with the patent number of the expired '307 patent with intent to deceive the public.

147.    Sprint included the patent number of the '307 in the AirCard 597E user guide or user manual (or the equivalent thereto) after the '307 patent expired.

148.    Sprint sold AirCard 597Es with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

149.    Because the '307 patent expired before Sprint's first sale of any AirCard 597E, Sprint did not have and never could have had a reasonable belief that the '307 patent covered the AirCard 597E.

### *The AirCard 402*

150.    On information and belief, Sprint began selling the AirCard 402 on or about April, 22, 2009 and continues to sell the AirCard 402.

151.    Sprint provided user manuals and/or guides (or the equivalent thereto) to customers who purchased the AirCard 402 containing the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

Portions of this product are covered by some or all of the following US patents:

| | | | | | | |
|---|---|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 | 5,890,057 | 5,929,815 |
| 6,169,884 | 6,191,741 | 6,199,168 | 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 |
| 6,561,851 | 6,643,501 | 6,653,979 | 6,697,030 | 6,785,830 | 6,845,249 | 6,847,830 |
| 6,876,697 | 6,879,585 | 6,886,049 | 6,968,171 | 6,985,757 | 7,023,878 | 7,053,843 |
| 7,106,569 | 7,145,267 | 7,200,512 | 7,287,162 | 7,295,171 | D442,170 | D459,303 |
| D559,256 | D560,911 | | | | | |

and other patents pending.

This product includes technology licensed from QUALCOMM* 3G.

Manufactured or sold by Sierra Wireless or its licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

*Copyright*

©2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

152.   The AirCard 402 is not covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

153.   An ordinary observer would not believe that the AirCard 402 is covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

154.   Sprint falsely marked the AirCard 402 with U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911 with the intent to deceive the public.

155.   The '307 patent expired before Sprint ever sold a single AirCard 402.

156.   On information and belief, Sprint sold the AirCard 402 after the expiration of '307 patent and falsely marked such AirCard 402s with the patent number of the expired '307 patent with intent to deceive the public.

157.   Sprint included the patent number of the '307 in the AirCard 402 user guide or user manual (or the equivalent thereto) after the '307 patent expired.

158.   Sprint sold AirCard 402s with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

159.   Because the '307 patent expired before Sprint's first sale of any AirCard 402, Sprint did not have, never could have had, and does not have a reasonable belief that the '307 patent covered the AirCard 402.

160.   The '109, '501 and '390 patents have expired, and Sprint continues to sell the AirCard 402 marked with the patent number of the expired '109, '501 and '390 patents with intent to deceive the public.

*The Compass 597*

161.    On information and belief, Sprint sold the Compass 597 beginning on or about April 1, 2008 and continuing through late 2009.

162.    Sprint provided user manuals and/or guides (or the equivalent thereto) to customers who purchased the Compass 597 containing the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

Portions of this product are covered by some or all of the following US patents:

| | | | | | | |
|---|---|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 | 5,890,057 | 5,929,815 |
| 6,169,884 | 6,191,741 | 6,199,168 | 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 |
| 6,561,851 | 6,643,501 | 6,653,979 | 6,697,030 | 6,785,830 | 6,845,249 | 6,847,830 |
| 6,876,697 | 6,879,585 | 6,886,049 | 6,968,171 | 6,985,757 | 7,023,878 | 7,053,843 |
| 7,106,569 | 7,145,267 | 7,200,512 | 7,287,162 | 7,295,171 | D442,170 | D459,303 |
| D559,256 | D560,911 | | | | | |

and other patents pending

Licensed by QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:

| | | | | | | |
|---|---|---|---|---|---|---|
| 4,901,307 | 5,056,109 | 5,101,501 | 5,109,390 | 5,228,054 | 5,267,261 | 5,267,262 |
| 5,337,338 | 5,414,796 | 5,416,797 | 5,490,165 | 5,504,773 | 5,506,865 | 5,511,073 |
| 5,535,239 | 5,544,196 | 5,568,483 | 5,600,754 | 5,657,420 | 5,659,569 | 5,710,784 |
| 5,778,338 | | | | | | |

Manufactured or sold by Sierra Wireless or its licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

## Copyright

©2008 Sprint Nextel. All rights reserved. No reproduction in whole or in part without prior written approval. SPRINT and other trademarks are trademarks of Sprint Nextel.

©2008 Sierra Wireless. All rights reserved.

163.    The Compass 597 is not covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

164.    An ordinary observer would not believe that the Compass 597 is covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

165.    Sprint falsely marked the Compass 597 with U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911 with intent to deceive the public.

166.    The '307 patent expired before Sprint ever sold a single Compass 597.

167.    Sprint included the patent number of the '307 in the Compass 597 user guide or user manual (or the equivalent thereto) after the '307 patent expired.

168.    Sprint sold Compass 597s with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

169.    On information and belief, Sprint sold the Compass 597 after the expiration of '307 patent and falsely marked such Compass 597s with the patent number of the expired '307 patent with intent to deceive the public.

170.    Because the '307 patent expired before Sprint's first sale of any Compass 597, Sprint did not have and never could have had a reasonable belief that the '307 patent covered the Compass 597.

171.    On information and belief, the '109, '501, and '390 patents have expired, and Sprint continued to sell the Compass 597 marked with the patent number of the expired '109, '501, and '390 patents after their expiration with intent to deceive the public.

### *The 598U*

172.    On information and belief, Sprint began selling the 598U on or about December 17, 2008 and continues to sell the 598U.

173.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the 598U containing the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

Portions of this product are covered by some or all of the following US patents:

| | | | | | | |
|---|---|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 | 5,890,057 | 5,929,815 |
| 6,169,884 | 6,191,741 | 6,199,168 | 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 |
| 6,561,851 | 6,643,501 | 6,653,979 | 6,697,030 | 6,785,830 | 6,845,249 | 6,847,830 |
| 6,876,697 | 6,879,585 | 6,886,049 | 6,968,171 | 6,985,757 | 7,023,878 | 7,053,843 |
| 7,106,569 | 7,145,267 | 7,200,512 | 7,287,162 | 7,295,171 | D442,170 | D459,303 |
| D559,256 | D560,911 | | | | | |

and other patents pending.

Licensed by QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:

| | | | | | | |
|---|---|---|---|---|---|---|
| 4,901,307 | 5,056,109 | 5,101,501 | 5,109,390 | 5,228,054 | 5,267,261 | 5,267,262 |
| 5,337,338 | 5,414,796 | 5,416,797 | 5,490,165 | 5,504,773 | 5,506,865 | 5,511,073 |
| 5,535,239 | 5,544,196 | 5,568,483 | 5,600,754 | 5,657,420 | 5,659,569 | 5,710,784 |
| 5,778,338 | | | | | | |

Manufactured or sold by Sierra Wireless or its licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

## Copyright

©2008 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

©2008 Sierra Wireless. All rights reserved.

174.    The 598U is not covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

175.    An ordinary observer would not believe that the 598U is covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

176.    Sprint falsely marked the 598U with U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911 with intent to deceive the public.

177.    The '307 patent expired before Sprint ever sold a single 598U.

178.    Sprint included the patent number of the '307 in the 598U user guide or user manual (or the equivalent thereto) after the '307 patent expired.

179.    Sprint sold 598Us with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

180.    Sprint sold the 598U after the expiration of '307 patent and falsely marked such 598Us with the patent number of the expired '307 patent with intent to deceive the public.

181.    Because the '307 patent expired before Sprint's first sale of any 598U, Sprint did not have, never could have had, and does not have a reasonable belief that the '307 patent covered or covers the 598U.

182.    On information and belief, the '109, '501, and '390 patents have expired, and Sprint continues to sell the 598U marked with the patent number of the expired '109, '501, and '390 patents with intent to deceive the public.

*Merlin C777*

183.    Sprint has sold and continues to sell Novatel Wireless Merlin C777s ("Merlin C777") which Sprint has falsely marked and falsely marks (by marking the user guides accompanying the products) with the patent number of the expired '307, '390, '501, and '109 patents.

184.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Merlin C777 containing the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

QUALCOMM® 3G CDMA

Licensed by QUALCOMM® Incorporated under one or more of the following Patents:

| | | | | |
|---|---|---|---|---|
| 4,901,307 | 5,490,165 | 5,056,109 | 5,504,773 | 5,101,501 |
| 5,506,865 | 5,109,390 | 5,511,073 | 5,228,054 | 5,535,239 |
| 5,267,261 | 5,544,196 | 5,267,262 | 5,568,483 | 5,337,338 |
| 5,600,754 | 5,414,796 | 5,657,420 | 5,416,797 | 5,659,569 |
| 5,710,784 | 5,778,338 | | | |

**Copyright Notice**

*Copyright*

©2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

185.    The user guide for the Merlin C777 submitted by Novatel Wireless to the United States Federal Communications Commission on March 25, 2009 did not include the patent numbers of the expired '307, '390, '501, and '109 patents. https://fjallfoss.fcc.gov/oetcf/eas/reports/ViewExhibitReport.cfm?mode=Exhibits&RequestTimeout=500&calledFromFrame=N&application_id=170751&fcc_id='PKRNVWCC760'

186.    Sprint did not sell the Merlin C777 prior to August 3, 2009.  8/3/2009 Sprint Press Release.

187.    The '307 patent expired before Sprint ever sold a single Merlin C777.

188.    Sprint included the patent number of the '307 in the Merlin C777 user guide or user manual (or the equivalent thereto) after the '307 patent expired.

189.    Sprint sold Merlin C777s with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

190.    Because the '307 patent expired before Sprint's first sale of any Merlin C777, Sprint did not have, never could have had, and does not have a reasonable belief that the '307 patent covered or covers the Merlin C777.

191.    On information and belief, Sprint falsely marked the Merlin C777s knowingly and with the intent to deceive the public.

*The Overdrive 3G/4G Hotspot*

192.    On information and belief, Sprint first began selling the Overdrive 3G/4G Hotspot on or about January 10, 2010 and continues to sell the product.

193.   Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Overdrive 3G/4G Hotspot containing the following, or similar, copyright and patent notices:

**Patent Notice**

*Patents*

Portions of this product may be covered by some or all of the following US patents:

| | | | | | |
|---|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 | 5,890,057 |
| 5,920,815 | 6,169,884 | 6,191,741 | 6,199,168 | 6,339,405 | 6,359,591 |
| 6,400,336 | 6,516,204 | 6,501,851 | 6,643,501 | 6,653,979 | 6,697,030 |
| 6,785,830 | 6,845,249 | 6,847,830 | 6,876,697 | 6,879,585 | 6,886,049 |
| 6,968,171 | 6,985,757 | 7,023,878 | 7,053,843 | 7,106,569 | 7,145,267 |
| 7,200,512 | 7,287,162 | 7,295,171 | D442,170 | D459,303 | D559,256 |
| D560,911 | | | | | |

and other patents pending.

This product includes technology licensed from QUALCOMM® 3G.

Manufactured or sold by Sierra Wireless Inc. or its Licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

*Copyright*

©2010 Sprint. All rights reserved. No reproduction in whole or in part without prior written approval.

194.   The Overdrive 3G/4G Hotspot is not covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

195.   An ordinary observer would not believe that the Overdrive 3G/4G Hotspot is covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

196.   Sprint falsely marked the Overdrive 3G/4G Hotspot with U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911 with intent to deceive the public.

*Airave*

197.    Sprint has sold and continues to sell the Airave which Sprint has falsely marked and falsely marks (by marking the user guides accompanying the products) with the patent number of the expired '307, '390, '501, and '109 patents.

198.    On information and belief, Sprint first sold the Airave on or about September 17, 2007 and continues to sell the Airave.

199.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Airave containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

User Guide template version 7B (December 2007)

**Copyright Notice**

© 2008 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

10/6/08

200.    On information and belief, the '307 patent expired prior to Sprint's first sale of any Airave.

201.    Sprint included the patent number of the '307 in the Airave user guide or user manual (or the equivalent thereto) after the '307 patent expired.

202.   Sprint sold Airaves with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

203.   Because the '307 patent expired before Sprint's first sale of any Airave, Sprint did not have and never could have had a reasonable belief that the '307 patent covered the Airave.

204.   On information and belief, Sprint falsely marked the Airave knowingly and with the intent to deceive the public.

*Sprint Samsung Phones*

205.   Sprint has sold within the past five years and sells the following Samsung cellular phones which Sprint has falsely marked and falsely marks (by marking the user guides accompanying the products) with the patent number of the expired '307, '390, '501, and '109 patents:  Exclaim; Reclaim; M330; M240; Instinct s30; Moment with Google; Instinct HD; Intrepid; Seek; and Restore (collectively the "Sprint Samsung Phones").

206.   On information and belief, Sprint first began selling the Exclaim in or about June of 2009.

207.   Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Exclaim containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated
under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and
is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat.
6,011,554 and other patents pending.

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other
marks are the property of their respective owners.

208.    On information and belief, Sprint first began selling the Reclaim on or about August 14, 2010.

209.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Reclaim containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated
under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,100 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and
is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat.
6,011,554 and other patents pending.

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

210.   The '307, '109, '501, and '390 patents all expired prior to Sprint's first sale of any Reclaim.

211.   Sprint included the patent numbers of the '307, '109, '501, and '390 patents in the Reclaim user guide or user manual (or the equivalent thereto) after the '307, '109, '501, and '390 patents expired.

212.   Sprint sold Reclaims with accompanying user guides or user manuals which included the patent numbers of the '307, '109, '501, and '390 patents after the '307, '109, '501, and '390 patents expired.

213.   Because the '307, '109, '501, and '390 patents all expired before Sprint's first sale of any Reclaim, Sprint did not have and never could have had a reasonable belief that the '307 patent covered the Reclaim.

214.   On information and belief, Sprint first began selling the M330 on or about September 14, 2009.

215.   Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the M330 containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated
under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and
is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat.
6,011,554 and other patents pending.

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other
marks are the property of their respective owners.

216.    On information and belief, Sprint first began selling the M240 on or about September 8, 2009.

217.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the M240 containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated
under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and
is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat.
6,011,554 and other patents pending.

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

218.    On information and belief, Sprint first began selling the Instinct s30 on or about April 19, 2009.

219.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Instinct s30 containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated
under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and
is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat.
6,011,554 and other patents pending.

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

220.    On information and belief, Sprint first began selling the Moment with Google on or about November 1, 2009.

221.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Moment with Google containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

**Copyright Notice**

©2009 Sprint. SPRINT and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

10/29/09

222.    On information and belief, Sprint first began selling the Instinct HD on or about September 24, 2009.

223.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Instinct HD containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

**Copyright Notice**

©2009 Sprint. SPRINT and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

9/11/09

224.    On information and belief, Sprint first began selling the Intrepid on or about October 7, 2009.

225.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Intrepid containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

User Guide template version 8a_FM (November 2008)

**Copyright Notice**

©2009 Sprint. SPRINT and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

9/29/09

226.    On information and belief, Sprint first began selling the Seek on or about May 11, 2010.

227.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Seek containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated
under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |

5,490,165     5,511,073

T9 Text Input is licensed by Nuance Communications, Inc. and
is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat.
6,011,554 and other patents pending.

User Guide template version 9a_FM (April 2009)

**Copyright Notice**

©2010 Sprint. SPRINT and the logo are trademarks of Sprint.
Other marks are the property of their respective owners.

3/25/10

228.    The '307, '109, '501, and '390 patents all expired prior to Sprint's first sale of any Seek.

229.    Sprint included the patent numbers of the '307, '109, '501, and '390 patents in the Seek user guide or user manual (or the equivalent thereto) after the '307, '109, '501, and '390 patents expired.

230.    Sprint sold Seeks with accompanying user guides/manuals which included the patent numbers of the '307, '109, '501 and '390 patents after the '307, '109, '501, and '390 patents expired.

231.    Because the '307, '109, '501, and '390 patents all expired before Sprint's first sale of any Seek, Sprint did not have and never could have had a reasonable belief that the '307 patent covered the Seek.

232.    On information and belief, Sprint first began selling the Restore on or about June 7, 2010.

233.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Restore containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,223,054 | 5,337,338 |
| | | | |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

User Guide template version 9a_FM (April 2009)

**Copyright Notice**

©2010 Sprint. SPRINT and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

5/13/10

234.    The '307, '109, '501, and '390 patents all expired prior to Sprint's first sale of any Restore.

235.    Sprint included the patent numbers of the '307, '109, '501, and '390 patents in the Restore user guide or user manual (or the equivalent thereto) after the '307, '109, '501, and '390 patents expired.

236.    Sprint sold Restores with accompanying user guides/manuals which included the patent numbers of the '307, '109, '501, and '390 patents after the '307, '109, '501, and '390 patents expired.

237.    Because the '307, '109, '501, and '390 patents all expired before Sprint's first sale of any Restore, Sprint did not have and never could have had a reasonable belief that the '307, '109, '501, and '390 patents covered the Restore.

238.    The '307 patent expired prior to Sprint's first sale of any of the Sprint Samsung Phones.

239.    Sprint included the patent number of the '307 patent in the user guides or user manuals (or the equivalent thereto) for the Sprint Samsung Phones after the '307 patent expired.

240.    Sprint sold Sprint Samsung Phones with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

241.    Because the '307 patent expired before Sprint's first sale of any of the Sprint Samsung Phones, Sprint did not have, and never could have had a reasonable belief that the '307 patent covered any of the Sprint Samsung Phones.

242.    On information and belief, Sprint falsely marked the Sprint Samsung Phones knowingly and with the intent to deceive the public.

### *Sprint LG Phones*

243.    Sprint has sold within the past five years and sells the following LG cellular phones which Sprint has falsely marked and falsely marks (by marking the user guides accompanying the products) with the patent number of the expired '307, '390, '501, and '109 patents: Rumor 2;

Rumor Touch; Lotus; Lotus Elite; LX290; LX370; and Remarq (collectively the "Sprint LG Phones").

244.    On information and belief, Sprint first began selling the Rumor 2 on or about March 12, 2009.

245.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Rumor 2 containing the following, or similar, copyright and patent notices:

**Patent Notice**



*User Guide Proprietary Notice*

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

4,901,307   5,109,390   5,267,262   5,416,797
5,506,865   5,544,196   5,657,420   5,101,501
5,267,261   5,414,796   5,504,773   5,535,239
5,600,754   5,778,338   5,228,054   5,337,338
5,710,784   5,056,109   5,568,483   5,659,569
5,490,165   5,511,073

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

User Guide template version 8a_QX (November 2008)

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

11/11/08

246.    On information and belief, Sprint first began selling the Rumor Touch on or about January 8, 2010.

247.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Rumor Touch containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated
under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and
is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat.
6,011,554 and other patents pending.

User Guide template version 9a_FM (July 2009)

**Copyright Notice**

©2010 Sprint. SPRINT and the logo are trademarks of Sprint.
Other marks are the property of their respective owners.

5/17/10

248.    The '307, '109, '501, and '390 patents all expired prior to Sprint's first sale of any Rumor Touch.

249.    Sprint included the patent numbers of the '307, '109, '501, and '390 patents in the Rumor Touch user guide or user manual (or the equivalent thereto) after the '307, '109, '501, and '390 patents expired.

250.    Sprint sold Rumor Touches with accompanying user guides or user manuals which included the patent numbers of the '307, '109, '501, and '390 patents after the '307, '109, '501, and '390 patents expired.

251.    Because the '307, '109, '501, and '390 patents all expired before Sprint's first sale of any Rumor Touch, Sprint did not have and never could have had a reasonable belief that the '307, '109, '501, and '390 patents covered the Rumor Touch.

252.    On information and belief, Sprint first began selling the Lotus on or about September 10, 2008.

253.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Lotus containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

User Guide template version 8A (August 2008)

**Copyright Notice**

© 2008 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

09/04/08

254.    On information and belief, Sprint first began selling the Lotus Elite on or about January 7, 2010.

255.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Lotus Elite containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

User Guide template version 9a_FM (April 2009)

**Copyright Notice**

©2009 Sprint. SPRINT and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

11/12/09

256.    The '307, '109, '501, and '390 patents all expired prior to Sprint's first sale of any Lotus Elite.

257.    Sprint included the patent numbers of the '307, '109, '501, and '390 patents in the Lotus Elite user guide or user manual (or the equivalent thereto) after the '307, '109, '501, and '390 patents expired.

258.    Sprint sold Lotus Elites with accompanying user guides or user manuals which included the patent numbers of the '307, '109, '501, and '390 patents after the '307, '109, '501, and '390 patents expired.

259.    Because the '307, '109, '501, and '390 patents all expired before Sprint's first sale of any Lotus Elite, Sprint did not have and never could have had a reasonable belief that the '307, '109, '501, and '390 patents covered the Lotus Elite.

260.    On information and belief, Sprint first began selling the LX290 on or about July 13, 2009.

261.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the LX290 containing the following, or similar, copyright and patent notices:

**Patent Notice**

*User Guide Proprietary Notice*

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

4,901,307  5,109,390  5,267,262  5,416,797
5,506,865  5,544,196  5,657,420  5,101,501
5,267,261  5,414,796  5,504,773  5,535,239
5,600,754  5,778,338  5,228,054  5,337,338
5,710,784  5,056,109  5,568,483  5,659,569
5,490,165  5,511,073

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

User Guide template version 8A (August 2008)

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

05/28/09

262.    On information and belief, Sprint first began selling the LX370 on or about June 23, 2009.

263.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the LX370 containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated
under one or more of the following patents:

4,901,307   5,109,390   5,267,262   5,416,797

5,506,865   5,544,196   5,657,420   5,101,501

5,267,261   5,414,796   5,504,773   5,535,239

5,600,754   5,778,338   5,228,054   5,337,338

5,710,784   5,056,109   5,568,483   5,659,569

5,490,165   5,511,073

T9 Text Input is licensed by Nuance Communications, Inc. and is
covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat.
6,011,554 and other patents pending.

User Guide template version 8A (August 2008)

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint.
Other marks are the property of their respective owners.

03/24/09

264.    On information and belief, Sprint first began selling the Remarq on or about March 22, 2010.

265.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Remarq containing the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated
under one or more of the following patents:

4,901,307      5,109,390      5,267,262      5,416,797

5,506,865      5,544,196      5,657,420      5,101,501

5,267,261      5,414,796      5,504,773      5,535,239

5,600,754      5,778,338      5,228,054      5,337,338

5,710,784      5,056,109      5,568,483      5,659,569

5,400,165      5,511,073

T9 Text Input is licensed by Nuance Communications, Inc. and
is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat.
6,011,554 and other patents pending.

User Guide template version 9a_FM (July 2009)

**Copyright Notice**

©2010 Sprint. SPRINT and the logo are trademarks of Sprint.
Other marks are the property of their respective owners.

3/31/10

266.    The '307, '109, '501, and '390 patents all expired prior to Sprint's first sale of any Remarq.

267.    Sprint included the patent numbers of the '307, '109, '501, and '390 patents in the Remarq user guide or user manual (or the equivalent thereto) after the '307, '109, '501, and '390 patents expired.

268.    Sprint sold Remarqs with accompanying user guides/manuals which included the patent numbers of the '307, '109, '501, and '390 patents after the '307, '109, '501, and '390 patents expired.

269.    Because the '307, '109, '501, and '390 patents all expired before Sprint's first sale of any Remarq, Sprint did not have and never could have had a reasonable belief that the '307, '109, '501, and '390 patents covered the Remarq.

270.    The '307 patent expired prior to Sprint's first sale of any of the Sprint LG Phones.

271.    Sprint included the patent number of the '307 patent in the user guides or user manuals (or the equivalent thereto) for the Sprint LG Phones after the '307 patent expired.

272.    Sprint sold Sprint LG Phones with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

273.    Because the '307 patent expired before Sprint's first sale of any of the Sprint LG Phones, Sprint did not have and never could have had a reasonable belief that the '307 patent covered any of the Sprint LG Phones.

274.    On information and belief, Sprint falsely marked the Sprint LG Phones knowingly and with the intent to deceive the public.

*Sprint HTC Phones*

275.    Sprint has sold within the past five years and sells the following HTC cellular phones which Sprint has falsely marked and falsely marks (by marking the user guides accompanying the products) with the patent number of the expired '307, '390, '501, and '109 patents: Snap; Hero with Google; and Touch Pro 2 (collectively the "Sprint HTC Phones").

276.    On information and belief, Sprint first began selling the Snap on or about June 21, 2009.

277.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Snap containing the following, or similar, copyright and patent notices:

**Patent Notice**

This device is licensed under patented keyboard technology of Research In Motion Limited including the following US Patents and foreign counterparts: 6,278,442; 6,396,482; 6,452,588; 6,489,950; 6,611,254; 6,611,255; 6,876,763; 6,873,317; 6,891,529; 6,919,879; 7,056,043; 7,073,964; 7,106,306; 7,113,111; 7,153,049; 7,158,120; 7,227,536; 6,891,529; 7,083,342; 7,096,036; 7,106,306; 7109973; and 7,220,069.

Licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | | | |
|---|---|---|---|---|---|
| 4,901,307 | 5,490,165 | 5,056,109 | 5,504,773 | 5,101,501 | 5,778,338 |
| 5,506,865 | 5,109,390 | 5,511,073 | 5,228,054 | 5,535,239 | 5,710,784 |
| 5,267,261 | 5,544,196 | 5,267,262 | 5,568,483 | 5,337,338 | 5,659,569 |
| 5,600,754 | 5,414,796 | 5,657,420 | 5,416,797 | | |

**Copyright Notice**

## Copyright and Trademark Information

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

278.    On information and belief, Sprint first began selling the Hero with Google on or about October 11, 2009.

279.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Hero with Google containing the following, or similar, copyright and patent notices:

**Patent Notice**

Licensed by QUALCOMM Incorporated under one or more of the following patents:

4,901,307 5,490,165 5,056,109 5,504,773 5,101,501 5,778,338 5,506,865 5,109,390 5,511,073 5,22 8,054
5,535,239 5,710,784 5,267,261 5,544,196 5,267,262 5,568,483 5,33 7,33 8 5,659,569 5,600,754 5,414,796
5,657,420 5,416,797

All other company, product and service names mentioned herein are trademarks, registered trademarks or service marks of their respective owners.

**Copyright Notice**

**4D. Copyright, Trademark, and Proprietary Notices**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

280.    On information and belief, Sprint first began selling the Touch Pro 2 on or about November 2, 2008.

281.    Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Touch Pro 2 containing the following, or similar, copyright and patent notices:

**Patent Notice**

Licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | | | |
|---|---|---|---|---|---|
| 4,901,307 | 5,490,165 | 5,056,109 | 5,504,773 | 5,101,501 | 5,778,338 |
| 5,506,865 | 5,109,390 | 5,511,073 | 5,228,054 | 5,535,239 | 5,710,784 |
| 5,267,261 | 5,544,196 | 5,267,262 | 5,568,483 | 5,337,338 | 5,659,569 |
| 5,600,754 | 5,414,796 | 5,657,420 | 5,416,797 | | |

**Copyright Notice**

**Copyright, Trademark, and Properietary Notices**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

282.    The '307 patent expired prior to Sprint's first sale of any of the Sprint HTC Phones.

283.   Sprint included the patent number of the '307 patent in the user guides or user manuals (or the equivalent thereto) for the Sprint HTC Phones after the '307 patent expired.

284.   Sprint sold Sprint HTC Phones with accompanying user guides/manuals which included the patent number of the '307 patent after the '307 patent expired.

285.   Because the '307 patent expired before Sprint's first sale of any of the Sprint HTC Phones, Sprint did not have and never could have had a reasonable belief that the '307 patent covered any of the Sprint HTC Phones.

286.   On information and belief, Sprint falsely marked the Sprint HTC Phones knowingly and with the intent to deceive the public.

### *Sanyo Phones*

287.   Sprint has sold within the past five years and sells Sanyo PRO-700 cellular phones ("Sanyo Phones") which Sprint has falsely marked and falsely marks (by marking the user guides accompanying the products) with the patent number of the expired '307, '390, '501, and '109 patents.

288.   On information and belief, Sprint first began selling the PRO-700 in or about April of 2008.

289.   Sprint provided user manuals or user guides (or the equivalent thereto) to customers who purchased the PRO-700 containing the following, or similar, copyright and patent notices:

**Patent Notice**

## Phone Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Inccrporated under one or
more of the following patents:

4,901,337  5,109,390  5,267,262  5,416,797

5,506,855  5,544,196  5,657,420  5,101,501

5,267,251  5,414,796  5,504,773  5,535,239

5,600,754  5,778,338  5,228,054  5,337,338

5,710,784  5,056,109  5,568,483  5,659,569

5,490,155  5,511,073

T9 Text Input is licensed by Tegic Communications and is covered by U.S. Pat.
5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents
pending.

Phone Guide template version 7A-VI (June 2007)

**Copyright Notice**

© 2008 Sprint Nextel. All rights reserved. SPRINT and other trademarks
are trademarks of Sprint Nextel. SANYO is a registered trademark of
SANYO Electric Co., Ltd.

290.    The '307 patent expired prior to Sprint's first sale of any PRO-700.

291.    Sprint included the patent number of the '307 in the PRO-700 user guide or user
manual (or the equivalent thereto) after the '307 patent expired.

292.    Sprint sold PRO-700s with accompanying user guides or user manuals which
included the patent number of the '307 patent after the '307 patent expired.

293.    Because the '307 patent expired before Sprint's first sale of any PRO-700, Sprint did
not have and never could have had a reasonable belief that the '307 patent covered the PRO-700.

294.    On information and belief, Sprint falsely marked the Sanyo Phones knowingly and
with the intent to deceive the public.

## APPLE'S FALSE MARKING OF ITS PRODUCTS

295.    Apple sells or has sold in the past five years the following products: the iPod (fifth
generation) (referred to herein as "iPod-5"), the iPod Nano (generations 3-4), the iPod Classic (the
sixth generation iPod), the iPod Touch, and the iPhone.

296.    Apple marked the user manuals, user guides, or product information guides (or the equivalent thereof) which accompanied iPod-5s with U.S. Patent Nos. 4,577,216; 4,631,603; 4,819,098; and 4,907,093.

297.    Apple marked the user manuals, user guides, or product information guides (or the equivalent) which accompanied the third generation iPod Nano, fourth generation iPod Nano, iPod Classic, iPod Touch, and iPhone (collectively the "Apple Products") at various times with U.S. Patent Nos. 4,577,216; 4,631,603; 4,819,098; and 4,907,093.

298.    Upon information and belief, Apple first sold the iPod-5 on or after October 12, 2005.

299.    Upon information and belief, after October 12, 2005, but at least beginning on or about March 28, 2006, Apple provided user manuals, user guides, or product information guides (or the equivalent) to customers who purchased iPod-5s that contained the following, or similar, copyright and patent notice:

© 2006 Apple Computer, Inc. All rights reserved. Apple, the Apple logo, FireWire, iCal, iLife, iPhoto, iPod, iTunes, Mac, Macintosh, and Mac OS are trademarks of Apple Computer, Inc., registered in the U.S. and other countries. Finder, the FireWire logo, and Shuffle are trademarks of Apple Computer, Inc. Apple Store and iTunes Music Store are service marks of Apple Computer, Inc., registered in the U.S. and other countries. Other company and product names mentioned herein are trademarks of their respective companies.

Mention of third-party products is for informational purposes only and constitutes neither an endorsement nor a recommendation. Apple assumes no responsibility with regard to the performance or use of these products. All understandings, agreements, or warranties, if any, take place directly between the vendors and the prospective users. Every effort has been made to ensure that the information in this manual is accurate. Apple is not responsible for printing or clerical errors.

The product described in this manual incorporates copyright protection technology that is protected by method claims of certain U.S. patents and other intellectual property rights owned by Macrovision Corporation and other rights owners. Use of this copyright protection technology must be authorized by Macrovision Corporation and is intended for home and other limited viewing uses only unless otherwise authorized by Macrovision Corporation. Reverse engineering or disassembly is prohibited.

Apparatus Claims of U.S. Patent Nos. 4,631,603, 4,577,216, 4,819,098 and 4,907,093 licensed for limited viewing uses only.

019-0690/3-2006

300.   Upon information and belief, Apple first sold the third generation iPod Nano on or after September 5, 2007.

301.   Upon information and belief, Apple first sold the fourth generation iPod Nano on or after September 9, 2008.

302.   Upon information and belief, Apple provided user manuals, user guides, or product information guides (or the equivalent) to customers who purchased the third or fourth generation iPod Nano that contained one of the following, or similar, copyright and patent notices:

© 2008 Apple Inc. All rights reserved. Apple, the Apple logo, FireWire, iCal, iLife, iPhoto, iPod, iPod Socks, iTunes, Mac, Macintosh, and Mac OS are trademarks of Apple Inc., registered in the U.S. and other countries. Finder, the FireWire logo, and Shuffle are trademarks of Apple Inc. iTunes Store is a service mark of Apple Inc. NIKE is a trademark of NIKE, Inc and its affiliates and is used under license. Other company and product names mentioned herein may be trademarks of their respective companies.

Mention of third-party products is for informational purposes only and constitutes neither an endorsement nor a recommendation. Apple assumes no responsibility with regard to the performance or use of these products. All understandings, agreements, or warranties, if any, take place directly between the vendors and the prospective users. Every effort has been made to ensure that the information in this manual is accurate. Apple is not responsible for printing or clerical errors.

The product described in this manual incorporates copyright protection technology that is protected by method claims of certain U.S. patents and other intellectual property rights owned by Macrovision Corporation and other rights owners. Use of this copyright protection technology must be authorized by Macrovision Corporation and is intended for home and other limited viewing uses only unless otherwise authorized by Macrovision Corporation. Reverse engineering or disassembly is prohibited.

Apparatus Claims of U.S. Patent Nos. 4,631,603, 4,577,216, 4,819,098 and 4,907,093 licensed for limited viewing uses only.

019-1149/01-2008

© 2008 Apple Inc. All rights reserved. Apple, the Apple logo, FireWire, iCal, iLife, iPhoto, iPod, iPod Socks, iTunes, Mac, Macintosh, and Mac OS are trademarks of Apple Inc., registered in the U.S. and other countries. Finder, the FireWire logo, and Shuffle are trademarks of Apple Inc. iTunes Store is a service mark of Apple Inc., registered in the U.S. and other countries. NIKE is a trademark of NIKE, Inc. and its affiliates and is used under license. Other company and product names mentioned herein may be trademarks of their respective companies.

Mention of third-party products is for informational purposes only and constitutes neither an endorsement nor a recommendation. Apple assumes no responsibility with regard to the performance or use of these products. All understandings, agreements, or warranties, if any, take place directly between the vendors and the prospective users. Every effort has been made to ensure that the information in this manual is accurate. Apple is not responsible for printing or clerical errors.

The product described in this manual incorporates copyright protection technology that is protected by method claims of certain U.S. patents and other intellectual property rights owned by Macrovision Corporation and other rights owners. Use of this copyright protection technology must be authorized by Macrovision Corporation and is intended for home and other limited viewing uses only unless otherwise authorized by Macrovision Corporation. Reverse engineering or disassembly is prohibited.

Apparatus Claims of U.S. Patent Nos. 4,631,603, 4,577,216, 4,819,098 and 4,907,093 licensed for limited viewing uses only.

019-1343/2008-09

303.   Upon information and belief, Apple first sold the iPhone on or after June 29, 2007.

304.   By the first quarter of 2009, sales of the Apple iPhone caused Apple's share of the worldwide smartphone sales to reach 10.8 percent.   http://www.gartner.com/it/page.jsp?id=985912

305.   Upon information and belief, Apple provided user manuals, user guides, or product information guides (or the equivalent) to customers who purchased the iPhone that contained the following, or similar, copyright and patent notice:

© 2007 Apple Inc. All rights reserved. Apple, the Apple logo, AirPort, iCal, iLife, iPhoto, iPod, iTunes, Mac, Macintosh, and Mac OS are trademarks of Apple Inc., registered in the U.S. and other countries. Cover Flow, Finder, iPhone, Safari, and Shuffle are trademarks of Apple Inc. iTunes Store and .Mac are service marks of Apple Inc. The Bluetooth® word mark and logos are registered trademarks owned by Bluetooth SIG, Inc. and any use of such mark by Apple Inc. is under license. Adobe and Photoshop are trademarks or registered trademarks of Adobe Systems Incorporated in the U.S. and/or other countries. Other company and product names mentioned herein may be trademarks of their respective companies.

Mention of third-party products is for informational purposes only and constitutes neither an endorsement nor a recommendation. Apple assumes no responsibility with regard to the performance or use of these products. All understandings, agreements, or warranties, if any, take place directly between the vendors and the prospective users. Every effort has been made to ensure that the information in this manual is accurate. Apple is not responsible for printing or clerical errors.

The product described in this manual incorporates copyright protection technology that is protected by method claims of certain U.S. patents and other intellectual property rights owned by Macrovision Corporation and other rights owners. Use of this copyright protection technology must be authorized by Macrovision Corporation and is intended for home and other limited viewing uses only unless otherwise authorized by Macrovision Corporation. Reverse engineering or disassembly is prohibited.

Apparatus Claims of U.S. Patent Nos. 4,631,603, 4,577,216, 4,819,098 and 4,907,093 licensed for limited viewing uses only.

019-1006/2007-08-01

306.    The iPhone User Manuals submitted by Apple to the United States Federal Communications Commission on April 16, 2007 and May 11, 2007 in connection with FCC approval of the iPhone (FCC ID: BCGA1203) did not contain the patent numbers for the '216, '603, '098, or '093 patents.

307.    Upon information and belief, Apple first sold the iPod Touch on or after September 5, 2007.

308.    Upon information and belief, Apple provided user manuals, user guides, or product information guides (or the equivalent) to customers who purchased the iPod Touch that contained the following, or similar, copyright and patent notice:

Apple Inc.
© 2008 Apple Inc. All rights reserved.

Apple, the Apple logo, AirPort, Cover Flow, iCal, iPhoto,
iPod, iTunes, Mac, Macintosh, and Mac OS are
trademarks of Apple Inc., registered in the U.S. and other
countries. Finder, Safari, and Shuffle are trademarks of
Apple Inc. .Mac is a service mark of Apple Inc., registered
in the U.S. and other countries. iTunes Store is a service
mark of Apple Inc. Adobe and Photoshop are
trademarks or registered trademarks of Adobe Systems
Incorporated in the U.S. and/or other countries. .Other
company and product names mentioned herein may be
trademarks of their respective companies.

Mention of third-party products is for informational
purposes only and constitutes neither an endorsement
nor a recommendation. Apple assumes no responsibility
with regard to the performance or use of these
products. All understandings, agreements, or warranties,
if any, take place directly between the vendors and the
prospective users. Every effort has been made to ensure
that the information in this manual is accurate. Apple is
not responsible for printing or clerical errors.

The product described in this manual incorporates
copyright protection technology that is protected by
method claims of certain U.S. patents and other
intellectual property rights owned by Macrovision
Corporation and other rights owners. Use of this
copyright protection technology must be authorized by
Macrovision Corporation and is intended for home and
other limited viewing uses only unless otherwise
authorized by Macrovision Corporation. Reverse
engineering or disassembly is prohibited.

Apparatus Claims of U.S. Patent Nos. 4,631,603, 4,577,216,
4,819,098 and 4,907,093 licensed for limited viewing
uses only.

019-1215/2008-03

309.   The iPod Touch User Manual submitted by Apple to the United States Federal Communications Commission on September 8, 2008, in connection with FCC approval of the iPod Touch (FCC ID: BCGA1288) did not contain the patent numbers for the '216, '603, '098, or '093 patents.

310.   Upon information and belief, Apple first sold the iPod Classic on or after September 5, 2007.

311.   Upon information and belief, Apple provided user manuals, user guides, or product information guides (or the equivalent) to customers who purchased the iPod Classic that contained the following, or similar, copyright and patent notice:

© 2008 Apple Inc. All rights reserved. Apple, the Apple logo, FireWire, iCal, iLife, iPhoto, iPod, iPod Socks, iTunes, Mac, Macintosh, and Mac OS are trademarks of Apple Inc., registered in the U.S. and other countries. Finder, the FireWire logo, and Shuffle are trademarks of Apple Inc. iTunes Store is a service mark of Apple Inc. Other company and product names mentioned herein may be trademarks of their respective companies.

Mention of third-party products is for informational purposes only and constitutes neither an endorsement nor a recommendation. Apple assumes no responsibility with regard to the performance or use of these products. All understandings, agreements, or warranties, if any, take place directly between the vendors and the prospective users. Every effort has been made to ensure that the information in this manual is accurate. Apple is not responsible for printing or clerical errors.

The product described in this manual incorporates copyright protection technology that is protected by method claims of certain U.S. patents and other intellectual property rights owned by Macrovision Corporation and other rights owners. Use of this copyright protection technology must be authorized by Macrovision Corporation and is intended for home and other limited viewing uses only unless otherwise authorized by Macrovision Corporation. Reverse engineering or disassembly is prohibited.

Apparatus Claims of U.S. Patent Nos. 4,631,603, 4,577,216, 4,819,098 and 4,907,093 licensed for limited viewing uses only.

019-1148/01-2008

312.   Apple did not sell the iPod-5 prior to October 12, 2005.

313.   Apple did not sell the third generation iPod Nano in the United States prior to March 6, 2007.

314.   Apple did not sell the fourth generation iPod Nano in the United States prior to March 6, 2007.

315.   Apple did not sell the iPhone in the United States prior to March 6, 2007.

316.   Apple did not sell the iPod Touch in the United States prior to March 6, 2007.

317.   Apple did not sell the iPod Classic (*i.e.* the sixth generation iPod) in the United States prior to March 6, 2007.

318.   Each of the '216, '603, '098, and '093 patents expired on or before March 6, 2007.

319.    Each of the '216, '603, '098, and '093 expired prior to Apple's first sale in the United States of any of the Apple Products.

320.    Apple included the patent numbers of the '216, '603, '098, and '093 patents in the user guides or user manuals (or the equivalent thereto) for the Apple Products after the '216, '603, '098, and '093 patents expired.

321.    Apple sold Apple Products with accompanying user guides or user manuals which included the patent numbers of the '216, '603, '098, and '093 patents after the '216, '603, '098, and '093 patents expired.

322.    Upon information and belief, prior to March 6, 2007, Apple did not include any patent numbers on any of the Apple Products or in any of the user manuals, user guides, or product information guides associated with any of the Apple Products.

323.    Upon information and belief, prior to March 6, 2007, Apple did not include the patent numbers of the '216, '603, '098, or '093 patents on any of the Apple Products or in any of the user manuals, user guides, or product information guides associated with any of the Apple Products.

324.    Upon information and belief, prior to March 28, 2006, Apple did not include any patent numbers on any iPod-5 or in any of the user manuals, user guides, or product information guides associated with any iPod-5.

325.    Upon information and belief, prior to March 28, 2006, Apple did not include the patent numbers of the '216, '603, '098, or '093 patents on any iPod-5 or in any of the user manuals, user guides, or product information guides associated with any iPod-5.

326.    Apple included the patent numbers of the '216 and '603 patent in the iPod-5 user guide or user manual (or the equivalent thereto) after these patents expired.

327.   Apple sold iPod-5s with accompanying user guides or user manuals which included the patent numbers of the '216 and '603 patents after the '216 and '603 patents expired.

328.   Apple never sold any iPod-5s prior to the expiration of the '216 patent or '603 patent.

329.   Apple never marked any iPod-5 or any Apple Product sold in the United States with, nor included in any user manuals, user guides, or product information guides associated therewith, the patent numbers of U.S. Patent 4,577,216 or U.S. Patent 4,631,603 before the expiration of those patents.

330.   Because the '216, '603, '098, and '093 patents are expired, any product or method once covered by the claims of these patents is no longer protected by the patent laws of the United States.

331.   Despite the fact that the claims of an expired patent cannot afford patent protection, Apple knowingly and intentionally marked the user manuals, user guides, or product information guides (or the equivalent) for the Apple Products and iPod-5s with one or more of the '216, '603, '098, and '093 patents after their expiration.

332.   Despite the fact that all of the '216, '603, '098, and '093 patents expired prior to the first sale in the United States of any Apple Product, Apple knowingly and intentionally marked the user manuals, user guides, or product information guides (or the equivalent) for these products at various times with the patent numbers of these patents.

333.   Apple knows that the '216, '603, '098, and '093 patents <u>do not</u> and <u>never</u> covered any of the Apple Products.

334.   Apple knows that the '216 and '603 patents <u>do not</u> and <u>never</u> covered any Apple iPod-5s.

335.    Apple knows that the '216, '603, '098, and '093 patents did not cover any iPod-5s after their expiration.

336.    Because all monopoly rights provided by the '216, '603, '098, and '093 patents terminated prior to Apple's first sale in the United States of any Apple Product, Apple cannot have and never could have had a reasonable belief that any of these products were covered by any of these patents.

337.    Because U.S. Patents 4,577,216 and 4,631,603 expired prior to March 28, 2006, Apple did not have and never could have had a reasonable belief that any Apple Product or any iPod-5 sold after March 28, 2006, was covered by either of these patents.

338.    On information and belief, due in large part to sales of the iPod, iPhone, iPod Classic, iPod Nano, and iPod Touch, Apple controlled 73.8 percent of the MP3 player market as of September 2009.

http://www.afterdawn.com/news/article.cfm/2009/09/09/ipod_market_share_at_73_8_percent_225_million_ipods_sold_more_games_for_touch_than_psp_nds_apple.

### VERIZON'S FALSE MARKING OF ITS PRODUCTS

#### *Verizon Data Products*

339.    On information and belief, Verizon sells, offers to sell, has sold, or has offered to sell the following wireless internet cards, which it has falsely marked or falsely marks with one or more expired or inapplicable patents within the last five years in the United States or continues to falsely mark with one or more expired or inapplicable patents in the United States: AirCard 595 and USB727.

#### *AirCard 595*

340.    On information and belief, Verizon sells, offers to sell, has sold, or has offered to sell the AirCard 595 in the United States.

341.   On information and belief, Verizon sold the AirCard 595 from on or about December 18, 2006 until mid-2009.

342.   Verizon provided user manuals or user guides (or the equivalent thereto) to customers who purchased the AirCard 595 containing the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents and licenses

Portions of this product may be covered by some or all of the following US patents:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 | 5,890,057 | 5,929,815 | 6,169,884 | 6,191,741 |
| 6,199,168 | 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 | 6,561,851 | 6,643,501 | 6,653,979 | 6,697,030 |
| 6,785,830 | 6,845,249 | 6,847,830 | 6,876,697 | 6,879,585 | 6,886,049 | 6,968,171 | 6,985,757 | 7,023,878 |
| 7,053,843 | 7,106,569 | D442,170 | D459,303 | | | | | |

and other patents pending.

This product includes
technology licensed from:   **QUALCOMM®**
                           **3G CDMA**

Licensed by QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4,901,307 | 5,490,165 | 5,056,109 | 5,504,773 | 5,101,501 | 5,506,865 | 5,109,390 | 5,511,073 | 5,228,054 |
| 5,535,239 | 5,267,261 | 5,544,196 | 5,267,262 | 5,568,483 | 5,337,338 | 5,600,754 | 5,414,796 | 5,657,420 |
| 5,416,797 | 5,659,569 | 5,710,784 | 5,778,338 | | | | | |

Manufactured or sold by Sierra Wireless or its licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

## Copyright

©2006 Verizon Wireless, Inc.

343.   The AirCard 595 is not covered by either U.S. Patent No. D459,303 or D442,170.

344.   An ordinary observer would not believe that the AirCard 595 is covered by either U.S. Patent No. D459,303 or D442,170.

345.   The AirCard 595 does not and has never included an antenna connector as claimed in U.S. Patent D442,170.

346. The AirCard 595 does not and has never included an audio connector as claimed in U.S. Patent D459,303.

347. Verizon falsely marked the AirCard 595 with U.S. Patent Nos. D459,303 and D442,170 with intent to deceive the public.

*USB727*

348. On information and belief, Verizon first began selling the USB727 on or about September 27, 2007.

349. Verizon provided user manuals or user guides (or the equivalent thereto) to customers who purchased the U727 containing the following, or similar, copyright and patent notices:

**Patent Notice**

**Patents and licenses**

Licensed by QUALCOMM Incorporated under one or more of the following Patents:

| | | | | |
|---|---|---|---|---|
| 4,901,307 | 5,490,165 | 5,056,109 | 5,504,773 | 5,101,501 |
| 5,506,865 | 5,109,390 | 5,511,073 | 5,228,054 | 5,535,239 |
| 5,267,261 | 5,544,196 | 5,267,262 | 5,568,483 | 5,337,338 |
| 5,600,754 | 5,414,796 | 5,657,420 | 5,416,797 | 5,659,569 |
| 5,710,784 | 5,778,338 | | | |

**Copyright Notice**

**Copyright**

©2007 Verizon Wireless, Inc.

350. The '307 patent expired prior to Verizon's first sale of any USB727.

351. Verizon included the patent number of the '307 in the USB727 user guides or user manuals (or the equivalent thereto) after the '307 patent expired.

352. Verizon sold USB727s with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

353.     Because the '307 patent expired prior to Verizon's first sale of any USB727, Verizon did not have and never could have had any reasonable belief that the '307 patent covered the USB727.

354.     Verizon falsely marked the USB727 with intent to deceive the public.

*MiFi2200 Intelligent Mobile Hotspot*

355.     On information and belief, Verizon first began selling the MiFi2200 Intelligent Mobile Hotspot ("MiFi") on or about May 17, 2009 and continues to sell the product.

356.     Verizon provided user manuals or user guides (or the equivalent thereto) to customers who purchased the MiFi containing the following, or similar, copyright and patent notices:

**Patent Notice**

**Patents and licenses**

Licensed by QUALCOMM Incorporated under one or more of the following Patents:

| | | | | |
|---|---|---|---|---|
| 4,901,307 | 5,490,165 | 5,056,109 | 5,504,773 | 5,101,501 |
| 5,506,865 | 5,109,390 | 5,511,073 | 5,228,054 | 5,535,239 |
| 5,267,261 | 5,544,196 | 5,267,262 | 5,568,483 | 5,337,338 |
| 5,600,754 | 5,414,796 | 5,657,420 | 5,416,797 | 5,659,569 |
| 5,710,784 | 5,778,338 | | | |

**Copyright Notice**

**Copyright**

©2009 Verizon Wireless, Inc.

357.     Verizon has sold within the last five years and continues to sell the MiFi which Verizon has falsely marked and falsely marks (by marking the user guides accompanying the products) with the patent number of the expired '307, '390, '501, and '109 patents.

358.     Verizon did not sell any MiFi devices prior to the expiration of the '307 patent.

359.    Verizon included the patent number of the '307 in the MiFi user guide or user manual (or the equivalent thereto) after the '307 patent expired.

360.    Verizon sold MiFis with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

361.    Because the '307 patent expired prior to Verizon's first sale of any MiFi, Verizon did not have and never could have had a reasonable belief that the '307 patent covered the MiFi.

362.    On information and belief, Verizon falsely marked and marks the MiFi knowingly and with the intent to deceive the public.

## STA'S FALSE MARKING OF ITS PRODUCTS

363.    On information and belief, STA sells, offers to sell, has sold, or has offered to sell the following cellular phones, for example to Verizon, which it has falsely marked or falsely marks with the one or more of the patent numbers of the expired '307, '109, '501, and '390 in the United States in the past five years: Omnia II, Knack, and Saga (the "STA phones").

364.    On information and belief, STA first began selling: the Knack in or about August 2008; the Omnia II in or about December 2009; and the Saga in or about November 2008.

365.    STA provided user manuals and/or user guides (or the equivalent thereto) to customers who purchased the Omnia II containing the following, or similar, copyright and patent notices:

### Patent Notice

Licensed by Qualcomm Incorporated under one or more of the following patents: U.S. Patent No. 4, 901, 307; 5, 056, 109; 5, 099, 204; 5, 101, 501; 5, 103, 459; 5, 107, 225; 5, 109, 390.
T9 Text Input is licensed by Tegic Communications and is covered by U.S. Pat. 5,818,437; U.S. Pat. 5,953,541; U.S. Pat. 6,011,554 and other patents pending.

### Copyright Notice

© 2009 Samsung Telecommunications America, LLC is a registered trademark of Samsung Electronics America, Inc. and its related entities.

366.    STA provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Knack containing the following, or similar, copyright and patent notices:

**Patent Notice**

Licensed by Qualcomm Incorporated under one or more of the following patents: U.S. Patent No. 4, 901, 307; 5, 056, 109; 5, 099, 204; 5, 101, 501; 5, 103, 459; 5, 107, 225; 5, 109, 390.

**Copyright Notice**

©2008 Samsung Telecommunications America, LLC is a registered trademark of Samsung Electronics America, Inc. and its related entities.

367.    STA provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Saga containing the following, or similar, copyright and patent notices:

**Patent Notice**

Licensed by Qualcomm Incorporated under one or more of the following patents: U.S. Patent No. 4, 901, 307; 5, 056, 109; 5, 099, 204; 5, 101, 501; 5, 103, 459; 5, 107, 225; 5, 109, 390.

**Copyright Notice**

©2008 Samsung Telecommunications America, LLC is a registered trademark of Samsung Electronics America, Inc. and its related entities.

368.    STA did not sell any STA Phones prior to the expiration of the '307 patent in February 2007.

369.    STA included the patent number of the '307 in the user guides or user manuals (or the equivalent thereto) for the STA Phones after the '307 patent expired.

370.    STA sold STA Phones with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

371.   Because the '307 patent expired prior to STA's first sale of any of the STA Phones, STA did not have and never could have had a reasonable belief that the '307 patent covered any of the STA Phones.

372.   STA did not sell any Omnia IIs prior to the expiration of the '307, '390, '501, and '109 patents.

373.   STA included the patent numbers of the '307, '109, '501, and '390 patents in the Omnia II user guide or user manual (or the equivalent thereto) after the '307, '109, '501, and '390 patents expired.

374.   STA sold Omnia IIs with accompanying user guides or user manuals which included the patent numbers of the '307, '109, '501, and '390 patents after the '307, '109, '501, and '390 patents expired.

375.   Because the '307, '390, '501, and '109 patents expired prior to STA's first sale of any Omnia II, STA did not have and never could have had a reasonable belief that the '307, '390, '501, and '109 patents covered the Omnia II.

376.   On information and belief, STA falsely marked the STA Samsung Phones knowingly and with the intent to deceive the public.

## COUNT I - CLAIM FOR RELIEF AGAINST SPRINT

377.   AFPU incorporates Paragraphs 1-376 of this Complaint as if fully set forth in this paragraph.

378.   On information and belief, despite the fact that the claims of an expired patent cannot afford patent protection, Sprint knowingly and intentionally marked upon, affixed to, or used in advertising in connection with the Sprint Data Products, the Sprint Samsung Phones, the Sprint LG Phones, the Sprint HTC Phones, and the Sanyo Phones the patent number of one or more expired patents after their expiration with the intent to deceive the public.

379.    Additionally, on information and belief, Sprint knowingly and intentionally marked upon, affixed to, or used in advertising in connection many of the Sprint Data Products patent numbers which do not cover the marked product, as described above, with the intent to deceive the public.

380.    Sprint knew or reasonably should have known that marking its products with expired patents or inapplicable patents violated federal patent marking laws which authorize marking or advertising only existing and enforceable patent or patent pending claims on a "patented" article.

381.    On information and belief, Sprint intended to and has deceived the public by falsely marking (or causing to be marked) the patent protection status of the Sprint Data Products, the Sprint Samsung Phones, the Sprint LG Phones, the Sprint HTC Phones, and the Sanyo Phones.

382.    On information and belief, each false marking by Sprint identified in this Complaint is likely to discourage or deter persons and companies from commercializing competing products or pursuing research and development of competing products and or related products, which injures AFPU and the public by stifling competition and increasing the cost of goods.

383.    On information and belief, Sprint's false marking of the Sprint Data Products, the Sprint Samsung Phones, the Sprint LG Phones, the Sprint HTC Phones, and the Sanyo Phones has wrongfully quelled competition with respect to such products thereby causing harm to AFPU, the United States, and the public.

384.    On information and belief, Sprint has wrongfully and illegally asserted patent monopolies which it does not possess and, as a result, has benefited by limiting competition with respect to its products referenced in this Complaint – such benefit coming at the expense of AFPU and the public.

385.    Sprint has engaged in a pattern of falsely marking large numbers of its products with design patents that do not cover the product and with expired patents.

386.    As detailed herein, Sprint has marked at least 33 different product models with inapplicable or expired patents.

387.    Sprint's actions are in violation of 35 U.S.C. § 292.

## COUNT II - CLAIM FOR RELIEF AGAINST APPLE

388.    AFPU incorporates Paragraphs 1-387 of this Complaint as if fully set forth in this paragraph.

389.    Apple knowingly and intentionally marked upon, affixed to, or used in advertising in connection the Apple Products and iPod-5s the patent numbers of the '216, '603, '098, or '093 patents after their expiration with the intent to deceive the public.

390.    Apple knew or reasonably should have known that marking its products with the '216, '603, '098, or '093 patents after their expiration violated federal patent marking laws which authorize marking or advertising only existing and enforceable patent or patent pending claims on a "patented" article.

391.    Apple intended to and has deceived the public by falsely marking (or causing to be marked) the patent protection status of the Apple Products and the iPod-5.

392.    On information and belief, each false marking by Apple identified in this Complaint is likely to discourage or deter persons and companies from commercializing competing products or pursuing research and development of competing products or related products, which injures AFPU and the public by stifling competition and increasing the cost of goods.

393.    On information and belief, Apple's false marking of the Apple Products and the iPod-5 has wrongfully quelled competition with respect to such products thereby causing harm to AFPU, the United States, and the public.

394.    Apple has wrongfully and illegally claimed patent monopolies which it does not possess and, as a result, has benefited by maintaining substantial market share with respect to its products referenced in this Complaint – such benefit coming at the expense of AFPU and the public.

395.    Apple's actions are in violation of 35 U.S.C. § 292.

## COUNT III - CLAIM FOR RELIEF AGAINST VERIZON

396.    AFPU incorporates Paragraphs 1-395 of this Complaint as if fully set forth in this paragraph.

397.    On information and belief, despite the fact that the claims of an expired patent cannot afford patent protection, Verizon knowingly and intentionally marked upon, affixed to, or used in advertising in connection the AirCard 595, USB 727, and the MiFi (collectively the "Verizon Products") the patent number of one or more expired patents after their expiration with the intent to deceive the public.

398.    Additionally, on information and belief, Verizon knowingly and intentionally marked upon, affixed to, or used in advertising in connection the AirCard 595 patent numbers which do not cover the AirCard 595 with the intent to deceive the public.

399.    Verizon knew or reasonably should have known that marking the Verizon Products with expired patents or inapplicable patents violated federal patent marking laws which authorize marking or advertising only existing and enforceable patent or patent pending claims on a "patented" article.

400.    On information and belief, Verizon intended to and has deceived the public by falsely marking (or causing to be marked) the patent protection status of the Verizon Products.

401.    On information and belief, each false marking by Verizon identified in this Complaint is likely to discourage or deter persons and companies from commercializing competing

products or pursuing research and development of competing products and or related products, which injures AFPU and the public by stifling competition and increasing the cost of goods.

402.   On information and belief, Verizon's false marking of the Verizon Products has wrongfully quelled competition with respect to such products thereby causing harm to AFPU, the United States, and the public.

403.   On information and belief, Verizon has wrongfully and illegally asserted patent monopolies which it does not possess and, as a result, has benefited by limiting competition with respect to its products referenced in this Complaint – such benefit coming at the expense of AFPU and the public.

404.   Verizon has engaged in a pattern of falsely marking its products with design patents that do not cover the product and marking products with expired patents.

405.   As detailed herein, Verizon has marked at least ten different products models with inapplicable or expired patents.

406.   Verizon's actions are in violation of 35 U.S.C. § 292.

## COUNT IV -- CLAIM FOR RELIEF AGAINST STA

407.   AFPU incorporates Paragraphs 1-406 of this Complaint as if fully set forth in this paragraph.

408.   On information and belief, despite the fact that the claims of an expired patent cannot afford patent protection, STA knowingly and intentionally marked upon, affixed to, or used in advertising in connection the STA Phones the patent number of one or more expired patents after their expiration with the intent to deceive the public.

409.   STA knew or reasonably should have known that marking the STA Phones with expired patents or inapplicable patents violated federal patent marking laws which authorize

marking or advertising only existing and enforceable patent or patent pending claims on a "patented" article.

410.    On information and belief, STA intended to and has deceived the public by falsely marking (or causing to be marked) the patent protection status of the STA Phones.

411.    On information and belief, each false marking by STA identified in this Complaint is likely to discourage or deter persons and companies from commercializing competing products or pursuing research and development of competing products or related products, which injures AFPU and the public by stifling competition and increasing the cost of goods.

412.    On information and belief, STA's false marking of the STA Phones has wrongfully quelled competition with respect to such products thereby causing harm to AFPU, the United States, and the public.

413.    On information and belief, STA has wrongfully and illegally asserted patent monopolies which it does not possess and, as a result, has benefited by limiting competition with respect to its products referenced in this Complaint – such benefit coming at the expense of AFPU and the public.

414.    STA's actions are in violation of 35 U.S.C. § 292.

## JURY DEMAND

AFPU requests a jury trial for all issues triable by a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, AFPU respectfully requests that this Court:

a)      find that Sprint falsely marked the Sprint Data Products, the Sprint Samsung Phones, the Sprint LG Phones, the Sprint HTC Phones, and the Sanyo Phones in violation of 35 U.S.C. §292(a) and render judgment in favor of AFPU and against Sprint;

b)      order an accounting for the past five years of all falsely marked Sprint Data Products, Sprint Samsung Phones, Sprint LG Phones, Sprint HTC Phones, and Sanyo Phones and fine Sprint $500, or such other amount as the Court determines, per falsely marked product to penalize Sprint for its violation of §292(a) and deter Sprint and others from violating §292(a) in the future;

c)      direct that half of the fine be paid to the United States government pursuant to 35 U.S.C. § 292;

d)      direct that the remaining half of the fine be paid to AFPU pursuant to 35 U.S.C. § 292; and

e)      order Sprint to develop and implement procedures, approved by the Court, to mitigate against false marking of its products in the future;

f)      order Sprint to notify, to the extent reasonable, all Sprint customers who received any of its falsely marked products identified in this Complaint of the erroneous nature of the patent markings;

g)      enjoin Sprint from further distributing any of the afore mentioned products with patent markings of expired patents or inapplicable patents;

h)      enjoin Sprint, its officers, directors, agents, employees, and assigns from mismarking or distributing products mismarked with the expired or inapplicable patents enumerated herein in the future in violation of 35 U.S.C. § 292;

i)      find that Apple falsely marked the Apple Products and a quantity of iPods in violation of 35 U.S.C. §292(a) and render judgment in favor of AFPU and against Apple;

j)      order an accounting for the past five years of all falsely marked Apple Products and iPods and fine Apple $500, or such other amount as the Court determines, per falsely

marked Apple Product and iPod to penalize Apple for its violation of §292(a) and deter Apple and others from violating §292(a) in the future;

k)    direct that half of the fine be paid to the United States government pursuant to 35 U.S.C. § 292;

l)    direct that the remaining half of the fine be paid to AFPU pursuant to 35 U.S.C. § 292;

m)    order Apple to develop and implement procedures, approved by the Court, to mitigate against false marking of its products in the future;

n)    order Apple to notify, to the extent reasonable, all Apple customers who received any of its falsely marked products identified in this complaint of the erroneous nature of the patent markings;

o)    enjoin Apple from further distributing any of the afore mentioned products with patent markings of expired patents;

p)    enjoin Apple, its officers, directors, agents, employees, and assigns from mismarking or distributing products mismarked with the expired patents enumerated herein in the future in violation of 35 U.S.C. § 292;

q)    find that Verizon falsely marked the Verizon Products in violation of 35 U.S.C. §292(a) and render judgment in favor of AFPU and against Verizon;

r)    order an accounting for the past five years of all such falsely marked Verizon Products and fine Verizon $500, or such other amount as the Court determines, per falsely marked product to penalize Verizon for its violation of §292(a) and deter Verizon and others from violating §292(a) in the future;

s)    direct that half of the fine be paid to the United States government pursuant to 35 U.S.C. § 292;

t)       direct that the remaining half of the fine be paid to AFPU pursuant to 35 U.S.C. §
         292;

u)       order Verizon to develop and implement procedures, approved by the Court, to
         mitigate against false marking of its products in the future;

v)       order Verizon to notify, to the extent reasonable, all Verizon customers who received
         any of its falsely marked products identified in this complaint of the erroneous nature
         of the patent markings;

w)       enjoin Verizon from further distributing any of the afore mentioned products with
         patent markings of expired patents or inapplicable patents;

x)       enjoin Verizon, its officers, directors, agents, employees, and assigns from
         mismarking or distributing products mismarked with the expired or inapplicable
         patents enumerated herein in the future in violation of 35 U.S.C. § 292;

y)       find that STA falsely marked the STA Phones in violation of 35 U.S.C. §292(a) and
         render judgment in favor of AFPU and against STA;

z)       order an accounting for the past five years of all such falsely marked STA Phones
         and fine STA $500, or such other amount as the Court determines, per falsely
         marked product to penalize STA for its violation of §292(a) and deter STA and
         others from violating §292(a) in the future;

aa)      direct that half of the fine be paid to the United States government pursuant to 35
         U.S.C. § 292;

bb)      direct that the remaining half of the fine be paid to AFPU pursuant to 35 U.S.C. §
         292; and

cc)      order STA to develop and implement procedures, approved by the Court, to mitigate
         against false marking of its products in the future;

dd)   order STA to notify, to the extent reasonable, all STA customers who received any of its products identified in this complaint that were falsely marked of the erroneous nature of the patent markings;

ee)   enjoin STA from further distributing any of the afore mentioned products with patent markings of expired patents; and

ff)   enjoin STA, its officers, directors, agents, employees, and assigns from mismarking or distributing products mismarked with the expired patents enumerated herein in the future in violation of 35 U.S.C. § 292.

Dated this 14th day of July, 2010

By:  _/s/ Reese McKnight_____
      Reese P. McKnight (TX Bar # 24046400)
      rmcknight@fblawllp.com
      Adam V. Floyd (TX Bar # 00790699)
      **F&B LLP**
      5113 S.W. Parkway, Suite 140
      Austin, Texas 78735
      Tel: (512) 681-1500
      Fax: (512) 681-1590

      *Attorneys for Plaintiff*
      *Americans for Fair Patent Use, LLC*