## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **Americans For Fair Patent Use, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Sprint Spectrum L.P., Cellco Partnership** | § | **Civil Case No. 2:10-cv-00237  TJW** |
| **d/b/a Verizon Wireless, Samsung** | § | |
| **Telecommunications America, LLC, Sierra** | § | **JURY** |
| **Wireless America, Inc., HTC America,** | § | |
| **Inc., HTC Corporation, and LG** | § | |
| **Electronics MobileComm U.S.A., Inc.,** | § | |
| | § | |
| **Defendants.** | § | |

## THIRD AMENDED COMPLAINT FOR FALSE PATENT MARKING

Plaintiff Americans for Fair Patent Use, LLC ("Americans") files this complaint against Defendants Sprint Spectrum L.P. ("Sprint"), Cellco Partnership d/b/a Verizon Wireless ("Verizon"), Samsung Telecommunications America, LLC ("Samsung"), Sierra Wireless America, Inc. ("Sierra Wireless"), HTC America, Inc. ("HTC America"), HTC Corporation ("HTC corp."), and LG Electronics MobileComm U.S.A., Inc. ("LG") (collectively referred to as the "Defendants") and alleges as follows:

### NATURE OF THE ACTION

1.     This is an action for false patent marking arising under 35 U.S.C. § 292.

2.     As set forth in detail below, the Defendants have repeatedly violated 35 U.S.C. § 292(a) by falsely marking numerous products with expired patents or patents that do

not cover the marked products with the intent to deceive the public about the patent coverage for their products.

3.      Americans seeks an award of monetary damages from the Defendants, one-half of which shall be paid to the United States pursuant to 35 U.S.C. § 292(b).

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332, 1338(a), and 1355(a).

## BACKGROUND

5.      The Defendants have violated 35 U.S.C. § 292(a) (the "False Marking Statute") by marking unpatented articles with the intent to deceive the public.

6.      More specifically, the Defendants, with the intent to deceive the public, marked products with patents that are and were expired and, therefore, do not and could not cover the marked products.

7.      Additionally, Sprint, Verizon, and Sierra Wireless, with the intent to deceive the public, marked numerous products with patent numbers that do not cover the marked products.

8.      The marking and false marking statutes exist to give the public notice of patent rights.  Congress intended the public to rely on marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design.  *Clontech Laboratories, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1356 (Fed. Cir. 2005)

9.      Federal patent policy recognizes an important public interest in permitting full and free competition in the use of ideas which are, in reality, a part of the public domain.  *Wine Ry. Appliance Co. v. Enterprise Ry. Equipment Co.*, 297 U.S. 387, 397 (1936).

10.      Acts of false marking deter innovation and stifle competition in the marketplace. *Forest Group, Inc. v. BonTool Co.*, 590 F.3d 1295, 1302 (Fed. Cir. 2009).  If an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same

market.  *Id.* at 1303.  False marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement.  *Id.*  False marking can cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.  *Id.*

11.     Furthermore, false marking misleads the public into believing that a patentee controls the article in question (as well as like articles), and places the risk of determining whether the article is controlled on the public rather than the manufacturer or seller of the article, thereby increasing the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article.  *Clontech Laboratories, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1356-57 (Fed. Cir. 2005).

12.     Thus, in each instance where it is represented that an article is patented, a member of the public desiring to participate in the market for the marked article must incur the cost of determining whether the involved patents are valid and enforceable.  *Clontech*, 406 F.3d at 1356 n.6.  Failure to take on the costs of a reasonably competent search for information necessary to interpret each patent, investigation into prior art and other information bearing on the quality of the patents, and analysis thereof can result in a finding of willful infringement, which may treble the damages an infringer would otherwise have to pay.  *Id.*

13.     False markings may also create a misleading impression that the falsely marked product is technologically superior to previously available products, as articles bearing the term "patent" may be presumed to be novel, useful, and innovative.

14.     The False Marking Statute explicitly permits *qui tam* actions.  *Forest Group*, 590 F.3d at 1303.  Indeed, Congress's interest in preventing false marking was so great that it enacted a statute which sought to encourage parties to enforce the statute.  *Id.*  By permitting members of the

public to sue on behalf of the government, Congress allowed individuals to help control false marking. *Id.* at 1303-4.

15.     Under 35 U.S.C. § 292, intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so. *Clontech*, 406 F.3d at 1352. Intent to deceive, while subjective in nature, is established in law by objective criteria. *Id.*

16.     Furthermore, the mere assertion by a party that it did not intend to deceive will not suffice to escape statutory liability. *Clontech*, 406 F.3d at 1352. Such an assertion, standing alone, is worthless as proof of no intent to deceive where there is knowledge of falsehood. *Id.*

17.     Americans, on its own behalf and on behalf of the United States, seeks an award of monetary damages of no more than $500 for each of Defendants' violations of 35 U.S.C. § 292(a), one-half of which shall be paid to the United States pursuant to 35 U.S.C. § 292(b).

## PARTIES

18.     Americans is a Texas limited liability company and has its principal place of business at 5113 S.W. Parkway, Suite 140, Austin, Texas 78735.

19.     Americans was established by the patent law firm F&B LLP to encourage the fair use of the patent system and deter abuse of the patent system, which harms the public welfare and stifles competition.

20.     The Defendants' false markings are examples of such harmful conduct. Americans represents the interests of the public against misuses of patents and the patent system by commercial entities, such as Sprint, Verizon, Samsung, Novatel, Sierra Wireless, HTC America, HTC Corp. and LG.

### *Sprint*

21.     Sprint Spectrum L.P. is a limited partnership organized under the laws of the State of Delaware and has its principal place of business at in Overland Park, Kansas.

22.     Sprint has, or regularly retains, sophisticated legal counsel, and their legal counsel includes both in-house and outside lawyers.

23.     Sprint has a large in-house legal department with numerous patent lawyers.

24.     Sprint, or related entities, own numerous patents and patent applications, and Sprint's intellectual property is of material importance to it.  Sprint Nextel Corp. Form 10-K for FY 2009.

25.     Sprint is actively prosecuting a large number of patent applications before the United States Patent and Trademark Office.

26.     Sprint was informed that it was not required to include Qualcomm patent numbers on the packaging for its products or in the user guides for its products in January of 2009.

27.     Sprint and Sprint's attorneys, including Sprint's counsel in this case, were aware of and reviewed the patent listings in the user guides for at least the AirCard 402, the 598U, the Compass 597, the AirCard 597E, the AirCard 595U, the AirCard 580, the AirCard 595, and the AirCard 550 at least as early as June of 2009.

28.     On information and belief, Sprint and Sprint's attorneys, including Sprint's outside counsel in this case, reviewed the content of the patents (which includes their disclosures, filing dates and issuance dates) listed in the user guides for at least the Ovation U727, AirCard 402, the 598U, the Compass 597, the AirCard 597E, the AirCard 595U, the AirCard 580, the AirCard 595, and the AirCard 550 at least as early as June of 2009, including U.S. Patents D367,062; D372,248; D372,701;  D416,857;  D452,495;  D452,496;  D559,256;  D560,911;  D442,170;  D459,303; 4,901,307; 5,056,109; 5,101,501; and 5,109,390.

29.     As of June of 2009, U.S. Patent 4,901,307 had already expired.

30.     Consequently, as of June 2009, Sprint had actual knowledge of the expiration of U.S. Patent 4,901,307.

31.     Nonetheless, Sprint did not correct the patent listings in the user guides for its existing products lines and also did not stop including reference to U.S. Patent 4,901,307 in the user guides for new products it subsequently released, for example the Evo4G, Hero with Google, Touch Pro 2, Remarq, Rumor Touch, Lotus Elite, Restore, Seek, Intercept, Moment with Google, Intrepid, M330, Merlin C777 and Epic 4G.

32.     At least as of July 16, 2010, the date Sprint was served with the complaint in this case, Sprint had actual knowledge of the expiration of U.S. Patents 4,901,307; 5,056,109; 5,101,501; and 5,109,390.

33.     At least as of July 16, 2010, the date Sprint was served with the complaint in this case, Sprint had actual knowledge that U.S. Patents D442,170 and D459,303 do not cover the AirCard 402, the 598U, the Compass 597, the AirCard 597E, the AirCard 595U, the AirCard 580, the AirCard 595 or the Overdrive 3G/4G HotSpot, or any portion of any of the foregoing products.

34.     At least as of July 16, 2010, the date Sprint was served with the complaint in this case, Sprint had actual knowledge that U.S. Patents D559,256 and D560,911 do not cover the AirCard 402, the 598U, the Compass 597, or the Overdrive 3G/4G HotSpot, or any portion of any of the foregoing products.

35.     At least as of July 16, 2010, the date Sprint was served with the complaint in this case, Sprint had actual knowledge that U.S. Patents D367,062; D372,248; D372,701; D416,857; D452495; and D452,496 do not cover the AirCard 550, or any portion thereof.

36.     Despite having actual knowledge of the expiration of U.S. Patents 4,901,307; 5,056,109; 5,101,501; and 5,109,390 as of July 16, 2010, Sprint thereafter continued to falsely mark products with these expired patents and continued to sell such falsely marked products in the United States, including at least the AirCard 402, 598U, AirCard 597E, Compass 597, AirCard 595U, Hero with Google, Snap, Touch Pro 2, Evo 4G, Remarq, Rumor Touch, Rumor 2, Lotus, Lotus Elite,

LX290, LX370, Airave, Reclaim, Restore, Seek, Moment with Google, Intrepid, Instinct HD, M330, M240, Exclaim, Instinct s30, Intercept, Epic 4G, Merlin C777 and Ovation U727.

37.     Despite having actual knowledge that none of U.S. Patents D559,256; D560,911; D442,170; and D459,303 covered the AirCard 402, the 598U, the Compass 597, or the Overdrive 3G/4G Hotspot, Sprint continued to falsely mark these products with U.S. Patents D559,256; D560,911; D442,170; and D459,303 and continued to sell them in the United States.

38.     Despite having actual knowledge that neither of U.S. Patents D442,170 and D459,303 covered the AirCard 595U, AirCard 597E, AirCard 595, or the AirCard 580, Sprint continued to falsely mark these products with U.S. Patents D442,170 and D459,303 and continued to sell them in the United States.

39.     Despite having actual knowledge of the expiration of U.S. Patents 4,901,307; 5,056,109; 5,101,501; and 5,109,390 as of July 16, 2010, despite the fact that Americans filed a motion for a preliminary injunction, and despite Americans' repeated requests for remedial measures, Sprint continued to falsely mark products with these expired patents and continued to sell such falsely marked products in the United States, including at least the AirCard 402, 598U, AirCard 597E, Compass 597, AirCard 595U, Hero with Google, Snap, Touch Pro 2, Evo 4G, Remarq, Rumor Touch, Rumor 2, Lotus, Lotus Elite, LX290, LX370, Airave, Reclaim, Restore, Seek, Moment with Google, Intrepid, Instinct HD, M330, M240, Exclaim, Instinct s30, Intercept, Epic 4G, Merlin C777 and Ovation U727.

40.     Sprint's in-house legal department reviews and approves the content of the user guides for its products (which includes the patent listings).

41.     On information and belief, Sprint's in-house legal department includes attorneys versed in patent law.

42.     During the time period from July 2005 through the present, the time period during which Sprint engaged in the false marking at issue in this case, Sprint was a party in at least 71 patent lawsuits.

43.     Sprint knows that patents expire and an expired patent cannot protect any product from competition.

44.     Sprint is aware of the False Marking Statute and knows that intentionally marking products with an expired patent or a patent that does not cover the product is a violation of that statute.

45.     *Verizon*

46.     Verizon is a general partnership organized and existing under the laws of the State of Delaware and has its principal place of business at One Verizon Way, Basking Ridge, New Jersey 07920.

47.     Verizon has, or regularly retains, sophisticated legal counsel.

48.     Verizon owns or licenses numerous patents in the United States.  Cellco Partnership 10-K for *FY 2009.*

49.     Verizon is actively pursuing patents before the United States Patent and Trademark Office.

50.     Verizon and Verizon's attorneys, including Verizon's outside counsel in this case, were aware of and reviewed the patent listings in the user guides for at least the USB727 and USB 60 at least as early as June of 2009, and the patent listings in the user guides for the USB727 and the USB760 included U.S. Patent 4,901,307 which was already expired.

51.     Verizon and Verizon's attorneys, including Verizon's outside counsel in this case, reviewed the content of the patents (which includes their disclosures, filing dates and issuance

dates) listed in the user guides for at least the USB727 and USB760 at least as early as June of 2009, including U.S. Patents, 4,901,307, 5,056,109, 5,101,501, and 5,109,390.

52.     Consequently, on information and belief, as of June 2009, Verizon had actual knowledge of the expiration of U.S. Patent 4,901,307.

53.     As of July 16, 2010, the date Verizon was served with the complaint in this case, Verizon had actual knowledge of the expiration of U.S. Patents 4,901,307, 5,056,109, 5,101,501 and 5,109,390.

54.     Despite having actual knowledge of the expiration of U.S. Patents 4,901,307, 5,056,109, 5,101,501, and 5,109,390 as of July 16, 2010, Verizon continued to falsely mark products with these expired patents and continued to sell such falsely marked products in the United States, including at least the MiFi2200.

55.     Despite having actual knowledge of the expiration of U.S. Patents 4,901,307, 5,056,109, 5,101,501, and 5,109,390 as of July 16, 2010, despite the fact that Americans filed a motion for a preliminary injunction, and despite Americans' repeated requests for remedial measures, Verizon continued to falsely mark at least the MiFi2200 with these expired patents and continued to sell such falsely marked products in the United States.

56.     During the time period from July 2005 through the present, the time period during which Verizon engaged in the false marking at issue in this case, Verizon was a party in at least 60 patent lawsuits.

57.     Verizon knows that patents expire and an expired patent cannot protect any product from competition.

58.     Verizon is aware of the False Marking Statute and knows that intentionally marking products with an expired patent or a patent that does not cover the product is a violation of that statute.

*Samsung*

59.    Samsung is a limited liability company and has its headquarters at 1301 E. Lookout Drive, Richardson, Texas, 75082.

60.    Samsung has, or regularly retains, sophisticated legal counsel.

61.    Samsung and its related entities own numerous patents and patent applications.

62.    As of July 19, 2010, the date Samsung was served with the complaint in this case, Samsung had actual knowledge of the expiration of U.S. Patents 4,901,307, 5,056,109, 5,101,501 and 5,109,390.

63.    Despite having actual knowledge of the expiration of U.S. Patents 4,901,307, 5,056,109, 5,101,501, and 5,109,390 as of July 16, 2010, Samsung thereafter continued to falsely mark products with these expired patents and continued to sell such falsely marked products in the United States, including at least the Airave, Reclaim, Restore, Seek, Moment with Google, Intrepid, Instinct HD, M330, M240, Exclaim, Instinct s30, Intercept, Epic 4G, and Omnia II.

64.    Samsung's headquarters and its in-house attorneys specifically review and approve the patent numbers listed in all user guides for its products, including the Samsung Phones and the – Sprint-Samsung Phones at issue in this complaint.

65.    Because Samsung's headquarters specifically reviews and approves all patent numbers listed in the user guides for its products, including the Samsung Phones and the –Sprint-Samsung Phones at issue in this complaint, Samsung had actual knowledge of the fact that U.S. Patent 4,901,307 had already expired when it launched each of the following products: Airave, Reclaim, Restore, Seek, Moment with Google, Intrepid, Instinct HD, M330, M240, Exclaim, Instinct s30, Intercept, Epic 4G, Saga, Knack, u430, Sway, Renown, Omnia, and Omnia II.

66.     During the time period from March 2007 through the present, the time period during which Samsung engaged in the false marking at issue in this case, Samsung was a party in at least 59 patent lawsuits.

67.     Samsung knows that patents expire and an expired patent cannot protect any product from competition.

68.     Samsung is aware of the False Marking Statute and knows that intentionally marking products with an expired patent or a patent that does not cover the product is a violation of that statute.

## *Novatel*

69.     Novatel is a Delaware corporation with its principal place of business at 9645 Scranton Road, Suite 205, San Diego, California, 92121.

70.     Novatel has, or regularly retains, sophisticated legal counsel, including patent counsel.

71.     Novatel owns a variety of patent and patent applications.

72.     Novatel is actively pursuing patents before the United States Patent and Trademark Office.

73.     Novatel and Novatel's attorneys, including Novatel's counsel in this case, were aware of and reviewed the patent listings in the user guides for at least the USB727, the USB760, and the Ovation U727 at least as early as June of 2009, and these patent listings include reference to U.S. Patent 4,901,307.

74.     On information and belief, Novatel and Novatel's attorneys, including Novatel's outside counsel in this case, reviewed the content of the patents (which includes their disclosures, filing dates and issuance dates) listed in the user guides for at least the USB727, the USB760, and the Ovation U727 at least as early as June of 2009, including U.S. Patent 4,901,307.

75.     Consequently, on information and belief, as of June 2009, Novatel had actual knowledge of the expiration of U.S. Patent 4,901,307.

76.     The MiFi2200 user guide includes reference to U.S. Patent 4,901,307.

77.     As of June of 2009, U.S. Patent 4,901,307 had already expired.

78.     Nonetheless, thereafter, Novatel did not correct the patent listings in the user guides for its existing products lines, for example the MiFi2200 and USB760, and also did not stop including reference to U.S. Patent 4,901,307 in the user guides for new products it subsequently released, including for example the Merlin C777 released in August of 2009.

79.     As of July 16, 2010, the date Sprint and Verizon were served with the complaint in this case, Novatel had actual knowledge of the expiration of U.S. Patents 4,901,307; 5,056,109; 5,101,501; and 5,109,390.

80.     Despite having actual knowledge of the expiration of U.S. Patents 4,901,307; 5,056,109; 5,101,501; and 5,109,390 as of July 16, 2010, Sprint thereafter continued to falsely mark products with these expired patents and continued to sell such falsely marked products in the United States, including at least the MiFi2200 and Merlin C777.

81.     Despite having actual knowledge of the expiration of U.S. Patents 4,901,307; 5,056,109; 5,101,501; and 5,109,390 as of July 16, 2010, and despite the fact that Americans filed a motion for a preliminary injunction against Sprint and Verizon related to the MiFi2200 and the Merlin C777, Novatel continued to falsely mark products with these expired patents and continued to sell such falsely marked products in the United States.

82.     During the time period from March 2007 through the present, the time period during which Novatel engaged in the false marking at issue in this case, Novatel was a party in at least 11 patent lawsuits.

83.     Novatel knows that patents expire and an expired patent cannot protect any product from competition.

84.     Novatel is aware of the False Marking Statute and knows that intentionally marking products with an expired patent or a patent that does not cover the product is a violation of that statute.

85.     On or about April 6, 2011, Novatel reached a settlement in a related litigation styled *Promote Innovation LLC v. Novatel Wireless, Inc.*, No. 6:10-635 (E.D. Tex.) pending before the Honorable Judge Davis (the "Promote Case"), which purportedly settled any claim that Novatel falsely marked the Sprint-Novatel Products, the USB727 and the MiFi2200.

86.     On or about March 31, 2011, Promote Innovation LLC filed an amended complaint adding allegations related to Novatel's false marking of the USB727, the MiFi2200 sold by Verizon, and the Sprint Novatel Products, which added claims overlapping with the claims previously raised by Americans against Novatel in its amended complaint filed on January 14, 2011.

87.     On or about April 11, 2011, the Honorable Judge Davis dismissed with prejudice Promote Innovation LLC's ("Promote") false marking claims against Novatel, including claims based on the false marking of the USB727, MiFi2200 and the Sprint-Novatel Products.

88.     On information and belief, neither Novatel or Promote informed the Court in the Promote Case of the proceedings in this case.

89.     On information and belief, neither Novatel or Promote informed the Court in the Promote Case that the claims added in the amended complaint filed by Promote on March 31, 2011 overlapped with claims in Americans January 14, 2011 complaint.

90.     Neither Novatel, Sprint nor Verizon informed Americans of this settlement agreement until April 27, 2011.

91.    On information and belief, Verizon was aware of the Promote Case and the settlement and dismissal in that case prior to April 27, 2011.

92.    The complaint in the Promote Case was filed after Americans filed its original complaint in this case on July 14, 2010.

93.    Novatel had actual knowledge of Americans' complaint filed on July 14, 2010 prior to the filing of the complaint in the Promote Case.

94.    Counsel for Novatel was present at the hearing in this case held on November 23, 2010, prior to the filing of the original complaint in the Promote Case.

95.    In view of the settlement in the Promote Case, Americans is not filing requests for relief against Verizon or Novatel based on their false patent marking of the USB 727 or MiFi2200 or against Sprint in relation to its false marking of the Ovation U727 and Merlin C777.

*Sierra Wireless*

96.    Sierra Wireless is located at 2200 Faraday Ave., Suite 150, Carlsbad, CA 92008.

97.    On information and belief, Sierra Wireless has, or regularly retains, sophisticated legal counsel.

98.    Sierra Wireless owns a variety of patents and patent applications and regularly pursues patent protection for its inventions.

99.    Sierra Wireless is actively pursuing patents before the United States Patent and Trademark Office.

100.    On information and belief, Sierra Wireless was informed by Qualcomm Inc. that it was not required to include Qualcomm patent numbers on the packaging for its products or in the user guides for its products in January of 2009.

101.    Sierra Wireless and Sierra Wireless's attorneys, including Sierra Wireless's counsel in this case, were aware of and reviewed the patent listings in the user guides for at least the

AirCard 402, the 598U, the Compass 597, the AirCard 597E, the AirCard 595U, the AirCard 580, the AirCard 595, and the AirCard 550 at least as early as June of 2009.

102.    On information and belief, Sierra Wireless and Sierra Wireless's attorneys, including Sierra Wireless's outside counsel in this case, reviewed the content of the patents (which includes their disclosures, filing dates and issuance dates) listed in the user guides for at least the AirCard 402, the 598U, the Compass 597, the AirCard 597E, the AirCard 595U, the AirCard 580, the AirCard 595, and the AirCard 550 at least as early as June of 2009, including U.S. Patents D367,062; D372,248; D372,701; D416,857; D452,495; D452,496; D559,256; D560,911; D442,170; D459,303; 4,901,307; 5,056,109; 5,101,501; and 5,109,390.

103.    As of June of 2009, U.S. Patent 4,901,307 had already expired.

104.    Consequently, on information and belief, as of June 2009, Sierra Wireless had actual knowledge of the expiration of U.S. Patent 4,901,307.

105.    Likewise, on information and belief, as of June 2009, Sierra Wireless had actual knowledge regarding the scope of coverage of U.S. Patents D442,170; D459,303; D559,256; and D560,911 as of June 2009 and the inapplicability of these patents to the AirCard 402 and 598U.

106.    Nonetheless, thereafter, Sierra Wireless did not correct the patent listings in the user guides for its existing products lines to remove references to U.S. Patents D442,170; D459,303; D559,256; and D560,911, for example the AirCard 402 and the 598U (also on the packaging for the 598U), and also did not stop including references to U.S. Patents D442,170; D459,303; D559,256; and D560,911 in the user guides for new products it subsequently released, including for example the Overdrive 3G/4G HotSpot, released in January of 2010.

107.    As of July 16, 2010, the date Sierra Wireless was served with the complaint in this case, Sierra Wireless had actual knowledge of the expiration of U.S. Patents 4,901,307; 5,056,109; 5,101,501; and 5,109,390.

108.    As of July 16, 2010, the date Sierra Wireless was served with the complaint in this case, Sierra Wireless had actual knowledge that U.S. Patents D442,170 and D459,303 do not cover the AirCard 402, the 598U, the Compass 597, the AirCard 597E, the AirCard 595U, the AirCard 580, the AirCard 595 or the Overdrive 3G/4G HotSpot, or any portion of any of the foregoing products.

109.    As of July 16, 2010, the date Sierra Wireless was served with the complaint in this case, Sierra Wireless had actual knowledge that U.S. Patents D559,256 and D560,911 do not cover the AirCard 402, the 598U, the Compass 597, or the Overdrive 3G/4G HotSpot, or any portion of any of the foregoing products.

110.    As of July 16, 2010, the date Sierra Wireless was served with the complaint in this case, Sierra Wireless had actual knowledge that U.S. Patents D367,062; D372,248; D372,701; D416,857; D452495; and D452,496 do not cover the AirCard 550, or any portion thereof.

111.    On information and belief, despite having actual knowledge of the expiration of U.S. Patents 4,901,307; 5,056,109; 5,101,501; and 5,109,390 as of July 16, 2010, Sierra Wireless thereafter continued to falsely mark products with these expired patents and continued to sell such falsely marked products in the United States, including at least the AirCard 402 and 598U.

112.    Despite having actual knowledge that none of U.S. Patents D559,256; D560,911; D442,170; and D459,303 covered the AirCard 402, the 598U, or the Overdrive 3G/4G Hotspot, Sierra Wireless continued to falsely mark these products with U.S. Patents D559,256; D560,911; D442,170; and D459,303 and continued to sell them in the United States.

113.    Despite having actual knowledge of the expiration of U.S. Patents 4,901,307; 5,056,109; 5,101,501; and 5,109,390 as of July 16, 2010 and despite the fact that Americans filed a motion for a preliminary injunction against Sierra Wireless's customers Sprint and Verizon, Sierra

Wireless continued to falsely mark products with these expired patents and continued to sell such falsely marked products in the United States.

114.   During the time period from July 2005 through the present, the time period during which Sierra Wireless engaged in the false marking at issue in this case, Sierra Wireless was a party in at least 10 patent lawsuits.

115.   On information and belief, Sierra Wireless knows that patents expire and an expired patent cannot protect any product from competition.

116.   On information and belief, Sierra Wireless is aware of the False Marking Statute and knows that intentionally marking products with an expired patent or a patent that does not cover the product is a violation of that statute.

### _LG_

117.   LG is a corporation with its principal place of business at 10101 Old Grove Road, San Diego, California, 92131.

118.   On information and belief, LG has, or regularly retains, sophisticated legal counsel.

119.   LG owns a large number of patents and patent applications and is actively pursuing patents before the United States Patent and Trademark Office.

120.   During the time period from March 2007 through the present, the time period during which LG engaged in the false marking at issue in this case, LG was a party in at least 48 patent lawsuits.

121.   As of July 16, 2010, the date Sprint was served with the complaint in this case, LG had actual knowledge of the expiration of U.S. Patents 4,901,307; 5,056,109; 5,101,501; and 5,109,390.

122.   Nonetheless, on information and belief, LG continued to falsely mark the user guides of at least the Remarq, Rumor Touch, Lotus Elite, LX370, and Lotus with the patent numbers of

U.S. Patents 4,901,307; 5,056,109; 5,101,501; and 5,109,390, all of which were already expired by July of 2010.

123.   On information and belief, LG knows that patents expire and an expired patent cannot protect any product from competition.

124.   On information and belief, LG is aware of the False Marking Statute and knows that intentionally marking products with an expired patent or a patent that does not cover the product is a violation of that statute.

*HTC*

125.   HTC America is a Washington corporation and has its principal place of business at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington, 98005.

126.   HTC Corp. is a foreign corporation organized under the laws of Taiwan, and has its principal place of business at 23 Hsin Hua Road, Taoyuan 330, Taiwan, R.O.C.

127.   HTC Corp. is the parent corporation of HTC America (both collectively referred to herein as "HTC").

128.   On information and belief, HTC has, or regularly retains, sophisticated legal counsel.

129.   HTC owns a large number of patents and patent applications and is currently pursing patents before the United States Patent and Trademark Office.

130.   During the time period from March 2007 through the present, the time period during which HTC engaged in the false marking at issue in this case, HTC was a party in at least 45 patent lawsuits.

131.   On information and belief, HTC knows that patents expire and an expired patent cannot protect any product from competition.

132.    On information and belief, HTC is aware of the False Marking Statute and knows that intentionally marking products with an expired patent or a patent that does not cover the product is a violation of that statute.

## PERSONAL JURISDICTION

### *Sprint*

133.    Sprint regularly conducts business in this judicial district.

134.    Sprint sells (directly through its website, and through numerous retail stores, for example the Sprint stored located at 103 West Loop 281, Suite 304 in Longview, Texas) products in this judicial district or has purposefully shipped products to this judicial district through established distribution channels.

135.    Sprint is subject to personal jurisdiction in this judicial district because it has sufficient minimum contacts with the forum as a result of business conducted within the State of Texas and within the Eastern District of Texas.

136.    Sprint has systematic and continuous contact with this judicial district.

### *Verizon*

137.    Verizon regularly conducts business in this judicial district.

138.    Verizon sells (directly through its website, and through numerous retail stores, for example the Verizon stored located at 1006 E. End Blvd. N., Suite A, Marshall, TX 75670) products in this judicial district or has purposefully shipped products to this judicial district through established distribution channels.

139.    Verizon is subject to personal jurisdiction in this judicial district because it has sufficient minimum contacts with the forum as a result of business conducted within the State of Texas and within the Eastern District of Texas.

140.    Verizon has systematic and continuous contact with this judicial district.

*Samsung*

141.    Samsung regularly conducts business in this judicial district.

142.    Samsung has its headquarters in this district.

143.    Samsung has a customer care center in this district at 1000 Klein Road, Plano, Texas, 75074.

144.    Samsung is subject to personal jurisdiction in this judicial district because it has sufficient minimum contacts with the forum as a result of business conducted within the State of Texas and within the Eastern District of Texas.

145.    Samsung has systematic and continuous contact with this judicial district.

*Novatel*

146.    Novatel regularly conducts business in this judicial district.

147.    On information and belief, Novatel purposefully ships or has shipped products to this judicial district and sells or has sold, through its customers such as Sprint and Verizon, products within this district.

148.    Novatel is subject to personal jurisdiction in this judicial district because it has sufficient minimum contacts with the forum as a result of business conducted within the State of Texas, within the Eastern District of Texas and with residents of the State of Texas and this district.

149.    Novatel has systematic and continuous contact with this judicial district.

150.    Novatel has sought the benefit of the laws of this district by, *inter alia*, filing counterclaims in cases in this district.

*Sierra Wireless*

151.    Sierra Wireless regularly conducts business in this judicial district.

152.    Sierra Wireless has previously admitted that venue is proper in this district under 28 U.S.C. § 1391(b)-(c).

153.    Individuals in this district can purchase products directly from Sierra Wireless via its website and those products will be shipped directly to them.

154.    On information and belief, Sierra Wireless purposefully ships or has shipped products to this judicial district and sells or has sold, through its customers such as Sprint and Verizon, products within this district.

155.    Sierra Wireless is subject to personal jurisdiction in this judicial district because it has sufficient minimum contacts with the forum as a result of business conducted within the State of Texas, within the Eastern District of Texas and with residents of the State of Texas and this district.

156.    Sierra Wireless has systematic and continuous contact with this judicial district.

### *LG*

157.    LG is currently registered to do business in Texas, including in this district, as a foreign for-profit corporation.

158.    LG does business in this district, has previously done business in this district and has previously admitted that it does business in this district.

159.    On information and belief, LG purposefully ships or has shipped products to this judicial district and sells or has sold, through its customers such as Sprint, products within this district.

160.    LG is subject to personal jurisdiction in this judicial district because it has sufficient minimum contacts with the forum as a result of business conducted within the State of Texas, within the Eastern District of Texas and with residents of the State of Texas and this district.

161.    LG has systematic and continuous contact with this judicial district.

### *HTC America*

162.    On information and belief, HTC America was a Texas corporation until December of 2010 when it was merged into a Washington corporation having the same name.

163.    On information and belief HTC America has offices in the state of Texas.

164.    HTC America is currently registered to do business in Texas, including in this district, as a foreign for-profit corporation.

165.    On information and belief, HTC America purposefully ships or has shipped products to this judicial district and sells or has sold, through its customers such as Sprint, products within this district.

166.    HTC America is subject to personal jurisdiction in this judicial district because it has sufficient minimum contacts with the forum as a result of business conducted within the State of Texas, within the Eastern District of Texas and with residents of the State of Texas and this district.

167.    HTC America has systematic and continuous contact with this judicial district.

*HTC Corp.*

168.    HTC Corp. is the parent corporation of HTC America.

169.    On information and belief, HTC Corp. manufactures the products that HTC America sells and markets within this district.

170.    On information and belief, HTC Corp. purposefully ships or has shipped products to this judicial district and sells or has sold, through its customers such as Sprint, products within this district.

171.    HTC Corp. is subject to personal jurisdiction in this judicial district because it has sufficient minimum contacts with the forum as a result of business conducted within the State of Texas, within the Eastern District of Texas and with residents of the State of Texas and this district.

172.    HTC Corp. has systematic and continuous contact with this judicial district.

## THE FALSELY MARKED PATENTS

173.    U.S. Patent D367,062 claims the ornamental design for an antenna as exemplified below:

 Ex. A.

174.    U.S. Patent D372,248 claims the ornamental design for a communication device as exemplified below:



Ex. B.

175.    U.S. Patent D372,701 claims the ornamental design for a shrink wrap battery pack as exemplified below:

 Ex. C.

176.   U.S. Patent D416,857 claims the ornamental design for a battery housing for a PCMCIA card modem as exemplified below:



Ex. D.

177.   U.S. Patent D442,170 claims the ornamental design for connector for an antenna as exemplified below:



Ex. E.

178.   U.S. Patent D452,495 claims the ornamental design for a wireless communication device for a personal data assistant as exemplified below:



Ex. F.

179.   U.S. Patent D452,496 claims the ornamental design for a wireless communication device for a personal data assistant as exemplified below:



Ex. G.

180.   U.S. Patent D459,303 claims the ornamental design for an audio connector for a PC Card as exemplified below:



Ex. H.

181.   U.S. Patent D559,256 claims the ornamental design for a wireless electronic communications card as exemplified below:



Ex. I.

182.    U.S. Patent D560,911 claims the ornamental design for a carrying case for an electronic communications card as exemplified below:



FIG. 4                    Ex. J.

183.    The application that became U.S. Patent 4,901,307 (the "'307 patent") was filed on October 17, 1986 and issued on February 13, 1990.  Ex. K

184.    The '307 patent expired February 13, 2007.

185.    The application that became U.S. Patent 5,056,109 (the "'109 patent") was filed on November 7, 1989 and issued on October 8, 1991.  Ex. L.

186.    The '109 patent expired November 7, 2009.

187.    The application that became U.S. Patent 5,101,501 (the "'501 patent") was filed on November 7, 1989 and issued on March 31, 1992.  Ex. M.

188.    The '501 patent expired November 7, 2009.

189.    The application that became U.S. Patent 5,109,390 (the "'390 patent") was filed on November 7, 1989 and issued on April 28, 1992.  Ex. N.

190.    The '390 patent expired November 7, 2009.

191.    Consumers consult user guides for the Defendants' products when making purchasing decisions.

192.    Consumers sometimes consult the user guide for the Defendants' products before they purchase such products.

193.    Consumers sometimes review user guides to learn about and evaluate the features of the Defendants' products.

194.    The user guides for the Defendants' products described in this complaint constitute advertising within the meaning of 35 U.S.C. § 292.

195.    Placing a patent number on the packaging for a product qualifies as marking upon or affixing to a product a patent number under 35 U.S.C. § 292.

196.    On information and belief, neither Qualcomm, Inc. nor any other party requested that or required Sprint to include the patent number of expired patents in any of the user guides for its products after those patents had expired.

197.    On information and belief, neither Qualcomm, Inc. nor any other party requested that or required Verizon to include the patent number of expired patents in any of the user guides for its products after those patents had expired.

198.    On information and belief, neither Qualcomm, Inc. nor any other party requested that or required Samsung to include the patent number of expired patents in any of the user guides for its products after those patents had expired.

199.    On information and belief, neither Qualcomm, Inc. nor any other party requested that or required Sierra Wireless to include the patent number of expired patents in any of the user guides for its products after those patents had expired.

200.    On information and belief, neither Qualcomm, Inc. nor any other party requested that or required Novatel to include the patent number of expired patents in any of the user guides for its products after those patents had expired.

201.    On information and belief, neither Qualcomm, Inc. nor any other party requested that or required LG to include the patent number of expired patents in any of the user guides for its products after those patents had expired.

202.    On information and belief, neither Qualcomm, Inc. nor any other party requested that or required HTC to include the patent number of expired patents in any of the user guides for its products after those patents had expired.

## AMERICANS' REQUESTS FOR REMEDIAL MEASURES

203.    The original complaint in this case was filed on July 14, 2010.

204.    On July 20, 2010, counsel for Americans' sent a letter t*o Sprint*, Apple, Samsung and Verizon requesting that they each take remedial measures to prevent additional false patent marking and confirm their intent to do so.  These letters requested a response by July 30, 2010.

205.    Apple responded and communicated with counsel for Americans, and Apple indicated that it was pursuing remedial measures and taking reasonable steps to ensure that the language alleged to be false marking does not appear in future Apple materials.

206.    Receiving no response, counsel for Americans followed up with counsel for Sprint on August 4, 5 and 10, 2010.

207.    Receiving no response, counsel for Americans followed up with counsel for Verizon on August 4, 5 and 10, 2010.

208.    Receiving no response, counsel for Americans followed up with counsel for Samsung on August 4, 5, 6 and 10, 2010.

209.    Sprint, Verizon and Samsung never responded substantively to Americans' repeated request for remedial measures, and thus Americans' filed a motion for a preliminary injunction on August 17, 2010 to prevent further false patent marking.

210.    Thereafter, Americans and Samsung agreed upon reasonable remedial measures to be undertaken by Samsung, and Americans withdrew its request for a preliminary injunction as to Samsung.

211.    Sprint believes that the manufacturers of the products that it sells and which Americans alleges herein are falsely marked are solely responsible for the patent marking at issue.

212.    Sprint represented to the Court that its vendors provided the patent information in its user guides.

213.    Sprint represented to the Court in this case that it does not have the ability to control which the patents are listed in the user guides for its products.

214.    Sprint represented to the Court that its vendors (for example LG and Novatel) provided Sprint with the patent listings for the user guides for its products.

215.    Sprint represented to the Court that it contacted its vendors (for example LG and Novatel) and requested that they verify the accuracy of the patent listings in the user guides for the products such vendors provide to Sprint.

216.    Sprint represented to the Court that its vendors (for example LG) had informed Sprint that the patent markings in their products were being corrected.

217.    Verizon believes that the manufacturers of the products that it sells and which Americans alleges herein are falsely marked are solely responsible for the patent marking at issue.

218.    After the filing of the original complaint in this case on July 14, 2010, Sprint continued to sell products and distribute, via its website and, on information and belief, as a part of the packing for one or more such products, user guides containing the patent number of the expired '307, '109, '501, and '390 patents despite having knowledge that these patents are expired.

219.    After the filing of the original complaint in this case on July 14, 2010, Sprint also continued to sell products and distribute, via its website and, on information and belief, as a part of the packing for one or more such products, user guides containing the patent number of inapplicable patents (for example U.S. Patents D442,170; D459,303; D559,256; and D560,911) despite having knowledge that these patents do not cover the relevant products.

220.    After the filing of the original complaint in this case on July 14, 2010, Verizon continued to sell the MiFi2200 Intelligent Mobile HotSpot and distribute, via its website and, on information and belief, as a part of the packing for that product, user guides containing the patent

number of the expired '307, '109, '501, and '390 patents despite having knowledge that these patents are expired.

221.   Both Sprint and Verizon opposed American's motion to preliminarily enjoin them from *continuing* to mark their products with expired patent numbers.  Both continued selling and distributing products via their websites and, on information and belief, as a part of the packing for one or more such products.

222.   Sprint did not inform the public or its customers of the erroneous patent markings on its products until approximately March of 2011 when it agreed to place notices regarding its false markings in its retail stores.

223.   Sprint could have easily placed such notices in its retail stores in September of 2010 when Americans first requested that it do so.

224.   Sprint did not act to remove or correct the falsely marked user guides for the products it was continuing to sell, for example at least the , from its website until approximately March of 2011 in view of an impending hearing on Americans' motion for a preliminary injunction.

225.   On information and belief, Sprint can correct the user guides on its website in a matter of days (for example by replacing an electronic copy of a user guide which contains false patent markings with an electronic copy that does not contain false markings) the user guides on its website in a matter of days.

226.   Sprint could have easily placed a notice regarding the false marking of its products on its website in September of 2010 to alert the public and customers to prevent further harm due to its false markings.

227.   On information and belief, Verizon never notified any of its customers or the public of the erroneous patent markings on its products.

228.   In March of 2011, just prior to the hearing date for Americans' motion for a preliminary injunction, Sprint and Verizon acted in coordination with their suppliers to undertake the remedial measures requested by Americans to stop the false marking of their products and put in place safe guards to protect the public from further harm due to their false marking.

## THE FALSE MARKING OF SPRINT PRODUCTS

### *Sprint-Sierra Products*

229.   On information and belief, Sprint and Sierra Wireless sell, offer to sell, have sold and/or have offered to sell the following products, which one or both have falsely marked by marking upon, affixing to, or using in advertising in connection with such products one or more expired or inapplicable patents within the last five years in the United States or continues to falsely mark by marking upon, affixing to, or using in advertising in connection with such products one or more expired or inapplicable patents in the United States: AirCard 550; AirCard 580; AirCard 595; AirCard 595U; AirCard 597E; AirCard 402; Compass 597; 598U; and Overdrive 3G/4G Hotspot (collectively the "Sprint-Sierra Products").

230.   Sprint and/or Sierra Wireless included and include patent numbers in the user guides and user manuals accompanying the Sprint-Sierra Products in an effort to provide constructive notice to the public under 35 U.S.C. § 287 that those products were covered by the included patents.

231.   Some of the Sprint-Sierra Products could not be reasonably be marked with all of the patent numbers listed in the accompanying user guides due to the small character of the products.

232.   Sprint and/or Sierra Wireless know that consumers sometimes consult the user guide for their products, including Sprint-Sierra Products, before they purchase such products.

233.   Sprint and/or Sierra Wireless know that consumers sometimes review user guides to learn about and evaluate the features of their products, including the Sprint-Sierra Products, when making purchasing decisions.

234.   Sprint and/or Sierra Wireless utilize the user guides for their products to provide consumers with notices and information regarding their products, including the Sprint-Sierra Products.

235.   Sprint and/or Sierra Wireless post user guides on their respective websites to provide consumers with information regarding their products, including the Sprint-Sierra Products.

236.   Sprint and/or Sierra Wireless sometimes release the user guide for a product before the product is available for purchase.

237.   Sprint and Sierra Wireless have a patent license from Qualcomm (either explicit or implied) that, prior to their expiration, included U.S. Patent 4,901,307, 5,056,109, 5,101,501 and 5,109,390.

238.   On information and belief, Sierra Wireless pays royalties to Qualcomm pursuant to its patent license agreement with Qualcomm.

239.   Sierra Wireless and Sprint were informed by Qualcomm that they were not required to include any Qualcomm patent numbers in the user guides for their products in 2009, over two years after the expiration of U.S. Patent 4,901,307.   Nonetheless, Sprint and Sierra Wireless continued to falsely mark their products with expired patents and inapplicable patents.

240.   Sprint and/or Sierra revised the patent listing included in the user guide for the Sprint-Sierra Products between November 2003 and 2005, for example by including reference to a license from InterDigital Group and removing U.S. Patent Nos. D367,062; D372,248; D372,701; D416,857; D452,495; and D452,496, as shown by a comparison of the patent listing for the AirCard 550 and the AirCard 580.

241.   Sprint and/or Sierra revised the patent listing included in the user guide for the Sprint-Sierra Products again in 2008, including reference to U.S. Patents D559,256 and D560,911.

242.    Sprint and/or Sierra revised the patent listing included in the user guide for the Sprint-Sierra Products again in 2009, including a statement referencing the licensing of technology from Qualcomm 3G, as shown in the user guide for the AirCard 402.

243.    Sprint and Sierra have engaged in a pattern of falsely marking at least 10 different Sprint-Sierra Products with expired or inapplicable patents, which evidences a purpose of deceit as opposed to an unintentional mistake.

244.    The AirCard 580, AirCard 595, AirCard 595U, AirCard 597E, AirCard 402, Compass 597, 598U, and Overdrive 3G/4G Hotspot do not and have never included an antenna connector as claimed in U.S. Patent D442,170.

245.    The AirCard 580, AirCard 595, AirCard 595U, AirCard 597E, AirCard 402, Compass 597, 598U, and Overdrive 3G/4G Hotspot do not and have never included an audio connector as claimed in U.S. Patent D459,303.

246.    A portion of the AirCard 550 is covered by US. Patent D459,303.

247.    The antenna sold with and included in the packaging for the AirCard 550 is covered by U.S. Patent D442,170.

248.    The Sierra Wireless Data Products do not and never have included the carrying case claimed in U.S. Patent D560,911.

### *The AirCard 550*

249.    On information and belief, Sprint and Sierra Wireless sold the AirCard 550 beginning on or about November 18, 2002 through approximately early 2006.

250.    Sprint and/or Sierra Wireless provided user manuals or user guides (or the equivalent thereto) to customers who purchased the AirCard 550 and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

**Patents**

Portions of this product are covered by some or all of the following US patents:

| | | | |
|---|---|---|---|
| 5,515,013 | 5,617,106 | 5,629,960 | 5,682,602 |
| 5,748,449 | 5,845,216 | 5,847,553 | 5,878,234 |
| 5,890,057 | 5,929,815 | 6,169,884 | 6,191,741 |
| 6,199,168 | 6,327,154 | 6,339,405 | D367,062 |
| D372,248 | D372,701 | D416,857 | D442,170 |
| D452,495 | D452,496 | and other patents pending. | |

This product includes technology licensed from QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:

**QUALCOMM®**
**3G CDMA**

| | | | |
|---|---|---|---|
| 4901307 | 5056109 | 5101501 | 5109390 |
| 5228054 | 5267261 | 5267262 | 5337338 |
| 5414796 | 5416797 | 5490165 | 5504773 |
| 5506865 | 5511073 | 5535239 | 5544196 |
| 5568483 | 5600754 | 5657420 | 5659569 |
| 5710784 | 5778338 | | |

**Copyright Notice**

**Copyright**

Copyright © 2003 Sprint Spectrum L.P. All rights reserved. No reproduction in whole or in part without prior written approval.

©2003 Sierra Wireless, Inc. All rights reserved.

Document 2130185 Rev 4.1 (Nov.03)

251.   The AirCard 550 is not covered by any of U.S. Patent Nos. D367,062; D372,248; D372,701; D416,857; D452,495; D452,496.

252.   Sprint and Sierra Wireless do not believe that the AirCard 550 is covered by any of U.S. Patent Nos. D367,062; D372,248; D372,701; D416,857; D452,495; D452,496.

253.   The AirCard 550 does not include a battery.

254.   The AirCard 550 does not include a battery pack.

255.   The AirCard 550 does not include a battery housing.

256.    Sprint and/or Sierra Wireless falsely marked the AirCard 550 with U.S. Patent Nos. D367,062; D372,248; D372,701; D416,857; D452,495; D452,496 knowingly and with intent to deceive the public.

*The AirCard 580*

257.    On information and belief, Sprint and Sierra Wireless sold the AirCard 580 beginning on or about March 3, 2005 and continuing through approximately mid 2007.

258.    Sprint and/or Sierra Wireless provided user manuals or user guides (or the equivalent thereto) to customers who purchased the AirCard 580 and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

Portions of this product are covered by some or all of the following US patents:

| | | | | |
|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,682,602 | 5,845,216 | 5,847,553 |
| 5,878,234 | 5,890,057 | 5,929,815 | 6,169,884 | 6,191,741 |
| 6,199,168 | 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 |
| 6,561,851 | 6,643,501 | 6,653,979 | 6,697,030 | 6,785,830 |
| 6,845,249 | 6,847,830 | 6,876,697 | 6,879,585 | D442,170 |
| D459,303 | | | | |

and other patents pending.

Licensed by QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:

QUALCOMM®
3G CDMA

| | | | | |
|---|---|---|---|---|
| 4901307 | 5056109 | 5101501 | 5109390 | 5228054 |
| 5267261 | 5267262 | 5337338 | 5414796 | 5416797 |
| 5490165 | 5504773 | 5506865 | 5511073 | 5535239 |
| 5544196 | 5568483 | 5600754 | 5657420 | 5659569 |
| 5710784 | 5778338 | | | |

Manufactured or sold by Sierra Wireless Inc., its Affiliates, or its Licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

**Copyright**

© 2005 Sprint Nextel. All rights reserved. No reproduction in whole or in part
without prior written approval. Sprint, the "Going Forward" logo, the NEXTEL
name and logo, and all other trademarks are trademarks of Sprint Nextel.

©2005 Sierra Wireless. All rights reserved.

Document 2130612 Revision 1.0

259.   The AirCard 580 is not covered by either U.S. Patent No. D459,303 or D442,170.

260.   Sprint and Sierra Wireless do not believe that the AirCard 580 is covered by either U.S. Patent No. D459,303 or D442,170.

261.   Sprint and/or Sierra Wireless falsely marked the AirCard 580 with U.S. Patent Nos. D459,303 and D442,170 knowingly and with intent to deceive the public.

*The AirCard 595*

262.   On information and belief, Sprint and Sierra Wireless sold the AirCard 595 beginning on or about September 12, 2006, and continuing until mid-2009.

263.   Sprint and/or Sierra Wireless provided user manuals or user guides (or the equivalent thereto) to customers who purchased the AirCard 595 and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

Portions of this product are covered by some or all of the following US patents:

| | | | | |
|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 |
| 5,890,057 | 5,929,815 | 6,169,884 | 6,191,741 | 6,199,168 |
| 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 | 6,561,851 |
| 6,643,501 | 6,653,979 | 6,697,030 | 6,785,830 | 6,845,249 |
| 6,847,830 | 6,876,697 | 6,879,585 | 6,886,049 | 6,986,171 |
| 6,985,757 | 7,023,878 | D442,170 | D459,303 | |

and other patents pending.

Licensed by QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:     **QUALCOMM®  3G CDMA**

| | | | | |
|---|---|---|---|---|
| 4901307 | 5056109 | 5101501 | 5109390 | 5228054 |
| 5267261 | 5267262 | 5337338 | 5414796 | 5416797 |
| 5490165 | 5504773 | 5506865 | 5511073 | 5535239 |
| 5544196 | 5568483 | 5600754 | 5657420 | 5659569 |
| 5710784 | 5778338 | | | |

Manufactured or sold by Sierra Wireless or its licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

## Copyright

© 2006 Sprint Nextel. All rights reserved. No reproduction in whole or in part without prior written approval. Sprint, the "Going Forward" logo, and other trademarks are trademarks of Sprint Nextel.

©2006 Sierra Wireless. All rights reserved.

Document 2130685 Revision 1.1

264. Sprint and/or Sierra Wireless also included or caused to be included U.S. Patents D459,303 and D442,170 on the outside of the retail packaging for the AirCard 595.

265. The AirCard 595 is not covered by either U.S. Patent No. D459,303 or D442,170.

266. Sprint and Sierra Wireless do not believe that the AirCard 595 is covered by either U.S. Patent No. D459,303 or D442,170.

267. Sprint and/or Sierra Wireless falsely marked the AirCard 595 with U.S. Patent Nos. D459,303 and D442,170 with intent to deceive the public.

*The AirCard 595U*

268.   On information and belief, Sprint and Sierra Wireless sold the AirCard 595U beginning on or about April 22, 2007, and continuing until early 2009.

269.   Sprint and/or Sierra Wireless provided user manuals or user guides (or the equivalent thereto) to customers who purchased the AirCard 595U and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

Portions of this product are covered by some or all of the following US patents:

| | | | | |
|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 |
| 5,890,057 | 5,929,815 | 6,169,884 | 6,191,741 | 6,199,168 |
| 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 | 6,561,851 |
| 6,643,501 | 6,653,979 | 6,697,030 | 6,785,830 | 6,845,249 |
| 6,847,830 | 6,876,697 | 6,879,585 | 6,886,049 | 6,986,171 |
| 6,985,757 | 7,023,878 | 7,053,843 | 7,106,569 | D442,170 |
| D459,303 | | | | |

and other patents pending.

Licensed by QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:          QUALCOMM®
3G CDMA

| | | | | |
|---|---|---|---|---|
| 4901307 | 5056109 | 5101501 | 5109390 | 5228054 |
| 5267261 | 5267262 | 5337338 | 5414796 | 5416797 |
| 5490165 | 5504773 | 5506865 | 5511073 | 5535239 |
| 5544196 | 5568483 | 5600754 | 5657420 | 5659569 |
| 5710784 | 5778338 | | | |

Manufactured or sold by Sierra Wireless or its licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

## Copyright

©2007 Sprint Nextel. All rights reserved. No reproduction in whole or in part without prior written approval. Sprint, the "Going Forward" logo, and other trademarks are trademarks of Sprint Nextel.

©2007 Sierra Wireless. All rights reserved.

Document 2130751 Revision 2.0

270.     Sprint and/or Sierra Wireless also included or caused to be included U.S. Patents D459,303 and D442,170 on the outside of the retail packaging for the AirCard 595U.

271.     The AirCard 595U is not covered by either U.S. Patent No. D459,303 or D442,170.

272.     Sprint and Sierra Wireless do not believe that the AirCard 595U is covered by either U.S. Patent No. D459,303 or D442,170.

273.     Sprint and/or Sierra Wireless falsely marked the AirCard 595U with U.S. Patent Nos. D459,303 and D442,170 knowingly and with intent to deceive the public.

274.     The '307 patent expired before Sprint and Sierra Wireless ever sold a single AirCard 595U.

275.     On information and belief, Sprint and Sierra Wireless sold the AirCard 595U after the expiration of '307 patent and falsely marked such AirCard 595Us with the patent number of the expired '307 patent with intent to deceive the public.

276.     Sprint and/or Sierra Wireless included the patent number of the '307 in the AirCard 595U user guide or user manual (or the equivalent thereto) after the '307 patent expired.

277.     Sprint and Sierra Wireless sold AirCard 595Us with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

278.     Because the '307 patent expired before Sprint's and Sierra Wireless's first sale of any AirCard 595U, Sprint and Sierra Wireless did not have a reasonable belief that the '307 patent covered the AirCard 595U.

## *The AirCard 597E*

279.     On information and belief, Sprint and Sierra Wireless sold the AirCard 597E beginning in or about May of 2007 and continuing until mid 2009.

280.    Sprint and/or Sierra Wireless provided user manuals or user guides (or the equivalent thereto) to customers who purchased the AirCard 597E and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

Portions of this product are covered by some or all of the following US patents:

| | | | | |
|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 |
| 5,890,057 | 5,929,815 | 6,169,884 | 6,191,741 | 6,199,168 |
| 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 | 6,561,851 |
| 6,643,501 | 6,653,979 | 6,697,030 | 6,785,830 | 6,845,249 |
| 6,847,830 | 6,876,697 | 6,879,585 | 6,886,049 | 6,986,171 |
| 6,985,757 | 7,023,878 | 7,053,843 | 7,106,569 | D442,170 |
| D459,303 | | | | |

and other patents pending.

Licensed by QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:

**QUALCOMM®**
**3G CDMA**

| | | | | |
|---|---|---|---|---|
| 4901307 | 5056109 | 5101501 | 5109390 | 5228054 |
| 5267261 | 5267262 | 5337338 | 5414796 | 5416797 |
| 5490165 | 5504773 | 5506865 | 5511073 | 5535239 |
| 5544196 | 5568483 | 5600754 | 5657420 | 5659569 |
| 5710784 | 5778338 | | | |

Manufactured or sold by Sierra Wireless or its licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

## Copyright

©2007 Sprint Nextel. All rights reserved. No reproduction in whole or in part without prior written approval. SPRINT and other trademarks are trademarks of Sprint Nextel.

©2007 Sierra Wireless. All rights reserved.

Document 2130756 Revision 1.0

281.    The AirCard 597E is not covered by either U.S. Patent No. D459,303 or D442,170.

282.    Sprint and Sierra Wireless do not believe that the AirCard 597E is covered by either U.S. Patent No. D459,303 or D442,170.

283.   Sprint and/or Sierra Wireless falsely marked the AirCard 597E with U.S. Patent Nos. D459,303 and D442,170 knowingly and with intent to deceive the public.

284.   The '307 patent expired before Sprint and Sierra Wireless ever sold a single AirCard 597E.

285.   On information and belief, Sprint and/or Sierra Wireless sold the AirCard 597E after the expiration of '307 patent and falsely marked such AirCard 597Es with the patent number of the expired '307 patent with intent to deceive the public.

286.   Sprint and/or Sierra Wireless included the patent number of the '307 in the AirCard 597E user guide or user manual (or the equivalent thereto) after the '307 patent expired.

287.   Sprint and Sierra Wireless sold AirCard 597Es with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

288.   Because the '307 patent expired before Sprint's and Sierra Wireless's first sale of any AirCard 597E, Sprint and Sierra Wireless did not have a reasonable belief that the '307 patent covered the AirCard 597E.

### *The AirCard 402*

289.   On information and belief, Sprint and Sierra Wireless began selling the AirCard 402 on or about April 22, 2009 and continues to sell the AirCard 402.

290.   Sprint and/or Sierra Wireless provided user manuals and/or guides (or the equivalent thereto) to customers who purchased the AirCard 402 and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

Portions of this product are covered by some or all of the following US patents:

| | | | | | | |
|---|---|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 | 5,890,057 | 5,929,815 |
| 6,169,884 | 6,191,741 | 6,199,168 | 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 |
| 6,561,851 | 6,643,501 | 6,653,979 | 6,697,030 | 6,785,830 | 6,845,249 | 6,847,830 |
| 6,876,697 | 6,879,585 | 6,886,049 | 6,968,171 | 6,985,757 | 7,023,878 | 7,053,843 |
| 7,106,569 | 7,145,267 | 7,200,512 | 7,287,162 | 7,295,171 | D442,170 | D459,303 |
| D559,256 | D560,911 | | | | | |

and other patents pending.

This product includes technology licensed from QUALCOMM® 3G.

Manufactured or sold by Sierra Wireless or its licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

## Copyright

©2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

291.    The AirCard 402 is not covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

292.    Sprint and Sierra Wireless do not believe that the AirCard 402 is covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

293.    Sprint and/or Sierra Wireless falsely marked the AirCard 402 with U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911 knowingly and with the intent to deceive the public.

294.    The '307 patent expired before Sprint and Sierra Wireless ever sold a single AirCard 402.

295.    On information and belief, Sprint and/or Sierra Wireless sold the AirCard 402 after the expiration of '307 patent and falsely marked such AirCard 402's with the patent number of the expired '307 patent with intent to deceive the public.

296.     Sprint and/or Sierra Wireless included the patent number of the '307 in the AirCard 402 user guide or user manual (or the equivalent thereto) after the '307 patent expired.

297.     Sprint and Sierra Wireless sold AirCard 402s with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

298.     Because the '307 patent expired before Sprint's and Sierra Wireless's first sale of any AirCard 402, Sprint and Sierra Wireless did not have and do not have a reasonable belief that the '307 patent covers the AirCard 402.

299.     The '109, '501 and '390 patents have expired, and Sprint and Sierra Wireless continue to sell the AirCard 402 marked with the patent number of the expired '109, '501 and '390 patents with intent to deceive the public.

### *The Compass 597*

300.     On information and belief, Sprint and Sierra Wireless sold the Compass 597 beginning on or about April 1, 2008 and continuing through late 2009.

301.     Sprint and/or Sierra Wireless provided user manuals and/or guides (or the equivalent thereto) to customers who purchased the Compass 597 and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

Portions of this product are covered by some or all of the following US patents:

| | | | | | | |
|---|---|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 | 5,890,057 | 5,929,815 |
| 6,169,884 | 6,191,741 | 6,199,168 | 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 |
| 6,561,851 | 6,643,501 | 6,653,979 | 6,697,030 | 6,785,830 | 6,845,249 | 6,847,830 |
| 6,876,697 | 6,879,585 | 6,886,049 | 6,968,171 | 6,985,757 | 7,023,878 | 7,053,843 |
| 7,106,569 | 7,145,267 | 7,200,512 | 7,287,162 | 7,295,171 | D442,170 | D459,303 |
| D559,256 | D560,911 | | | | | |

and other patents pending.

Licensed by QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:

| | | | | | | |
|---|---|---|---|---|---|---|
| 4,901,307 | 5,056,109 | 5,101,501 | 5,109,390 | 5,228,054 | 5,267,261 | 5,267,262 |
| 5,337,338 | 5,414,796 | 5,416,797 | 5,490,165 | 5,504,773 | 5,506,865 | 5,511,073 |
| 5,535,239 | 5,544,196 | 5,568,483 | 5,600,754 | 5,657,420 | 5,659,569 | 5,710,784 |
| 5,778,338 | | | | | | |

Manufactured or sold by Sierra Wireless or its licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

## Copyright

©2008 Sprint Nextel. All rights reserved. No reproduction in whole or in part without prior written approval. SPRINT and other trademarks are trademarks of Sprint Nextel.

©2008 Sierra Wireless. All rights reserved.

302.   Sprint and/or Sierra Wireless also included or caused to be included U.S. Patents D459,303 and D442,170 on the outside of the retail packaging for the Compass 597.

303.   The Compass 597 is not covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

304.   Sprint and Sierra Wireless do not believe that the Compass 597 is covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

305.   Sprint and/or Sierra Wireless falsely marked the Compass 597 with U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911 knowingly and with intent to deceive the public.

306.   The '307 patent expired before Sprint and Sierra Wireless ever sold a single Compass 597.

307.    Sprint and/or Sierra Wireless included the patent number of the '307 in the Compass 597 user guide or user manual (or the equivalent thereto) after the '307 patent expired.

308.    Sprint and Sierra Wireless sold Compass 597's with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

309.    On information and belief, Sprint and/or Sierra Wireless sold the Compass 597 after the expiration of '307 patent and falsely marked such Compass 597's with the patent number of the expired '307 patent with intent to deceive the public.

310.    Because the '307 patent expired before Sprint's and Sierra Wireless first sale of any Compass 597, Sprint and Sierra Wireless did not have a reasonable belief that the '307 patent covered the Compass 597.

311.    On information and belief, the '109, '501, and '390 patents have expired, and Sprint and Sierra Wireless continued to sell the Compass 597 marked with the patent number of the expired '109, '501, and '390 patents after their expiration with intent to deceive the public.

*The 598U*

312.    On information and belief, Sprint and Sierra Wireless began selling the 598U on or about December 17, 2008 and continues to sell the 598U.

313.    Sprint and/or Sierra Wireless provided user manuals or user guides (or the equivalent thereto) to customers who purchased the 598U and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

Portions of this product are covered by some or all of the following US patents:

| | | | | | | |
|---|---|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 | 5,890,057 | 5,929,815 |
| 6,169,884 | 6,191,741 | 6,199,168 | 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 |
| 6,561,851 | 6,643,501 | 6,653,979 | 6,697,030 | 6,785,830 | 6,845,249 | 6,847,830 |
| 6,876,697 | 6,879,585 | 6,886,049 | 6,968,171 | 6,985,757 | 7,023,878 | 7,053,843 |
| 7,106,569 | 7,145,267 | 7,200,512 | 7,287,162 | 7,295,171 | D442,170 | D459,303 |
| D559,256 | D560,911 | | | | | |

and other patents pending.

Licensed by QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:

| | | | | | | |
|---|---|---|---|---|---|---|
| 4,901,307 | 5,056,109 | 5,101,501 | 5,109,390 | 5,228,054 | 5,267,261 | 5,267,262 |
| 5,337,338 | 5,414,796 | 5,416,797 | 5,490,165 | 5,504,773 | 5,506,865 | 5,511,073 |
| 5,535,239 | 5,544,196 | 5,568,483 | 5,600,754 | 5,657,420 | 5,659,569 | 5,710,784 |
| 5,778,338 | | | | | | |

Manufactured or sold by Sierra Wireless or its licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

## Copyright

©2008 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

©2008 Sierra Wireless. All rights reserved.

314.   Sprint and/or Sierra Wireless also included or caused to be included U.S. Patents D459,303; D442,170; D559,256; and D560,911 on the outside of the retail packaging for the 598U.

315.   The 598U is not covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

316.   Sprint and Sierra Wireless do not believe that the 598U is covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

317.   Sprint and/or Sierra Wireless falsely marked the 598U with U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911 knowingly and with intent to deceive the public.

318.   The '307 patent expired before Sprint and Sierra Wireless ever sold a single 598U.

319.   Sprint and/or Sierra Wireless included the patent number of the '307 in the 598U user guide or user manual (or the equivalent thereto) after the '307 patent expired.

320.   Sprint and Sierra Wireless sold 598Us with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

321.   Sprint and/or Sierra Wireless sold the 598U after the expiration of '307 patent and falsely marked such 598Us with the patent number of the expired '307 patent knowingly and with intent to deceive the public.

322.   Because the '307 patent expired before Sprint's and Sierra Wireless's first sale of any 598U, Sprint and Sierra Wireless did not have and do not have a reasonable belief that the '307 patent covered or covers the 598U.

323.   On information and belief, the '109, '501, and '390 patents have expired, and Sprint and Sierra Wireless continue to sell the 598U marked with the patent number of the expired '109, '501, and '390 patents with intent to deceive the public.

*The Overdrive 3G/4G Hotspot*

324.   On information and belief, Sprint and Sierra Wireless first began selling the Overdrive 3G/4G Hotspot on or about January 10, 2010 and continue to sell the product.

325.   Sprint and/or Sierra Wireless provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Overdrive 3G/4G Hotspot and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

*Patents*

Portions of this product may be covered by some or all of the following US patents:

| | | | | | |
|---|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 | 5,890,057 |
| 5,929,815 | 6,169,884 | 6,191,741 | 6,199,168 | 6,339,405 | 6,359,591 |
| 6,400,336 | 6,516,204 | 6,561,861 | 6,643,501 | 6,653,979 | 6,697,030 |
| 6,785,830 | 6,845,249 | 6,847,830 | 6,876,697 | 6,879,585 | 6,886,049 |
| 6,968,171 | 6,985,757 | 7,023,878 | 7,053,843 | 7,106,569 | 7,145,267 |
| 7,200,512 | 7,287,162 | 7,295,171 | D442,170 | D459,303 | D559,256 |
| D560,911 | | | | | |

and other patents pending.

This product includes technology licensed from QUALCOMM® 3G.

Manufactured or sold by Sierra Wireless Inc. or its Licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

*Copyright*

©2010 Sprint. All rights reserved. No reproduction in whole or in part without prior written approval.

326.   The Overdrive 3G/4G Hotspot is not covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

327.   Sprint and Sierra Wireless do not believe that the Overdrive 3G/4G Hotspot is covered by any of U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911.

328.   Sprint and/or Sierra Wireless falsely marked the Overdrive 3G/4G Hotspot with U.S. Patent Nos. D459,303; D442,170; D559,256; and D560,911 knowingly and with intent to deceive the public.

*Sprint-Novatel Products*

329.   Sprint and Novatel sell, offer to sell, have sold and/or have offered to sell the following products, which one or both have falsely marked by marking upon, affixing to, or using in advertising in connection with such products one or more expired patents within the last five years

in the United States or continues to falsely mark with one or more expired patents in the United

States: Ovation U727; and Merlin C777 (collectively the "Sprint-Novatel Products").

330.    Sprint and/or Novatel included and include patent numbers in the user guides and

user manuals accompanying the Sprint-Novatel Products in an effort to provide constructive notice

to the public under 35 U.S.C. § 287 that those products were covered by the included patents.

331.    The Sprint-Novatel Products could not be reasonably marked with all of the patent

numbers listed in the accompanying user guides due to the small character of the products.

332.    Sprint and/or Novatel know that consumers sometimes consult the user guide for

their products, including Sprint-Novatel Products, before they purchase such products.

333.    Sprint and/or Novatel know that consumers sometimes review user guides to learn

about and evaluate the features of their products, including the Sprint-Novatel Products, when

making purchasing decisions.

334.    Sprint and/or Novatel utilize the user guides for their products to provide consumers

with notices and information regarding their products, including the Sprint-Novatel Products.

335.    Sprint and/or Novatel post user guides on their respective websites to provide

consumers with information regarding their products, including the Sprint-Novatel Products.

336.    Sprint and/or Novatel sometimes release the user guide for a product before the

product is available for purchase.

337.    Sprint and Novatel have a patent license from Qualcomm (either explicit or implied)

that, prior to their expiration, included U.S. Patent 4,901,307; 5,056,109; 5,101,501; and 5,109,390.

338.    On information and belief, Novatel pays royalties to Qualcomm pursuant to its patent

license agreement with Qualcomm.

339.    Between September 2007 and March 2009 (after the expiration of U.S. Patent

4,901,307), Sprint and/or Novatel revised the patent listing included in the user guide for the Sprint-

Novatel products, and included reference to Qualcomm 3G, as shown by a comparison of the user guide for the Ovation U727 and the Merlin C777.

340.    The user guide for the Merlin C777 includes in the table of contents a specific reference to the "Patents" section.  Additionally, the electronic file available online includes an electronic table of contents that also includes a reference specifically directed to "Patents" section of the user guide.

*Ovation U727*

341.    On information and belief, Sprint and Novatel first began selling the Ovation U727 on or about September 27, 2007.

342.    Sprint and/or Novatel marked the packaging of the Ovation U727 with the following, or similar, copyright and patent notices:

**Patent Notice**

be purchased separately. Operates within the CDMA network. This device will not oper...
Licensed by QUALCOMM® Incorporated under one or more of the following United States Patents and/or their counterparts in other nations: 4,901,307 5,490,165 5,056,109 5,504,773 5,101,501 5,506,865 5,109,390 5,511,073 5,228,054 5,535,239 5,267,261 5,544,196 5,267,262 5,568,483 5,337,338 5,600,754 5,414,796 5,657,420 5,416,797 5,659,569 5,710,784 5,778,338 Patents Pending

**Copyright Notice**

©2007 Sprint Nextel. All rights reserved.

343.    The '307 patent expired prior to Sprint's and Novatel's first sale of any Ovation U727.

344.    Sprint and/or Novatel first marked the packaging of the Ovation U727 with the patent number of the '307 patent after the patent had already expired.

345.    Sprint and Novatel sold Ovation U727s with the packaging marked with the patent number of the '307 patent after it expired.

346.   Because the '307 patent expired before Sprint's and Novatel's first sale of any Ovation U727, Sprint and Novatel did not have a reasonable belief that the '307 patent covered the Ovation U727.

347.   Sprint and/or Novatel falsely marked the Ovation U727 with the expired '307 patent knowingly and with intent to deceive the public.

### *Merlin C777*

348.   Sprint and Novatel have sold and continue to sell Novatel Wireless Merlin C777s ("Merlin C777") which Sprint and/or Novatel have falsely marked and falsely mark (by marking the user guides accompanying the products) with the patent number of the expired '307, '390, '501, and '109 patents.

349.   Sprint and/or Novatel provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Merlin C777 and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents

QUALCOMM® 3G CDMA

Licensed by QUALCOMM® Incorporated under one or more of the following Patents:

| | | | | |
|---|---|---|---|---|
| 4,901,307 | 5,490,165 | 5,056,109 | 5,504,773 | 5,101,501 |
| 5,506,865 | 5,109,390 | 5,511,073 | 5,228,054 | 5,535,239 |
| 5,267,261 | 5,544,196 | 5,267,262 | 5,563,483 | 5,337,338 |
| 5,600,754 | 5,414,796 | 5,657,420 | 5,416,797 | 5,659,569 |
| 5,710,784 | 5,778,338 | | | |

**Copyright Notice**

## Copyright

©2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

350.    The user guide for the Merlin C777 submitted by Novatel Wireless to the United States Federal Communications Commission on March 25, 2009 (after the expiration of U.S. Patent 4,901,307) did not include the patent numbers of the expired '307, '390, '501, and '109 patents. https://fjallfoss.fcc.gov/oetcf/eas/reports/ViewExhibitReport.cfm?mode=Exhibits&RequestTimeout =500&calledFromFrame=N&application_id=170751&fcc_id='PKRNVWCC760'

351.    Between March 25, 2009 and August 3, 2009, Sprint and/or Novatel revised the user guide for the Merlin C777 and added the patent number of the expired '307 patent to the user guide for the Merlin C777, despite the fact that it was expired.

352.    Sprint did not sell the Merlin C777 prior to August 3, 2009.  8/3/2009 Sprint Press Release.

353.    In or about February of 2009 Sprint and/or Novatel were in the process of reviewing and revising the packaging, including the patent markings, for the Merlin C777.  For example, Sprint and Novatel discussed the addition of U.S. Patent 5,129,098 to the packaging in February of 2009. despite the fact that this patent was filed in 1990, issued in 1992, and expired September 24, 2010.

354.    Sprint and/or Novatel conducted an in-depth review and revision process for the user guide for the Merlin C777 in February of 2009.

355.    Sprint's legal department reviewed in detail the packaging and user guide for the Merlin C777 in February 2009, including fixing such slight details as a comma missing from the identification of Novatel Wireless, Inc. on the packaging for the Merlin C777.

356.    The '307 patent expired before Sprint and Novatel ever sold a single Merlin C777.

357.    Sprint and/or Novatel included the patent number of the '307 in the Merlin C777 user guide or user manual (or the equivalent thereto) after the '307 patent expired.

358.     Sprint and Novatel sold Merlin C777s with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

359.     Because the '307 patent expired before Sprint's and Novatel's first sale of any Merlin C777, Sprint and Novatel did not have and do not have a reasonable belief that the '307 patent covered or covers the Merlin C777.

360.     On information and belief, Sprint and/or Novatel falsely marked and falsely mark the Merlin C777s knowingly and with the intent to deceive the public.

*Sprint-Samsung Products*

361.     Sprint and Samsung have sold within the past five years in the United States and sell the Airave which Sprint and/or Samsung has falsely marked or falsely marks by marking upon, affixing to, or using in advertising in connection with such products the patent number of one or more of the expired '307, '390, '501, and '109 patents.

362.     Sprint and Samsung have sold within the past five years and sell within the United States the following Samsung products which Sprint and/or Samsung has falsely marked or falsely marks by marking upon, affixing to, or using in advertising in connection with such products the patent number of one or more of the expired '307, '390, '501, and '109 patents: Exclaim; Reclaim; M330; M240; Instinct s30; Moment with Google; Instinct HD; Intrepid; Seek; Intercept; Epic 4G; and Restore (collectively the "Sprint-Samsung Phones").

363.     Sprint and/or Samsung included and include patent numbers in the user guides and user manuals accompanying the Sprint-Samsung Phones and the Airave in an effort to provide constructive notice to the public under 35 U.S.C. § 287 that those products were covered by the included patents.

364.    The Sprint-Samsung Phones and the Airave could not be reasonably marked with all of the patent numbers listed in the accompanying user guides due to the small character of the products.

365.    Sprint and/or Samsung know that consumers sometimes consult the user guide for their products, including Sprint-Samsung Phones and the Airave, before they purchase such products.

366.    Sprint and/or Samsung know that consumers sometimes review user guides to learn about and evaluate the features of their products, including the Sprint-Samsung Phones and the Airave, when making purchasing decisions.

367.    Sprint and/or Samsung utilize the user guides for their products to provide consumers with notices and information regarding their products, including the Sprint-Samsung Phones and the Airave.

368.    Sprint and/or Samsung post user guides on their respective websites to provide consumers with information regarding their products, including the Sprint-Samsung Phones and the Airave.

369.    Sprint and/or Samsung sometimes release the user guide for a product before the product is available for purchase.

370.    Sprint and Samsung have a patent license from Qualcomm (either explicit or implied) that, prior to their expiration, included U.S. Patent 4,901,307; 5,056,109; 5,101,501; and 5,109,390.

371.    On information and belief, Samsung pays royalties to Qualcomm pursuant to its patent license agreement with Qualcomm.

372.    Between November of 2008 and April of 2009, Sprint and/or Samsung revised the patent listing included in the user guide for the Sprint Samsung Phones to include reference to a

patent license from InterDigital Group, as shown by a comparison on the user guide for the Intrepid and the Seek, after the expiration of U.S. Patent 4,901,307. Nonetheless, Sprint and Samsung continued to include this expired patent in the patent listings in the user guides for the Sprint-Samsung Products.

373.   Sprint and/or Samsung again revised the patent listing included in the user guide for the Sprint Samsung Phones between June 14, 2010 and August 17, 2010, and added reference to three patents (namely U.S. Patents  7,295,673; 7,460,688; and 7,519,274), as shown by a comparison of the patent listings from the user guide for the Intercept and the Epic.

374.   The original complaint in this case was filed and both Sprint and Samsung were served with a copy of the complaint in this case before August 17, 2010. Nonetheless, Sprint and Samsung included the expired '307, '109, '501, and '390 patents in the user guide for the Epic which was not launched by Sprint and Samsung until August 31, 2010.

375.   Additionally, U.S. Patent 7,519,274 did not issue until April 2009, over two years after the expiration of the '307 patent. Nonetheless, Sprint and/or Samsung include reference to both of these patents in the user guide for the Epic which demonstrates further revision of the patent listing for the Sprint Samsung Phones after the expiration of the '307 patent.

376.   Sprint and Samsung have engaged in a pattern of falsely marking numerous products with expired patents, including at least 13 different Sprint Samsung Product lines.

377.   This pattern of conduct demonstrates intentional conduct as opposed to a innocent mistake.

*Airave*

378.   On information and belief, Sprint and Samsung first sold the Airave on or about September 17, 2007 and continue to sell the Airave.

379.   Sprint and/or Samsung provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Airave and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

User Guide template version 7B (December 2007)

**Copyright Notice**

© 2008 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

10/6/08

380.   On information and belief, the '307 patent expired prior to Sprint's and Samsung's first sale of any Airave.

381.   Sprint and/or Samsung included the patent number of the '307 in the Airave user guide or user manual (or the equivalent thereto) after the '307 patent expired.

382.   Sprint and Samsung sold Airaves with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

383.   Because the '307 patent expired before Sprint's and Samsung's first sale of any Airave, Sprint and Samsung did not have a reasonable belief that the '307 patent covered the Airave.

384.   On information and belief, Sprint and/or Samsung falsely marked the Airave knowingly and with the intent to deceive the public.

*Sprint-Samsung Phones*

385.   On information and belief, Sprint and Samsung first began selling the Exclaim in or about June of 2009.

386.   Sprint and/or Samsung provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Exclaim and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

387.   On information and belief, Sprint and Samsung first began selling the Reclaim on or about August 14, 2009.

388.   Sprint and/or Samsung provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Reclaim and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated
under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and
is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat.
6,011,554 and other patents pending.

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other
marks are the property of their respective owners.

389.   The '307, '109, '501, and '390 patents all expired prior to Sprint's and Samsung's first sale of any Reclaim.

390.   Sprint and/or Samsung included the patent numbers of the '307, '109, '501, and '390 patents in the Reclaim user guide or user manual (or the equivalent thereto) after the '307, '109, '501, and '390 patents expired.

391.   Sprint and Samsung sold Reclaims with accompanying user guides or user manuals which included the patent numbers of the '307, '109, '501, and '390 patents after the '307, '109, '501, and '390 patents expired.

392.   Because the '307, '109, '501, and '390 patents all expired before Sprint's and Samsung's first sale of any Reclaim, Sprint and Samsung did not have a reasonable belief that the '307 patent covered the Reclaim.

393.   On information and belief, Sprint and Samsung first began selling the M330 on or about September 14, 2009.

394.   Sprint and/or Samsung provided user manuals or user guides (or the equivalent thereto) to customers who purchased the M330 and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,650,560 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

395.   On information and belief, Sprint and Samsung first began selling the M240 on or about September 8, 2009.

396.   Sprint and/or Samsung provided user manuals or user guides (or the equivalent thereto) to customers who purchased the M240 and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated
under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,560,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and
is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat.
6,011,554 and other patents pending.

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other
marks are the property of their respective owners.

397. On information and belief, Sprint and Samsung first began selling the Instinct s30 on or about April 19, 2009.

398. Sprint and/or Samsung provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Instinct s30 and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,233 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

399.    On information and belief, Sprint and Samsung first began selling the Moment with Google on or about November 1, 2009.

400.    Sprint and/or Samsung provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Moment with Google and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

**Copyright Notice**

©2009 Sprint. SPRINT and the logo are trademarks of Sprint.
Other marks are the property of their respective owners.

10/29/09

401.    On information and belief, Sprint and Samsung first began selling the Instinct HD on or about September 24, 2009.

402.    Sprint and/or Samsung provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Instinct HD and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated
under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and
is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat.
6,011,554 and other patents pending.

**Copyright Notice**

©2009 Sprint. SPRINT and the logo are trademarks of Sprint. Other
marks are the property of their respective owners.

9/11/09

403.    On information and belief, Sprint and Samsung first began selling the Intrepid on or about October 7, 2009.

404.    Sprint and/or Samsung provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Intrepid and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

User Guide template version 8a_FM (November 2008)

**Copyright Notice**

©2009 Sprint. SPRINT and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

9/29/09

405.    On information and belief, Sprint and Samsung first began selling the Seek on or about May 11, 2010.

406.    Sprint and/or Samsung provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Seek and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated
under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |

| | |
|---|---|
| 5,490,165 | 5,511,073 |

T9 Text Input is licensed by Nuance Communications, Inc. and
is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat.
6,011,554 and other patents pending.

User Guide template version 9a_FM (April 2009)

**Copyright Notice**

©2010 Sprint. SPRINT and the logo are trademarks of Sprint.
Other marks are the property of their respective owners.

3/25/10

407.    The '307, '109, '501, and '390 patents all expired prior to Sprint's and Samsung's first sale of any Seek.

408.    Sprint and/or Samsung included the patent numbers of the '307, '109, '501, and '390 patents in the Seek user guide or user manual (or the equivalent thereto) after the '307, '109, '501, and '390 patents expired.

409.    Sprint and Samsung sold Seeks with accompanying user guides/manuals which included the patent numbers of the '307, '109, '501 and '390 patents after the '307, '109, '501, and '390 patents expired.

410.    Because the '307, '109, '501, and '390 patents all expired before Sprint's and Samsung's first sale of any Seek, Sprint and Samsung did not have a reasonable belief that the '307 patent covered the Seek.

411.    On information and belief, Sprint and Samsung first began selling the Restore on or about June 7, 2010.

412.    Sprint and/or Samsung provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Restore and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

User Guide template version 9a_FM (April 2009)

**Copyright Notice**

©2010 Sprint. SPRINT and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

5/13/10

413.    The '307, '109, '501, and '390 patents all expired prior to Sprint's and Samsung's first sale of any Restore.

414.     Sprint and/or Samsung included the patent numbers of the '307, '109, '501, and '390 patents in the Restore user guide or user manual (or the equivalent thereto) after the '307, '109, '501, and '390 patents expired.

415.     Sprint and Samsung sold Restores with accompanying user guides/manuals which included the patent numbers of the '307, '109, '501, and '390 patents after the '307, '109, '501, and '390 patents expired.

416.     Because the '307, '109, '501, and '390 patents all expired before Sprint's and Samsung's first sale of any Restore, Sprint and Samsung did not have a reasonable belief that the '307, '109, '501, and '390 patents covered the Restore.

417.     On information and belief, Sprint and Samsung first began selling the Intercept on or about July 11, 2010.

418.     Sprint and/or Samsung provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Intercept and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

*User Guide Proprietary Notice*

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |

5,490,165     5,511,073

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

**Copyright Notice**

©2010 Sprint. SPRINT and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

6/14/10

419.    The '307, '109, '501, and '390 patents all expired prior to Sprint's and Samsung's first sale of any Intercept.

420.    Sprint and/or Samsung included the patent numbers of the '307, '109, '501, and '390 patents in the Intercept user guide or user manual (or the equivalent thereto) after those patents had expired.

421.    Sprint and Samsung sold Intercepts with accompanying user guides/manuals which included the patent numbers of the '307, '109, '501, and '390 patents after those  patents had expired.

422.    Because the '307, '109, '501, and '390 patents all expired before Sprint's and Samsung's first sale of any Intercept, Sprint and Samsung did not have a reasonable belief that any of those patents covered the Intercept.

423.    On information and belief, Sprint and Samsung first began selling the Epic 4G on or about August 31, 2010.

424.    At least as early as the service of the complaint in this case, Sprint and Samsung knew that the '307, '109, '501, and '390 patents had all expired.

425.    Sprint and/or Samsung provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Epic 4G and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

Note: Pat. 7,295,673; 7,460,688; 7,519,274

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

**Copyright Notice**

©2010 Sprint. SPRINT and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

8/17/10

426.   The '307, '109, '501, and '390 patents all expired prior to Sprint's and Samsung's first sale of any Epic 4G.

427.   Neither Sprint nor Samsung included reference to any of U.S. Patents 7,295,673; 7,460,688; or 7,519,274 in the user guide for the Intercept which bears a date of June 14, 2010 as shown in paragraph 418 above.  This shows revision of the patent listing for the Sprint Samsung Phones.

428.   Sprint and/or Samsung included the patent numbers of the '307, '109, '501, and '390 patents in the Epic 4G user guide or user manual (or the equivalent thereto) after those patents had expired.

429.    Sprint and Samsung sold Epic 4Gs with accompanying user guides/manuals which included the patent numbers of the '307, '109, '501, and '390 patents after those patents had expired.

430.    Because the '307, '109, '501, and '390 patents all expired before Sprint's and Samsung's first sale of any Epic 4G, Sprint and Samsung did not have a reasonable belief that any of those patents covered the Epic 4G.

431.    Sprint and Samsung launched the Epic 4G and distributed user guides marked with the expired '307, '109, '501, and '390 patents after Americans filed a motion for a preliminary injunction seeking, *inter alia*, an order prohibiting Sprint and Samsung from launching new product models falsely marked with the expired 307, '109, '501, and '390 patents.

432.    The user guide for the Epic 4G (FCC ID # A3LSPHD700) submitted to the United States Federal Communications Commission on July 20, 2010 did not contain references to the expired '307, '109, '501, and '390 patents.

433.    Sprint and/or Samsung revised the user guide for the Epic 4G between July 20, 2010 and August 17, 2010, after the filing and service of the complaint in this case, and included reference to the expired '307, '109, '501, and '390 patents.

434.    The '307 patent expired prior to Sprint's and Samsung's first sale of any of the Sprint-Samsung Phones.

435.    Sprint and/or Samsung included the patent number of the '307 patent in the user guides or user manuals (or the equivalent thereto) for the Sprint-Samsung Phones after the '307 patent expired.

436.    Sprint and Samsung sold Sprint-Samsung Phones with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

437.   Because the '307 patent expired before Sprint's and Samsung's first sale of any of the Sprint-Samsung Phones, Sprint and Samsung did not have a reasonable belief that the '307 patent covered any of the Sprint-Samsung Phones.

438.   On information and belief, Sprint and/or Samsung falsely marked the Sprint-Samsung Phones knowingly and with the intent to deceive the public.

*Sprint LG Phones*

439.   Sprint and LG have sold within the past five years and sell the following LG cellular phones which Sprint and/or LG has falsely marked or falsely marks by marking upon, affixing to, or using in advertising in connection with such products the patent number of the expired '307, '390, '501, and '109 patents: Rumor 2; Rumor Touch; Lotus; Lotus Elite; LX290; LX370; and Remarq (collectively the "Sprint LG Phones").

440.   Sprint and/or LG included and include patent numbers in the user guides and user manuals accompanying the Sprint LG Phones in an effort to provide constructive notice to the public under 35 U.S.C. § 287 that those products were covered by the included patents.

441.   The Sprint LG Phones could not be reasonably marked with all of the patent numbers listed in the accompanying user guides due to the small character of the products.

442.   Sprint and/or LG know that consumers sometimes consult the user guide for their products, including Sprint LG Phones, before they purchase such products.

443.   Sprint and/or LG know that consumers sometimes review user guides to learn about and evaluate the features of their products, including the Sprint LG Phones, when making purchasing decisions.

444.   Sprint and/or LG utilize the user guides for their products to provide consumers with notices and information regarding their products, including the Sprint LG Phones.

445.     Sprint and/or LG post user guides on their respective websites to provide consumers with information regarding their products, including the Sprint LG Phones.

446.     Sprint and/or LG sometimes release the user guide for a product before the product is available for purchase.

447.     Sprint and LG have a patent license from Qualcomm (either explicit or implied) that, prior to their expiration, included U.S. Patent 4,901,307; 5,056,109; 5,101,501; and 5,109,390.

448.     On information and belief, LG pays royalties to Qualcomm pursuant to its patent license agreement with Qualcomm.

449.     LG represented to the Court that it was required to include Qualcomm patent numbers in the user guides for its products.

450.     On information and belief, Sprint and LG first began selling the Rumor 2 on or about March 12, 2009.

451.     Sprint and/or LG provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Rumor 2 and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

4,901,307   5,109,390   5,267,262   5,416,797
5,506,865   5,544,196   5,657,420   5,101,501
5,267,261   5,414,796   5,504,773   5,535,239
5,600,754   5,778,338   5,228,054   5,337,338
5,710,784   5,056,109   5,568,483   5,659,569
5,490,165   5,511,073

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

User Guide template version 8a_QX (November 2008)

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint.
Other marks are the property of their respective owners.

11/11/08

452.    On information and belief, Sprint and LG first began selling the Rumor Touch on or about January 8, 2010.

453.    Sprint and/or LG provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Rumor Touch and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

User Guide template version 9a_FM (July 2009)

**Copyright Notice**

©2010 Sprint. SPRINT and the logo are trademarks of Sprint.
Other marks are the property of their respective owners.

5/17/10

454.    The '307, '109, '501, and '390 patents all expired prior to Sprint's and LG's first sale of any Rumor Touch.

455.    Sprint and/or LG included the patent numbers of the '307, '109, '501, and '390 patents in the Rumor Touch user guide or user manual (or the equivalent thereto) after the '307, '109, '501, and '390 patents expired.

456.    Sprint and LG sold Rumor Touches with accompanying user guides or user manuals which included the patent numbers of the '307, '109, '501, and '390 patents after the '307, '109, '501, and '390 patents expired.

457.    Because the '307, '109, '501, and '390 patents all expired before Sprint's and LG's first sale of any Rumor Touch, Sprint and LG did not have a reasonable belief that the '307, '109, '501, and '390 patents covered the Rumor Touch.

458.    On information and belief, Sprint and LG first began selling the Lotus on or about September 10, 2008.

459.    Sprint and/or LG provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Lotus and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

4,901,307  5,109,390  5,267,262  5,416,797
5,506,865  5,544,196  5,657,420  5,101,501
5,267,261  5,414,796  5,504,773  5,535,239
5,600,754  5,778,338  5,228,054  5,337,338
5,710,784  5,056,109  5,568,483  5,659,569
5,490,165  5,511,073

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

User Guide template version 8A (August 2008)

**Copyright Notice**

© 2008 Sprint. Sprint and the logo are trademarks of Sprint.
Other marks are the property of their respective owners.

09/04/08

460.    On information and belief, Sprint and LG first began selling the Lotus Elite on or about January 7, 2010.

461.    Sprint and/or LG provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Lotus Elite and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

User Guide template version 9a_FM (April 2009)

**Copyright Notice**

©2009 Sprint. SPRINT and the logo are trademarks of Sprint.
Other marks are the property of their respective owners.

11/12/09

462.    The '307, '109, '501, and '390 patents all expired prior to Sprint's and LG's first sale of any Lotus Elite.

463.    Sprint and/or LG included the patent numbers of the '307, '109, '501, and '390 patents in the Lotus Elite user guide or user manual (or the equivalent thereto) after those patents had expired.

464.    Sprint and LG sold Lotus Elites with accompanying user guides or user manuals which included the patent numbers of the '307, '109, '501, and '390 patents after those patents had expired.

465.    Because the '307, '109, '501, and '390 patents all expired before Sprint's and LG's first sale of any Lotus Elite, Sprint and LG did not have a reasonable belief that any of those patents covered the Lotus Elite.

466.    On information and belief, Sprint and LG first began selling the LX290 on or about July 13, 2009.

467.    Sprint and/or LG provided user manuals or user guides (or the equivalent thereto) to customers who purchased the LX290 and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

### User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

User Guide template version 8A (August 2008)

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint.
Other marks are the property of their respective owners.

05/28/09

468.   On information and belief, Sprint and/or LG first began selling the LX370 on or about June 23, 2009.

469.   Sprint and/or LG provided user manuals or user guides (or the equivalent thereto) to customers who purchased the LX370 and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

4,901,307  5,109,390  5,267,262  5,416,797
5,506,865  5,544,196  5,657,420  5,101,501
5,267,261  5,414,796  5,504,773  5,535,239
5,600,754  5,778,338  5,228,054  5,337,338
5,710,784  5,056,109  5,568,483  5,659,569
5,490,165  5,511,073

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

User Guide template version 8A (August 2008)

**Copyright Notice**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint.
Other marks are the property of their respective owners.

03/24/09

470.   On information and belief, Sprint and LG first began selling the Remarq on or about March 22, 2010.

471.    Sprint and/or LG provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Remarq and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## User Guide Proprietary Notice

CDMA Technology is licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | |
|---|---|---|---|
| 4,901,307 | 5,109,390 | 5,267,262 | 5,416,797 |
| 5,506,865 | 5,544,196 | 5,657,420 | 5,101,501 |
| 5,267,261 | 5,414,796 | 5,504,773 | 5,535,239 |
| 5,600,754 | 5,778,338 | 5,228,054 | 5,337,338 |
| 5,710,784 | 5,056,109 | 5,568,483 | 5,659,569 |
| 5,490,165 | 5,511,073 | | |

T9 Text Input is licensed by Nuance Communications, Inc. and is covered by U.S. Pat. 5,818,437, U.S. Pat. 5,953,541, U.S. Pat. 6,011,554 and other patents pending.

User Guide template version 9a_FM (July 2009)

**Copyright Notice**

©2010 Sprint. SPRINT and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

3/31/10

472.    The '307, '109, '501, and '390 patents all expired prior to Sprint's and LG's first sale of any Remarq.

473.    Sprint and/or LG included the patent numbers of the '307, '109, '501, and '390 patents in the Remarq user guide or user manual (or the equivalent thereto) after those patents had expired.

474.    Sprint and LG sold Remarqs with accompanying user guides/manuals which included the patent numbers of the '307, '109, '501, and '390 patents after those patents expired.

475.    Because the '307, '109, '501, and '390 patents all expired before Sprint's and LG's first sale of any Remarq, Sprint and LG did not have a reasonable belief that any of those patents covered the Remarq.

476.    The '307 patent expired prior to Sprint's and LG's first sale of any of the Sprint LG Phones.

477.    Sprint and/or LG included the patent number of the '307 patent in the user guides or user manuals (or the equivalent thereto) for the Sprint LG Phones after the '307 patent expired.

478.    Sprint and/or LG sold Sprint LG Phones with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

479.    Because the '307 patent expired before Sprint's and LG's first sale of any of the Sprint LG Phones, Sprint and LG did not have a reasonable belief that the '307 patent covered any of the Sprint LG Phones.

480.    The Sprint LG Phones were released in the following order: i) Lotus; ii) Rumor 2; iii) LX370; iv) LX290; v) Lotus Elite; vi) Rumor Touch; and vii) Remarq.

481.    The user guide for the Lotus was revised by Sprint and/or LG in August of 2008, specifically changing the reference patent reference for T9 Text input from to "Tegic Communications" to "Nuance Communications, Inc."

482.    The user guides for the Rumor 2, LX290, LX370, Lotus Elite, Rumor Touch, and Remarq all bear revision dates after the date on the user guide for the Lotus.

483.    Sprint and/or LG revised the user guide for each of the Sprint LG Phones after the expiration of the '307 patent, as reflected in the revisions dates located below the user guide copyright notice.

484.   In addition, Sprint and/or LG revised the user guide for the Lotus Elite, Rumor Touch and Remarq after the expiration of the '109, '501, and '390 patents, as reflected in the revisions dates located below the user guide copyright notice for those products.

485.   The user guide for the Rumor Touch bears a revision date of 5/17/10 which shows that it was revised after the product was released on March 16, 2010 and after the expiration of the '307, '109, '501, and '390 patents.

486.   Comparison of the user guides for all of the Sprint LG Phones show that Sprint and/or LG created three different user guide templates (*see, e.g.* the template notice in the patent notice in the Rumor 2, Rumor Touch and Lotus Elite user guides) after the expiration of the '307 patent and included the '307 patent in user guides based on each of those templates.

487.   On information and belief, Sprint and/or LG falsely marked the Sprint LG Phones knowingly and with the intent to deceive the public.

### *Sprint HTC Phones*

488.   Sprint and/or HTC have sold within the past five years and sell the following HTC cellular phones which Sprint and/or HTC has falsely marked or falsely marks by marking upon, affixing to, or using in advertising in connection with such products the patent number of the expired '307, '390, '501, and '109 patents: Snap; Hero with Google; Evo 4G and Touch Pro 2 (collectively the "Sprint HTC Phones").

489.   Sprint and/or HTC included and include patent numbers in the user guides and user manuals accompanying the Sprint HTC Phones in an effort to provide constructive notice to the public under 35 U.S.C. § 287 that those products were covered by the included patents.

490.   The Sprint HTC Phones could not be reasonably marked with all of the patent numbers listed in the accompanying user guides due to the small character of the products.

491.    Sprint and/or HTC know that consumers sometimes consult the user guide for their products, including Sprint HTC Phones, before they purchase such products.

492.    Sprint and/or HTC know that consumers sometimes review user guides to learn about and evaluate the features of their products, including the Sprint HTC Phones, when making purchasing decisions.

493.    Sprint and/or HTC utilize the user guides for their products to provide consumers with notices and information regarding their products, including the Sprint HTC Phones.

494.    Sprint and/or HTC post user guides on their respective websites to provide consumers with information regarding their products, including the Sprint HTC Phones.

495.    Sprint and/or HTC sometimes release the user guide for a product before the product is available for purchase.

496.    Sprint and HTC have a patent license from Qualcomm (either explicit or implied) that, prior to their expiration, included U.S. Patent 4,901,307, 5,056,109, 5,101,501 and 5,109,390.

497.    On information and belief, HTC pays royalties to Qualcomm pursuant to its patent license agreement with Qualcomm.

498.    On information and belief, Sprint and/or HTC first began selling the Snap on or about June 21, 2009.

499.    Sprint and/or HTC provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Snap and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

This device is licensed under patented keyboard technology of Research In Motion Limited including the following US Patents and foreign counterparts: 6,278,442; 6,396,482; 6,452,588; 6,489,950; 6,611,254; 6,611,255; 6,876,763; 6,873,317; 6,891,529; 6,919,879; 7,056,043; 7,073,964; 7,106,306; 7,113,111; 7,153,049; 7,158,120; 7,227,536; 6,891,529; 7,083,342; 7,096,036; 7,106,306; 7109973; and 7,220,069.

Licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | | | |
|---|---|---|---|---|---|
| 4,901,307 | 5,490,165 | 5,056,109 | 5,504,773 | 5,101,501 | 5,778,338 |
| 5,506,865 | 5,109,390 | 5,511,073 | 5,228,054 | 5,535,239 | 5,710,784 |
| 5,267,261 | 5,544,196 | 5,267,262 | 5,568,483 | 5,337,338 | 5,659,569 |
| 5,600,754 | 5,414,796 | 5,657,420 | 5,416,797 | | |

**Copyright Notice**

## Copyright and Trademark Information

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

500. On information and belief, Sprint and/or HTC first began selling the Hero with Google on or about October 11, 2009.

501. Sprint and/or HTC provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Hero with Google and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

Licensed by QUALCOMM Incorporated under one or more of the following patents:

4,901,307 5,490,165 5,056,109 5,504,773 5,101,501 5,778,338 5,506,865 5,109,390 5,511,073 5,22 8,054 5,535,239 5,710,784 5,267,261 5,544,196 5,267,262 5,568,483 5,33 7,33 8 5,659,569 5,600,754 5,414,796 5,657,420 5,416,797

All other company, product and service names mentioned herein are trademarks, registered trademarks or service marks of their respective owners.

**Copyright Notice**

**4D. Copyright, Trademark, and Proprietary Notices**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

502.    On information and belief, Sprint and/or HTC first began selling the Touch Pro 2 on or about September 8, 2009.

503.    Sprint and/or HTC provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Touch Pro 2 and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

Licensed by QUALCOMM Incorporated under one or more of the following patents:

| | | | | | |
|---|---|---|---|---|---|
| 4,901,307 | 5,490,165 | 5,056,109 | 5,504,773 | 5,101,501 | 5,778,338 |
| 5,506,865 | 5,109,390 | 5,511,073 | 5,228,054 | 5,535,239 | 5,710,784 |
| 5,267,261 | 5,544,196 | 5,267,262 | 5,568,483 | 5,337,338 | 5,659,569 |
| 5,600,754 | 5,414,796 | 5,657,420 | 5,416,797 | | |

**Copyright Notice**

**Copyright, Trademark, and Properietary Notices**

© 2009 Sprint. Sprint and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

504.    On information and belief, Sprint and/or HTC first began selling the Evo 4G on or about June 4, 2010.

505.    Sprint and/or HTC provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Evo 4G and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

Licensed by QUALCOMM Incorporated under one or more of the following patents:

4,901,307 5,490,165 5,056,109 5,504,773 5,101,501 5,778,338 5,506,865 5,109,390 5,511,073 5,22 8,054 5,535,239 5,710,784 5,267,261 5,544,196 5,267,262 5,568,483 5,33 7,33 8 5,659,569 5,600,754 5,414,796 5,657,420 5,416,797

**Copyright Notice**

©2010 Sprint. SPRINT and the logo are trademarks of Sprint. Other marks are the property of their respective owners.

506.    The '307, '109, '501, and '390 patents all expired prior to Sprint's and HTC's first sale of any Evo 4G.

507.    Sprint and/or HTC included the patent numbers of the '307, '109, '501, and '390 patents in the Evo 4G user guide or user manual (or the equivalent thereto) after those patents had expired.

508.    Sprint and HTC sold Evo 4Gs with accompanying user guides/manuals which included the patent numbers of the '307, '109, '501, and '390 patents after those patents had expired.

509.    Because the '307, '109, '501, and '390 patents all expired before Sprint's and HTC's first sale of any Evo 4G, Sprint and HTC's did not have a reasonable belief that any of those patents covered the Evo 4G.

510.    The '307 patent expired prior to Sprint's and HTC's first sale of any of the Sprint HTC Phones.

511.    Sprint and/or HTC included the patent number of the '307 patent in the user guides or user manuals (or the equivalent thereto) for the Sprint HTC Phones after the '307 patent expired.

512.    Sprint and HTC sold Sprint HTC Phones with accompanying user guides/manuals which included the patent number of the '307 patent after the '307 patent expired.

513.    Because the '307 patent expired before Sprint's and HTC's first sale of any of the Sprint HTC Phones, Sprint and HTC did not have a reasonable belief that the '307 patent covered any of the Sprint HTC Phones.

514.    On information and belief, Sprint and/or HTC falsely marked the Sprint HTC Phones knowingly and with the intent to deceive the public.

515.    Despite requests from Americans, Sprint failed to take any remedial measures to stop the specific marking with expired or inapplicable patents identified in Americans' complaint filed on July 14, 2010.

516.    Despite requests from Americans, Sprint failed to take any steps to notify the public or its customers that it had sold mismarked product.

517.    On information and belief, prior to December 1, 2010, Sprint possessed a user guide for the Epic 4G that did not contain the patent number of the expired '307, '109, '501, and '390 patents.

518.    As of January 10, 2011, the user guide for the Epic 4G made available by Sprint on its website at www.sprint.com still contained the patent number of the expired '307, '109, '501, and '390 patents.

519.    On information and belief, prior to December 1, 2010, Sprint possessed user guides for all of the Sprint Samsung Phones that did not contain the patent number of the expired '307, '109, '501, and '390 patents.  Nonetheless, Sprint continued to falsely advertise the patent status of the Sprint Samsung Phones on its website by failing to remove the '307, '109, '501, and '390 patents from its online user guides.

520.    Sprint claims ownership of a copyright in the user guides for the Sprint-Sierra Products, the Sprint-Novatel Products, the Airave, the Sprint-Samsung Phones, the Sprint LG Phones and the Sprint HTC Phones.

521.   Sprint places copyright notices in its user guides to notify the public that it owns a copyright in the guide.

## THE FALSE MARKING OF VERIZON PRODUCTS

522.   On information and belief, Verizon and Sierra Wireless have sold or have offered to sell the AirCard 595, which Verizon and/or Sierra Wireless falsely marked by marking upon, affixing to, or using in advertising in connection with such products the patent number of inapplicable patents within the last five years in the United States.

523.   Verizon and/or Sierra Wireless included patent numbers in the user guide accompanying the AirCard 595 in an effort to provide constructive notice to the public under 35 U.S.C. § 287 that that products were covered by the included patents.

524.   The AirCard 595 could not be reasonably marked with all of the patent numbers listed in the accompanying user guides due to the small character of the products.

525.   Verizon and/or Sierra Wireless know that consumers sometimes consult the user guide for their products, including AirCard 595, before they purchase such products.

526.   Verizon and/or Sierra Wireless know that consumers sometimes review user guides to learn about and evaluate the features of their products, including the AirCard 595, when making purchasing decisions.

527.   Verizon and/or Sierra Wireless utilize the user guides for their products to provide consumers with notices and information regarding their products, including the AirCard 595.

528.   Verizon and/or Sierra Wireless post user guides on their respective websites to provide consumers with information regarding their products, including the AirCard 595.

529.   Verizon and/or Sierra Wireless sometimes release the user guide for a product before the product is available for purchase.

530.    Verizon and Sierra Wireless have a patent license from Qualcomm (either explicit or implied) that, prior to their expiration, included U.S. Patent 4,901,307, 5,056,109, 5,101,501 and 5,109,390.

531.    On information and belief, Verizon and Novatel sell, offer to sell, have sold, or have offered to sell the USB727 and the MiFi2200 Intelligent Mobile Hotspot, which Verizon and/or Novatel has falsely marked or falsely marks by marking upon, affixing to, or using in advertising in connection with such products one or more expired patents within the last five years in the United States or continues to falsely mark with one or more expired patents in the United States.

532.    Verizon and/or Novatel included and include patent numbers in the user guides accompanying the USB727 and MiFi in an effort to provide constructive notice to the public under 35 U.S.C. § 287 that those products were covered by the included patents.

533.    The USB727 and MiFi could not be reasonably marked with all of the patent numbers listed in the accompanying user guides due to the small character of the products.

534.    Verizon and/or Novatel know that consumers sometimes consult the user guide for their products, including the USB727 and MiFi, before they purchase such products.

535.    Verizon and/or Novatel know that consumers sometimes review user guides to learn about and evaluate the features of their products, including the USB727 and MiFi, when making purchasing decisions.

536.    Verizon and/or Novatel utilize the user guides for their products to provide consumers with notices and information regarding their products, including the USB727 and MiFi.

537.    Verizon and/or Novatel post user guides on their respective websites to provide consumers with information regarding their products, including the USB727 and MiFi.

538.    Verizon and/or Novatel sometimes release the user guide for a product before the product is available for purchase.

*AirCard 595*

539.    On information and belief, Verizon and/or Sierra Wireless have sold, or have offered to sell the AirCard 595 in the United States.

540.    On information and belief, Verizon and/or Sierra Wireless sold the AirCard 595 from on or about December 18, 2006 until mid-2009.

541.    Verizon and/or Sierra Wireless provided user manuals or user guides (or the equivalent thereto) to customers who purchased the AirCard 595 and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents and licenses

Portions of this product may be covered by some or all of the following US patents:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 5,515,013 | 5,629,960 | 5,845,216 | 5,847,553 | 5,878,234 | 5,890,057 | 5,929,815 | 6,169,884 | 6,191,741 |
| 6,199,168 | 6,339,405 | 6,359,591 | 6,400,336 | 6,516,204 | 6,561,851 | 6,643,501 | 6,653,979 | 6,697,030 |
| 6,785,830 | 6,845,249 | 6,847,830 | 6,876,697 | 6,879,585 | 6,886,049 | 6,968,171 | 6,985,757 | 7,023,878 |
| 7,053,843 | 7,106,569 | D442,170 | D459,303 | | | | | |

and other patents pending.

This product includes   **QUALCOMM**
technology licensed from:   **3G CDMA**

Licensed by QUALCOMM Incorporated under one or more of the following United States patents and/or their counterparts in other nations:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4,901,307 | 5,490,165 | 5,056,109 | 5,504,773 | 5,101,501 | 5,506,865 | 5,109,390 | 5,511,073 | 5,228,054 |
| 5,535,239 | 5,267,261 | 5,544,196 | 5,267,262 | 5,568,483 | 5,337,338 | 5,600,754 | 5,414,796 | 5,657,420 |
| 5,416,797 | 5,659,569 | 5,710,784 | 5,778,338 | | | | | |

Manufactured or sold by Sierra Wireless or its licensees under one or more patents licensed from InterDigital Group.

**Copyright Notice**

## Copyright

©2006 Verizon Wireless, Inc.

542.    The AirCard 595 is not covered by either U.S. Patent No. D459,303 or D442,170.

543.    Verizon and Sierra Wireless do not believe that the AirCard 595 is covered by either U.S. Patent No. D459,303 or D442,170.

544.    The AirCard 595 does not and has never included an antenna connector as claimed in U.S. Patent D442,170.

545.    The AirCard 595 does not and has never included an audio connector as claimed in U.S. Patent D459,303.

546.    Verizon and/or Sierra Wireless falsely marked the AirCard 595 with U.S. Patent Nos. D459,303 and D442,170 knowingly and with intent to deceive the public.

*USB727*

547.    On information and belief, Verizon and/or Novatel first began selling the USB727 on or about September 27, 2007.

548.    Verizon and/or Novatel provided user manuals or user guides (or the equivalent thereto) to customers who purchased the U727 and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents and licenses

Licensed by QUALCOMM Incorporated under one or more of the following Patents:

| | | | | |
|---|---|---|---|---|
| 4,901,307 | 5,490,165 | 5,056,109 | 5,504,773 | 5,101,501 |
| 5,506,865 | 5,109,390 | 5,511,073 | 5,228,054 | 5,535,239 |
| 5,267,261 | 5,544,196 | 5,267,262 | 5,568,483 | 5,337,338 |
| 5,600,754 | 5,414,796 | 5,657,420 | 5,416,797 | 5,659,569 |
| 5,710,784 | 5,778,338 | | | |

**Copyright Notice**

## Copyright

©2007 Verizon Wireless, Inc.

549.    The '307 patent expired prior to Verizon's and Novatel's first sale of any USB727.

550.    Verizon and/or Novatel included the patent number of the '307 in the USB727 user guides or user manuals (or the equivalent thereto) after the '307 patent expired.

551.    Verizon and Novatel sold USB727s with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

552.    Because the '307 patent expired prior to Verizon's and Novatel's first sale of any USB727, Verizon and Novatel did not have a reasonable belief that the '307 patent covered the USB727.

553.    The user guide for the USB727 includes in the table of contents a specific reference to the "Patents and licenses" section.

554.    Verizon and/or Novatel falsely marked the USB727 knowingly with intent to deceive the public.

### *MiFi*

555.    On information and belief, Verizon and/or Novatel first began selling the MiFi on or about May 17, 2009 and continues to sell the product in the United States.

556.    Verizon and/or Novatel provided user manuals or user guides (or the equivalent thereto) to customers who purchased the MiFi and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

## Patents and licenses

Licensed by QUALCOMM Incorporated under one or more of the following Patents:

| | | | | |
|---|---|---|---|---|
| 4,901,307 | 5,490,165 | 5,056,109 | 5,504,773 | 5,101,501 |
| 5,506,865 | 5,109,390 | 5,511,073 | 5,228,054 | 5,535,239 |
| 5,267,261 | 5,544,196 | 5,267,262 | 5,568,483 | 5,337,338 |
| 5,600,754 | 5,414,796 | 5,657,420 | 5,416,797 | 5,659,569 |
| 5,710,784 | 5,778,338 | | | |

**Copyright Notice**

## Copyright

©2009 Verizon Wireless, Inc.

557.     Verizon and/or Novatel have sold within the last five years and continue to sell the MiFi which Verizon and/or Novatel has falsely marked and falsely marks (by marking the user guides accompanying the products) with the patent number of the expired '307, '390, '501, and '109 patents.

558.     Verizon and/or Novatel did not sell any MiFi devices prior to the expiration of the '307 patent.

559.     Verizon and/or Novatel included the patent number of the '307 in the MiFi user guide or user manual (or the equivalent thereto) after the '307 patent expired.

560.     Verizon and/or Novatel sold MiFis with accompanying user guides or user manuals which included the patent number of the '307 patent after the '307 patent expired.

561.     Because the '307 patent expired prior to Verizon's and Novatel's first sale of any MiFi, Verizon, and Novatel did not have a reasonable belief that the '307 patent covered the MiFi.

562.     On information and belief, Verizon and/or Novatel falsely marked and mark the MiFi knowingly and with the intent to deceive the public.

563.     Verizon claims ownership of a copyright in the user guides for the AirCard 595s that it sells, the USB727 and the MiFi.

564.     Verizon places copyright notices in its user guides to notify the public that it owns a copyright in the guide.

## THE FALSE MARKING OF SAMSUNG PRODUCTS

565.     On information and belief, Samsung sells, offers to sell, has sold, or has offered to sell in the past 5 years cellular phones, data products, televisions, Blu-ray and DVD players, liquid crystal displays for notebook computers, projectors, home theater systems, tablets, cell phone accessories, laptops; MP3 players, cameras, camcorders, digital photo frames, laptops, monitors, printers, memory and storage devices, washers, dryers, refrigerators, microwaves, dishwashers, and

ranges ("collectively the "Samsung Products"), which it has falsely marked or falsely marks by marking upon, affixing to, or using in advertising in connection with such products one or more expired patent numbers. Examples of Samsung Products include the following cell phones: Epic 4G, Exclaim, Instinct HD, Instinct s30, Intercept, Intrepid, Knack, Omnia, Omnia II, M240, M330, Moment with Google, Reclaim, Renown, Restore, Saga, Seek, SCH-A310, SCH-A850, SCH-A990, SCH-R300, SCH-R430, SCH-U620, SCH-U340, SCH-U740, SGH-A137, SGH-A737, SPH-M530, Sway, and U430, the Airave data product , and network extenders, including SCS-26UC, SCS-26UC4, SCS-26UC2, and SCS-2UO1 (collectively the "Samsung Phones"). Examples of Samsung Products include the following Blu-ray and DVD players, BD-P1000, BD-P1200, BD-P1400, BD-P1500, BD-P1590, BD-P1590C, BD-P1600, BD-P2500, BD-P2550, BD-P3600, BD-P4600, BD-C5500, BD-C5900, BD-C6500, BD-C6800, BD-C6900, DVD-C350, DVD-C350/XAA, DVD-C450K, DVD-C500, DVD-C550, DVD-P230, DVD-P231, DVD-P331, DVD-V9800, DVD-VR375, DVD-711, DVD-1080P7, DVD-1080P7/XAA, DVD-1080P8, and HT-C6900W (collectively the "Blu-ray - DVD Players"). Examples of Samsung Products also include the following televisions, LCDs, and projectors: FP-T5094W, FP-T5894W, HP-T4234, HP-T5034, HP-T5044, HP-T4254, HP-T5054, HP-T4264, HP-T5064, HP-S4273, HP-S5073, HP-S6373, FP-T5094W, FP-T5894W, FP-T5084, FP-T6374, FP-T5884, Series4 400, Series6 650, Series7 760, PL-42P5HD, PL-50P5HD, Series4 430, Series4 450, HP-R4252, HP-R5052, HP-R4262, HP-R5012, HP-R4272, HP-R5072, HP-R6372, SP-S4223, SP-S4233, SP-S5033, SP-S4253, SP-S5053, Series5 530, Series5 540, Series5 550 560 590, Series6 650, Series4 450, Series5 500, Series5 530 540 550, Series5 580, Series6 630 650 670, Series7 750, Series9 950, LN-T4061F, LN-T4065F, LN-T4661F, LN-T4665F, LN-T5265F, LN-T4081F, LN-T4681F, LN-T5281F, LN-T2781F, Series8 850, LN-T2342H, LN-T2642H, LN-T3242H, LN-T4042H, LN-T4642H, LN40F81BD, LN46F81BD, LN52F81BD, LN40M81BD, LN40N81BD, LN46M81BD, LN46N81BD,

LN52N81BD, LN23S81BD, LN26S81BD, LN32S81BD, LN40S81BD, LN46S81BD, LN40S71BD, Series6 630 640 650, Series6 6000, Series8 8000, Series8 8500, HL-R5688W, HL-R5078W, HL-R5678W, HL-R6178W, HL-R7178W, HL-R5078W, HL-R5678W, HL-R6178W, HL-R7178W, HL-R4667W, HL-R5067W, HL-R5667W, HL-R6167W, HL-R6767W, HL-R5668W, HL-R6168W, HL-R6768W, HL-R4656W, HL-R5056W, HL-R5656W, HL-R6156W, HL-S4265W, HL-S5065W, HL-S5665W, HL-S6165W, HL-S6765W, HL-S5055W, HL-S4266W, HL-S4666W, HL-S5066W, HL-S5666W, HL-S6166W, HL-S5086W, HL-S5686W, HL-S6186W, HL-S6167W, HL-S6767W, HL-S5087W, HL-S5687W, HL-S6187W, HL-T4675S, HL-T5075S, HL-T5675S, HL-T5656W, HL-T6156W, HL-T6756W, HL-T5076S, HL-T5676S, HL-T6176S, HL-T5089S, HL-T5689S, HL-T6189S, HL-T5087S, HL-T5687S, HL-T6187S, Series 5 510, Series 6 650, Series 7 750, HL-T7288W, HL-T5055W, HL-T5655W, HL-S5088W, HL-S5688W, HL-S6188W, HL-S7178W, and HL-S5679W (collectively the "Samsung TVs").  Examples of Samsung Products further include the following camcorders: SC-DC171, SC-DC173(U), SC-DC175, SC-DC575, SC-DC563, SC-DC564, SD-DC565, SC-MX20Series, SC-MX20ER, SC-D6550, HMX M20SN, HMX M20BN, HMX-H100N, HMX-H104BN, HMX-H105BN, HMX-H106SN, HMX-T10, SC-DX100, SC-DX103, SC-DX105, and SC-DX200 (collectively the "Samsung Camcorders").  Examples of Samsung LCDs for notebook computers include LTN154BT02, LTN133AT01, LTN134AT01 , LTN140AT01, LTN141AT02, LTN150PF-L03 , LTN154AT01, LTN156AT01, LTN160AT01, LTN170BT02, and LTN184HT01.  Examples of expired numbers for the Samsung Products include: 4,415,844; 4,577,216; 4,631,603; 4,706,121; 4,751,578, 4,819,098; 4,901,307; 4,907,093; 4,908,713; 4,930,158; 4,930,160; 4,972,484; 5,056,109; 5,060,220; 5,099,204; 5,101,501; 5,103,459; 5,107,225; 5,109,390; 5,214,678; 5,267,262 and 5,280,371.

566.   Samsung included and includes patent numbers on the Samsung Products and/or in the user guides accompanying the Samsung Products in an effort to provide constructive notice to the public under 35 U.S.C. § 287 that those products were covered by the included patents.

567.   Some of the Samsung Products could not be reasonably marked with all of the patent numbers listed in the accompanying user guides due to the small character of the products.

568.   Samsung knows that consumers sometimes consult the user guide for its products, including the Samsung Products, before they purchase such products.

569.   Samsung knows that consumers sometimes review user guides to learn about and evaluate the features of its products, including the Samsung Products, when making purchasing decisions.

570.   Samsung utilizes the user guides for its products to provide consumers with notices and information regarding its products, including the Samsung Products.

571.   Samsung posts user guides on its website to provide consumers with information regarding its products, including the Samsung Products.

572.   Samsung sometimes releases the user guide for a product before the product is available for purchase.

573.   Paragraphs 574-817 below set out exemplar markings on select Samsung Products, including Samsung Phones, Blu-ray – DVD Players, Samsung TVs and Samsung Camcorders, sold within the past five years.

574.   Samsung has falsely marked several of its Samsung Phones, including the following: Epic 4G, Exclaim, Instinct HD, Instinct s30, Intercept, Intrepid, Knack, Omnia, Omnia II, M240, M330, Moment with Google, Reclaim, Renown, Restore, Saga, Seek, SCH-A310, SCH-A850, SCH-A990, SCH-R300, SCH-R430, SCH-U620, SCH-U340, SCH-U740, SGH-A137, SGH-A737,

SPH-M530, Sway, and U430, the Airave data product , and network extenders, including SCS-26UC, SCS-26UC4, SCS-26UC2, and SCS-2UO1.

575.    On information and belief, Samsung first began selling the following Samsung Phones: the Knack in or about August 2008; the Omnia II in or about December 2009; the Saga in or about November 2008; the u430 in or about September 2008; the Sway in or about October 2008; the Renown in or about November 2008; and the Omnia in or about November 2008.

576.    Samsung provided user manuals and/or user guides (or the equivalent thereto) to customers who purchased the Omnia II and included or caused to be included therein the following, or similar, copyright and patent notices:

### Patent Notice

Licensed by Qualcomm Incorporated under one or more of the following patents: U.S. Patent No. 4, 901, 307; 5, 056, 109; 5, 099, 204; 5, 101, 501; 5, 103, 459; 5, 107, 225; 5, 109, 390.
T9 Text Input is licensed by Tegic Communications and is covered by U.S. Pat. 5,818,437; U.S. Pat. 5,953,541; U.S. Pat. 6,011,554 and other patents pending.

### Copyright Notice

© 2009 Samsung Telecommunications America, LLC is a registered trademark of Samsung Electronics America, Inc. and its related entities.

577.    Samsung provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Knack and included or caused to be included therein the following, or similar, copyright and patent notices:

### Patent Notice

Licensed by Qualcomm Incorporated under one or more of the following patents: U.S. Patent No. 4, 901, 307; 5, 056, 109; 5, 099, 204; 5, 101, 501; 5, 103, 459; 5, 107, 225; 5, 109, 390.

### Copyright Notice

©2008 Samsung Telecommunications America, LLC is a registered trademark of Samsung Electronics America, Inc. and its related entities.

578.   Samsung provided user manuals or user guides (or the equivalent thereto) to customers who purchased the Saga and included or caused to be included therein the following, or similar, copyright and patent notices:

### Patent Notice

Licensed by Qualcomm Incorporated under one or more of the following patents: U.S. Patent No. 4, 901, 307; 5, 056, 109; 5, 099, 204; 5, 101, 501; 5, 103, 459; 5, 107, 225; 5, 109, 390.

### Copyright Notice

©2008 Samsung Telecommunications America, LLC is a registered trademark of Samsung Electronics America, Inc. and its related entities.

579.   Samsung provided user manuals and/or user guides (or the equivalent thereto) to customers who purchased the u430 and included or caused to be included therein the following, or similar, copyright and patent notices:

### Patent Notice

Licensed by Qualcomm Incorporated under one or more of the following patents: U.S. Patent No. 4, 901, 307; 5, 056, 109; 5, 099, 204; 5, 101, 501; 5, 103, 459; 5, 107, 225; 5, 109, 390.

### Copyright Notice

©2008 Samsung Telecommunications America, LLC is a registered trademark of Samsung Electronics America, Inc. and its related entities.

580.   Samsung provided user manuals and/or user guides (or the equivalent thereto) to customers who purchased the Sway and included or caused to be included therein the following, or similar, copyright and patent notices:

### Patent Notice

Licensed by Qualcomm Incorporated under one or more of the following patents: U.S. Patent No. 4, 901, 307; 5, 056, 109; 5, 099, 204; 5, 101, 501; 5, 103, 459; 5, 107, 225; 5, 109, 390.

**Copyright Notice**

© 2008 Samsung Telecommunications America, LLC is a registered trademark of Samsung Electronics America, Inc. and its related entities.

581.   Samsung provided user manuals and/or user guides (or the equivalent thereto) to customers who purchased the Renown and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

Licensed by Qualcomm Incorporated under one or more of the following patents: U.S. Patent No. 4, 901, 307; 5, 056, 109; 5, 099, 204; 5, 101, 501; 5, 103, 459; 5, 107, 225; 5, 109, 390.

**Copyright Notice**

© 2008 Samsung Telecommunications America, LLC is a registered trademark of Samsung Electronics America, Inc. and its related entities.

582.   Samsung provided user manuals and/or user guides (or the equivalent thereto) to customers who purchased the Omnia and included or caused to be included therein the following, or similar, copyright and patent notices:

**Patent Notice**

Licensed by Qualcomm Incorporated under one or more of the following patents: U.S. Patent No. 4, 901, 307; 5, 056, 109; 5, 099, 204; 5, 101, 501; 5, 103, 459; 5, 107, 225; 5, 109, 390.

**Copyright Notice**

© 2008 Samsung Telecommunications America, LLC is a registered trademark of Samsung Electronics America, Inc. and its related entities.

583.   Samsung did not sell any Omnia IIs prior to the expiration of the '307, '390, '501, and '109 patents.

584.   Samsung included the patent numbers of the '307, '109, '501, and '390 patents in the Omnia II user guide or user manual (or the equivalent thereto) after those patents expired.

585.   Samsung sold Omnia IIs with accompanying user guides or user manuals which included the patent numbers of the '307, '109, '501, and '390 patents after those patents expired.

586.   Because the '307, '390, '501, and '109 patents expired prior to Samsung's first sale of any Omnia II, Samsung did not have a reasonable belief that any of those patents covered the Omnia II.

587.   Samsung provided user manuals and/or user guides (or the equivalent thereto) to customers who purchased other Samsung Phones, including the SGH-A737, SCH-u340, SCH-A850, SCH-u620, SCH-r300, SCH-A310, SGH-A137, SCH-u740, SCH-a990, SCH-r430, SPH-m530 and included or caused to be included therein the following, or similar, copyright and patent notices:

### Patent Notice

Licensed by Qualcomm Incorporated under one or more of the following patents: U.S. Patent No. 4, 901, 307; 5, 056, 109; 5, 099, 204; 5, 101, 501; 5, 103, 459; 5, 107, 225; 5, 109, 390.

### Copyright Notice

©2008 Samsung Telecommunications America, LLC is a registered trademark of Samsung Electronics America, Inc. and its related entities.

588.   Samsung sold at least some of the following: SGH-A737, SCH-u340, SCH-A850, SCH-u620, SCH-r300, SCH-A310, SGH-A137, SCH-u740, SCH-a990, SCH-r430, SPH-m530 with accompanying user guides or user manuals which included the patent numbers of the '307, '109, '501, and '390 patents after those patents expired.

589.   Because the '307, '390, '501, and '109 patents expired prior to Samsung's first sale of at least some of SGH-A737, SCH-u340, SCH-A850, SCH-u620, SCH-r300, SCH-A310, SGH-A137, SCH-u740, SCH-a990, SCH-r430, SPH-m53, Samsung did not have a reasonable belief that any of those patents covered these phones after those patents expired.

590.    The application that became U.S. Patent Number 4,631,603 ("the '603 Patent") was filed on April 17, 1985 and issued as a patent on December 23, 1986.

591.    The '603 Patent expired on April 17, 2005.

592.    The application that became U.S. Patent Number 4,819,098 ("the '098 Patent") was filed on April 14, 1987, claiming priority from U.S. applications filed on November 21, 1986 and November 23, 1983, and issued as a patent on April 4, 1989.

593.    The '098 Patent expired on April 4, 2006.

594.    The application that became U.S. Patent Number 4,930,158 ("the '158 Patent") was filed on August 29, 1988 and issued as a patent on May 29, 1990.

595.    The '158 Patent expired on August 28. 2008.

596.    The application that became U.S. Patent Number 4,930,160 ("the '160 Patent") was filed on August 29, 1988 and issued as a patent on May 29, 1990.

597.    The '160 Patent expired on August 28. 2008.

598.    The application that became U.S. Patent No. 5,060,220 ("the '220 Patent") was filed on July 5, 1989, and issued as a patent on October 22, 1991.

599.    The '220 Patent expired on July 5, 2009.

600.    The application that became U.S. Patent Number 4,577,216 ("the '216 Patent") was filed on November 14, 1983 and issued as a patent on March 18, 1986.

601.    The '216 Patent expired on November 14, 2003.

602.    The application that became U.S. Patent Number 4,907,093 ("the '093 Patent") was filed on November 1, 1988, claiming priority from a US application filed on August 11, 1986, and issued as a patent on March 6, 1990.

603.    The '093 Patent expired on March 6, 2007.

604.    Samsung has falsely marked several of its Blu-ray - DVD Players since their first introduction in 2006, including: BD-P1000, BD-P1200, BD-P1400, BD-P1500, BD-P1590, BD-P1590C, BD-P1600, BD-P2500, BD-P2550, BD-P3600, BD-P4600, BD-C5500, BD-C5900, BD-C6500, BD-C6800, BD-C6900, DVD-C350, DVD-C350/XAA, DVD-C450K, DVD-C500, DVD-C550,  DVD-P230,  DVD-P231,  DVD-P331,  DVD-V9800,  DVD-VR375,  DVD-711,  DVD-1080P7/XAA, DVD-1080P8, and HT-C6900W.

605.    Samsung's offered the first Blu-ray DVD player, bearing model number BD-P1000, for sale in the United on or around June 25, 2006.

606.    Samsung marked or affixed the BD-P1000 with expired United States Patent Nos. 4,631,603 and 4,819,098.



607.    The '603 Patent expired on April 17, 2005, prior to any first sale of the BD-P1000.

608.    The '098 Patent expired on April 4, 2006, prior to any first sale of the BD-P1000.

609.    Samsung marked the BD-P1000 with the patent numbers of the '603 Patent and the '098 Patent after they expired.

610.    Samsung sold the BD-P1000 in the United States with the patent numbers of the '603 Patent and the '098 patent after they expired.

611.    Because the '603 and '098 Patents expired before Samsung's first sale of any BD-P1000, Samsung did not have and never could have had a reasonable belief that the '603 and '098 Patents covered the BD-P1000.

612.   Samsung knowingly and intentionally marked the BD-P1000 at various times with expired United States Patent Nos. 4,631,603 and 4,819,098.

613.   On information and belief, Samsung first began selling the BD-P1200 on or about April 5, 2007.

614.   Samsung did not sell the BD-P1200 in the United States before March 6, 2007.

615.   On information and belief, Samsung marked the BD-P1200 and/or the user manuals that accompanied the BD-1200 with the '603 Patent and the '098 Patent.

616.   The '603 Patent expired on April 17, 2005, prior to any first sale of the BD-P1200.

617.   The '098 Patent expired on April 4, 2006, prior to any first sale of the BD-P1200.

618.   Samsung marked the BD-P1200 with the patent numbers of the '603 Patent and the '098 Patent after they expired.

619.   Samsung sold the BD-P1200 in the United States with the patent numbers of the '603 Patent and the '098 patent after they expired.

620.   Because the '603 and '098 Patents expired before Samsung's first sale of any BD-P1200, Samsung did not have and never could have had a reasonable belief that the '603 and '098 Patents covered the BD-P1200.

621.   Because at the time it falsely marked the BD-P1200 Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the BD-P1200 with United States Patent Nos. 4,631,603 and 4,819,098 knowingly and with the intent to deceive the public.

622.   Samsung knowingly and intentionally marked the BD-P1200 at various times with United States Patent Nos. 4,631,603 and 4,819,098.

623.   On information and belief, Samsung first began selling the BD-P1400 on or about November 15, 2007.

624.    Samsung did not sell the BD-P1400 in the United States before October 9, 2007.

625.    Samsung marked the BD-1400 and/or the user manuals that accompanied the BD-1400 with the '603 Patent and the '098 Patent.

626.    A true and correct image of a portion of the back of a Samsung BD-P1400 follows, showing a portion of the metal case listing expired United States Patent Nos. 4,631,603 and 4,819,098:



627.    The '603 Patent expired on April 17, 2005, prior to any first sale of the BD-P1400.

628.    The '098 Patent expired on April 4, 2006, prior to any first sale of the BD-P1400.

629.    Samsung marked the BD-P1400 with the patent numbers of the '603 Patent and the '098 Patent after they expired.

630.    Samsung sold the BD-P1400 in the United States with the patent numbers of the '603 Patent and the '098 patent after they expired.  Because the '603 and '098 Patents expired before Samsung's first sale of any BD-P1400 product in the United States, Samsung did not have and never could have had a reasonable belief that the '603 and '098 Patents covered the BD-P1400.

631.    Because at the time it falsely marked the BD-P1400 Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the BD-P1400 with United States Patent Nos. 4,631,603 and 4,819,098 knowingly and with the intent to deceive the public.

632.    Samsung knowingly and intentionally marked the BD-P1400 at various times with expired United States Patent Nos. 4,631,603 and 4,819,098.

633.    On information and belief, Samsung first began selling the BD-P1500 on or after June 1, 2008.

634.    Samsung did not sell the BD-P1500 in the United States before May 13, 2008.

635.    Samsung marked the BD-1500 and/or the user manuals that accompanied the BD-1500 with the '158 Patent and the '160 Patent.

636.    Excerpts from the user manuals show a copyright notice of 2008 and Samsung's statement that the BD-P1500 is covered by United States Patents 4,930,158 and 4,930,160.

Copyright

©2008 Samsung Electronics Co.,Ltd.

This product is covered by the following U.S. patents:
US4,930,158 US4,930,160

637.    The '158 Patent expired on August 29, 2008 prior to the manufacture of several units of BD-P1500 by Samsung.

638.    The '160 Patent expired on August 29, 2008 prior to the manufacture of several units of BD-P1500s by Samsung.

639.    Samsung included user manuals with its BD-P1500 products sold in the United States, manufactured after August 29, 2008, claiming that the BD-P1500 "is covered by the following U.S. patents: US4,930,158 US4,930,160."

640.    Samsung sold BD-P1500 products in the United States with the patent numbers of the '158 Patent and the '160 patent, after they expired.

641.    Because the '158 and '160 Patents expired before Samsung's sale of BD-P1500 in the United States manufactured after August 29, 2008, Samsung did not have and never could have had a reasonable belief that the '158 and '160 Patents covered the BD-P1500.

642.    Because at the time it falsely marked the BD-P1500 Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the BD-P1500 with United States Patent Nos. 4,930,158 and 4,930,160 knowingly and with the intent to deceive the public.

643.    Samsung knowingly and intentionally printed BD-1500 user manuals marked with expired United States Patent Nos. 4,930,158 and 4,930,160 after August 29, 2008 and included such manuals with products shipped after August 29, 2008.

644.    On information and belief, Samsung first began selling the BD-P1590, BD-P1590C, and BD-P1600 on or after July 10, 2009.

645.    Samsung did not sell the BD-P1590, BD-P1590C, or the BD-P1600 in the United States before July 10, 2009.

646.    Samsung marked the BD-1590, BD-P1590C, and the BD-P1600 and/or the user manuals that accompanied those products with the '158 Patent, '160 Patent and the '220 Patent.

647.    Excerpts from the manuals show a copyright notice of 2009 and Samsung's statement that the BD-P1590, BD-P1590C, and the BD-P1600 products are covered by United States Patents 4,930,158, 4,930,160, and 5,060,220:

**Copyright**

©2009 Samsung Electronics Co.,Ltd.

- The product unit accompanying this user manual is licensed under certain intellectual p
  third parties. This product is covered by one or more of the following U.S. patents:
  5,060,220 5,457,669 5,561,649 5,705,762 6,043,912 6,438,099 6,467,061 6,566,52
  6,728,474 6,771,891 6,894,963 6,895,593 6,937,815 6,996,327 7,009,926 7,086,22
  7,099,566 7,123,564 7,142,493 7,142,495 7,145,861 7,146,624 7,151,729 7,161,87
  7,173,891 7,177,250 7,194,187 7,203,891 7,209,423 7,210,067 7,228,062 7,245,66
  7,263,045 7,269,110 7,272,086 7,272,106 7,280,460 7,283,729 7,286,464 7,304,93
  This product is covered by the following U.S. patents:
  US4,930,158 US4,930,160

648.    The '158 Patent expired on August 29, 2008 prior to the first sale of any BD-P1590, BD-P1590C, or BD-P1600 product in the United States.

649.    The '160 Patent expired on August 29, 2008 prior to the first sale of any BD-P1590, BD-P1590C, or BD-P1600 product in the United States.

650.    The '220 Patent expired on July 5, 2009 prior to the first sale of any BD-P1590, BD-P1590C, or BD-P1600 product in the United States.

651.    Samsung included user manuals with its BD-P1590, BD-P1590C, or BD-P1600 products sold in the United States, claiming that those products were covered by U.S. Patent Nos. 4,930,158, 4,930,160, and 5,060,220.

652.    Samsung sold BD-P1590, BD-P1590C, and BD-P1600 products in the United States marked with the patent numbers of the '158 Patent, '160 Patent, and the '220 Patent, after they expired.

653.    Because the '158, '160, and '220 Patents expired before Samsung's first sale of any BD-P1590, BD-P1590C, or BD-P1600 products in the United States, Samsung did not have and never could have had a reasonable belief that the '158, '160 and '220 Patents covered the BD-P1590, BD-P1590C, or BD-P1600 products.

654.    Because at the time it falsely marked the BD-P1590, BD-P1590C, and BD-P1600 products Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the BD-P1590, BD-P1590C, and BD-P1600 products with United States Patent Nos. 4,930,158, 4,930,160, and 5,060,220 knowingly and with the intent to deceive the public.

655.    Samsung knowingly and intentionally created, then printed, then included with products sold in the United States, the BD-P1590, BD-P1590C, and BD-P1600 user manual marked with expired United States Patent Nos. 4,930,158, 4,930,160, and 5,060,220.

656.    On information and belief, Samsung first began selling the BD-P2500 and BD-P2550 on or after October 23, 2008.

657.    Samsung did not sell the BD-P2500 or BD-P2550 in the United States before October 23, 2008.

658.    Samsung marked the BD-P2500 and BD-P2550 products and/or the user manuals that accompanied those products with the '158 Patent and the '160 Patent.

659.    Excerpts from those manuals show Samsung's statement that the BD-P2500 and BD-P2550 are covered by United States Patents 4,930,158 and 4,930,160:

> This product is covered by the following U.S. patents:
> US4,930,158 US4,930,160

660.    The '158 Patent expired on August 29, 2008 prior to the first sale of any BD-P2500 and BD-P2550 product in the United States.

661.    The '160 Patent expired on August 29, 2008 prior to the first sale of any BD-P2500 and BD-P2550 product in the United States.

662.    Samsung included user manuals with its BD-P2500 and BD-P2550 products sold in the United States, claiming that those products were "covered by the following U.S. patents: US4,930,158 US4,930,160."

663.    Samsung sold BD-P2500 and BD-P2550 products in the United States marked with the patent numbers of the '158 Patent and the '160 patent, after they expired.

664.    Because the '158 and '160 Patents expired before Samsung's first sale of any BD-P2500 and BD-P2550 product in the United States, Samsung did not have and never could have had a reasonable belief that the '158 and '160 Patents covered the BD-P2500 and BD-P2550.

665.    Because at the time it falsely marked the BD-P2500 and BD-P2550 products, Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the BD-P2500 and BD-P2550 products with United States Patent Nos. 4,930,158 and 4,930,160 knowingly and with the intent to deceive the public.

666. Samsung knowingly and intentionally created, then printed, then included with products sold in the United States, the BD-P2500 and BD-P2550 user manuals marked with expired United States Patent Nos. 4,930,158 and 4,930,160.

667. On information and belief, Samsung first began selling the BD-P3600 on or after March 31, 2009.

668. Samsung did not sell the BD-P3600 in the United States before March 31, 2009.

669. Samsung marked the BD-P3600 products and/or the user manuals that accompanied those products with the '158 Patent and the '160 Patent.

670. Excerpts from those manuals show Samsung's statement that the BD-P3600 are covered by United States Patents 4,930,158, 4,930,160, and 5,060,220:

> ▪ The product unit accompanying this user manual is licensed under certain intellectual p
> third parties. This product is covered by one or more of the following U.S. patents:
> 5,060,220 5,457,689 5,561,649 5,705,762 6,043,912 6,438,099 6,467,061 6,556,52
> 6,728,474 6,771,891 6,894,963 6,895,593 6,937,815 6,996,327 7,009,926 7,085,22
> 7,099,568 7,123,564 7,142,493 7,142,495 7,145,861 7,146,624 7,151,729 7,161,87
> 7,173,891 7,177,250 7,194,187 7,203,891 7,209,423 7,210,067 7,228,062 7,245,56
> 7,263,045 7,269,110 7,272,086 7,272,106 7,280,460 7,283,729 7,286,454 7,304,93
> This product is covered by the following U.S. patents:
> US4,930,158 US4,930,160

671. The '158 Patent expired on August 29, 2008 prior to the first sale of any BD-P3600 product in the United States. The '160 Patent expired on August 29, 2008 prior to the first sale of any BD-P3600 product in the United States.

672. The '220 Patent expired on July 5, 2009 prior to Samsung's manufacture and sale of several BD-P3600 products in the United States.

673. Samsung included user manuals with its BD-P3600 products sold in the United States, claiming that those products were covered by U.S. Patent Nos. 4,930,158 4,930,160, and 5,060,220.

674. Samsung sold BD-P3600 products in the United States marked with the patent numbers of the '158 Patent, '160 patent, and '220 Patent after they expired.

675.    Because the '158 and '160 Patents expired before Samsung's first sale of any BD-P3600 product in the United States, Samsung did not have and never could have had a reasonable belief that the '158 and '160 Patents covered the BD-P3600.

676.    Because the '220 Patent expired before Samsung manufactured several BD-P3600 product in the United States, Samsung did not have and never could have had a reasonable belief that the '220 Patent covered the BD-P3600.

677.    Because at the time it falsely marked BD-P3600 products, Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the BD-P3600 products with United States Patent Nos. 4,930,158, 4,930,160, 5,060,220, knowingly and with the intent to deceive the public.

678.    Samsung knowingly and intentionally created, then printed, then included with products sold in the United States, the BD-P3600 user manuals marked with expired United States Patent Nos. 4,930,158, 4,930,160, and 5,060,220.

679.    On information and belief, Samsung manufactured BD-P4600 units after July 5, 2009.

680.    On information and belief, Samsung sold BD-P4600 units in the United States after July 5, 2009.

681.    Samsung marked the BD-P4600 and/or the user manuals that accompanied the BD-4600 with the '220 Patent.

682.    Excerpts from the manuals show Samsung's statement that the BD-P4600 is covered by United States Patent No. 5,060,220:

> • The product unit accompanying this user manual is licensed under certain intellectual property rights of certain third parties. This product is covered by one or more of the following U.S. patents:|
> 5,060,220 5,457,669 5,561,649 5,705,762 6,043,912 6,438,099 6,467,061 6,556,521 6,578,163 6,697,307
> 6,728,474 6,771,901 6,894,963 6,895,593 6,937,815 6,906,327 7,000,026 7,095,221 7,088,649 7,002,327
> 7,099,566 7,123,564 7,142,493 7,142,495 7,145,861 7,146,824 7,151,729 7,161,879 7,164,647 7,167,437
> 7,173,891 7,177,250 7,194,187 7,203,891 7,209,423 7,210,097 7,228,062 7,245,566 7,245,567 7,257,065
> 7,263,045 7,269,110 7,272,086 7,272,106 7,280,460 7,283,729 7,286,454 7,304,938

683.    The '220 Patent expired on July 5, 2009 prior to the manufacture of several BD-P4600 products by Samsung.

684.    Samsung included user manuals with its BD-P4600 products sold in the United States, manufactured after July 5, 2009, claiming that the BD-P4600 is covered by United States Patent No. 5,060,220.

685.    Samsung sold BD-P4600 products in the United States with the patent number of the '220 Patent marked thereon, after it expired.

686.    Because the '220 Patent expired before Samsung's sale of BD-P4600 products in the United States manufactured after July 5, 2009, Samsung did not have and never could have had a reasonable belief that the '220 Patent covered the BD-P4600.

687.    Because at the time it falsely marked the BD-P4600 products Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the BD-P4600 with United States Patent No. 5,060,220 knowingly and with the intent to deceive the public.

688.    Samsung knowingly and intentionally printed BD-P4600 user manuals marked with expired United States Patent No. 5,060,220 after July 5, 2009 and included such manuals with products shipped after July 5, 2009.

689.    On information and belief, Samsung first sold its BD-C5500 model products in the United States on or after January 10, 2010.

690.    Samsung did not sell its BD-C5500 product in the United States before January 10, 2010.

691.    Samsung marked the BD-C5500 and/or the user manuals that accompanied the BD-C5500 with the '220 Patent.

692. True and correct images of a portion of the back of two Samsung BD-C5500 products follows, showing a portion of the metal case listing expired United States Patent Nos. 5,060,220:



693. Excerpts from the manuals show Samsung's statement that the BD-C5500 is covered by United States Patent No. 5,060,220:

> • The product unit accompanying this user manual is licensed under certain intellectual property rights of certain third parties. This product is covered by one or more of the following U.S. patents: 5,060,220 5,457,669 5,561,649 5,705,782 6,043,912 6,438,099 6,467,061 6,556,521 6,578,163 6,697,307 6,728,474 6,771,891 6,894,963 6,895,593 6,937,815 6,996,327 7,009,926 7,095,221 7,088,649 7,092,327 7,099,566 7,123,564 7,142,493 7,142,495 7,145,861 7,146,624 7,151,729 7,161,879 7,164,647 7,167,437 7,173,891 7,177,250 7,194,187 7,203,891 7,209,423 7,210,067 7,228,062 7,245,566 7,245,567 7,257,065 7,263,045 7,269,110 7,272,086 7,272,106 7,280,460 7,283,729 7,286,454 7,304,938

694. The '220 Patent expired on July 5, 2009 prior to any first sale of the BD-C5500 product by Samsung.

695. Samsung marked its BD-C5500 products with United States Patent No. 5,060,220 after it expired.

696. Samsung sold its BD-C5500 products in the United States with the patent number of the '220 Patent, after it expired.

697. Because the '220 Patent expired before Samsung's first sale of any BD-C5500 product in the United States, Samsung did not have and never could have had a reasonable belief that the '220 Patent covered the BD-C5500.

698.   Because at the time it falsely marked the BD-C5500 products Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the BD-C5500 with United States Patent No. 5,060,220 knowingly and with the intent to deceive the public.

699.   Samsung knowingly and intentionally created, then printed, then included with products sold in the United States, the BD-C5500 user manual marked with expired United States Patent Nos. 5,060,220.

700.   On information and belief, Samsung first sold its BD-C5900 model products in the United States on or after June 6, 2010.

701.   Samsung did not sell its BD-C5900 product in the United States before June 6, 2010.

702.   Samsung marked the BD-C5900 and/or the user manuals that accompanied the BD-C5900 with the '220 Patent.

703.   A true and correct image of a portion of the back of a Samsung BD-C5900 follows, showing a portion of the metal case listing expired United States Patent Nos. 5,060,220:



704.   The '220 Patent expired on July 5, 2009 prior to any first sale of the BD-C5900 product by Samsung.

705.   Samsung marked its BD-C5900 products with United States Patent No. 5,060,220 after it expired.

706.   Samsung sold its BD-C5900 products in the United States with the patent number of the '220 Patent, after it expired.

707.    Because the '220 Patent expired before Samsung's first sale of any BD-C5900 product in the United States, Samsung did not have and never could have had a reasonable belief that the '220 Patent covered the BD-C5900.

708.    Because at the time it falsely marked the BD-C5900 products Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the BD-C5900 with United States Patent No. 5,060,220 knowingly and with the intent to deceive the public.

709.    On information and belief, Samsung first sold its BD-C6500 model products in the United States on or after January 21, 2010. Samsung did not sell its BD-C6500 product in the United States before January 21, 2010.  Samsung did not sell its BD-C6500 product in the United States before July 5, 2009. Samsung marked the BD-C6500 and/or the user manuals that accompanied the BD-C6500 with the '220 Patent.

710.    True and correct images of a portion of the back of a Samsung BD-C6500 follow, showing a portion of the metal case listing expired United States Patent No. 5,060,220:



711.    The '220 Patent expired on July 5, 2009 prior to any first sale of the BD-C6500 product by Samsung.

712.    Samsung marked its BD-C6500 products with United States Patent No. 5,060,220 after it expired.

713.    Samsung sold its BD-C6500 products in the United States with the patent number of the '220 Patent, after it expired.

714.    Because the '220 Patent expired before Samsung's first sale of any BD-C6500 product in the United States, Samsung did not have and never could have had a reasonable belief that the '220 Patent covered the BD-C6500.

715.    Because at the time it falsely marked the BD-C6500 products Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the BD-C6500 with United States Patent No. 5,060,220 knowingly and with the intent to deceive the public.

716.    Samsung included a user manual with each BD-C6500 product sold in the United States, claiming that those products were covered by U.S. Patent Nos. 5,060,220.

717.    Samsung knowingly and intentionally created, then printed, then included with products sold in the United States, the BD-C6500 user manual marked with expired United States Patent Nos. 5,060,220.

718.    On information and belief, Samsung first sold its BD-C6800 model products in the United States on or after May 30, 2010.

719.    Samsung did not sell its BD-C6800 product in the United States before May 30, 2010.

720.    Samsung did not sell its BD-C6800 product in the United States before July 5, 2009.

721.    Samsung marked the BD-C6800 with the '220 Patent.

722.    True and correct images of portions of the back of a Samsung BD-C6800 follow, showing a portion of the metal case listing expired United States Patent Nos. 5,060,220, and a sticker adjacent to the marking containing a manufacturing date June 2010:



Manufactured under license under U.S. Patent #'s: 5,451,942; 5,956,674; 5,974,380; 5,978,762; 6,226,616; 6,487,535; 7,212,872; 7,333,929; 7,392,195; 7,272,567 & other U.S. and worldwide patents issued & pending. DTS and the Symbol are registered trademarks & the DTS logos are trademarks of DTS, Inc. © DTS, Inc. All Rights Reserved.

This product is covered by one or more of the following U.S. patents: 5,060,220; 5,561,649; 6,043,912; 6,377,524; 6,560,177; 6,643,232; 6,674,697; 6,697,307; 6,728,474; 6,744,713; 6,894,963; 6,895,593

This device is protected by U.S. Patent Nos. 5,315,448; 5,583,936; 6,501,842; 6,381,747; 6,516,132; 6,836,549; and 7,050,698.

TIANJIN SAMSUNG ELECTRONICS CO.,LTD. 12.FOURTH AVENUE, TEDA, TIANJIN, CHINA.

723.    The '220 Patent expired on July 5, 2009 prior to any first sale of the BD-C6800 product by Samsung.

724.    Samsung marked its BD-C6800 products with United States Patent No. 5,060,220 after it expired.  Samsung sold its BD-C6800 products in the United States with the patent number of the '220 Patent, after it expired.

725.    Because the '220 Patent expired before Samsung's first sale of any BD-C6800 product in the United States, Samsung did not have and never could have had a reasonable belief that the '220 Patent covered the BD-C6800.

726.    Because at the time it falsely marked the BD-C6800 products Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the BD-C6800 with United States Patent No. 5,060,220 knowingly and with the intent to deceive the public.

727.    On information and belief, Samsung first sold its BD-C6900 model products in the United States on or after October 7, 2010.

728.    Samsung did not sell its BD-C6900 product in the United States before October 7, 2010.

729.    Samsung did not sell its BD-C6900 product in the United States before July 5, 2009.

730.   Samsung marked the BD-C6900 with the '220 Patent.

731.   A true and correct image of portion of the back of a Samsung BD-C6900 follows, showing a portion of the metal case listing expired United States Patent Nos. 5,060,220:



732.   The '220 Patent expired on July 5, 2009 prior to any first sale of the BD-C6900 product by Samsung.

733.   Samsung marked its BD-C6900 products with United States Patent No. 5,060,220 after it expired.

734.   Samsung sold its BD-C6900 products in the United States marked with the patent number of the '220 Patent, after it expired.

735.   Because the '220 Patent expired before Samsung's first sale of any BD-C6900 product in the United States, Samsung did not have and never could have had a reasonable belief that the '220 Patent covered the BD-C6900.

736.   Because at the time it falsely marked the BD-C6900 products Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the BD-C6900 with United States Patent No. 5,060,220 knowingly and with the intent to deceive the public.

737.   On information and belief, Samsung first sold its DVD-C350/DVD-C350/XAA model products in the United States on or after March 7, 2010.

738.   Samsung did not sell its DVD-C350/DVD-C350XAA product in the United States before March 7, 2010.

739.   Samsung did not sell its DVD-C350/DVD-C350XAA product in the United States before July 5, 2009.

740.   Samsung marked the DVD-C350/DVD-C350XAA and/or the user manuals that accompanied those products with the '220 Patent.

741.   Excerpts from those manuals showing Samsung's statement that the DVD-C350 products are licensed under expired United States Patent 5,060,220:

> • The product unit accompanying this user manual is licensed under certain intellectual property rights of certain third parties. In particular, this product is licensed under the following US patents: 5,060,220 5,457,669 5,561,649 5,705,76 5,987,417 6,043,912 6,222,983 6,272,096 6,377,524 6,377,531 6,385,587 6,389,570 6,408,408 6,466,532 6,473,736 6,477,501 6,480,829 6,556,520 6,556,521 6,556,522 6,578,163 6,594,208 6,631,110 6,658,588 6,674,697 6,674,957 6,687,455 6,697,307 6,707,985 6,721,243 6,721,493 6,728,474 6,741,535 6,744,713 6,744,972 6,765,853 6,765,853 6,771,890 6,771,891 6 775,465 6,778,755 6,788,629 6,788,630 6,795,637 6,810,201 6,862,256 6,868,054 6,894,963 6,937,552.

742.   The '220 Patent expired on July 5, 2009 prior to any first sale of the DVD-C350/DVD-C350XAA product by Samsung.

743.   Samsung marked its DVD-C350/DVD-C350XAA products with United States Patent No. 5,060,220 after it expired.

744.   Samsung included user manuals with its DVD-C350/DVD-C350XAA products sold in the United States, claiming that those products were licenses under U.S. Patent Nos. 5,060,220.

745.   Samsung sold its DVD-C350/DVD-C350XAA products in the United States marked with the patent number of the '220 Patent, after it expired.

746.   Because the '220 Patent expired before Samsung's first sale of any DVD-C350/DVD-C350XAA product in the United States, Samsung did not have and never could have had a reasonable belief that the '220 Patent covered the DVD-C350/DVD-C350XAA.

747.   Because at the time it falsely marked the DVD-C350/DVD-C350XAA products Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely

marked the DVD-C350/DVD-C350XAA with United States Patent No. 5,060,220 knowingly and with the intent to deceive the public.

748.    Samsung knowingly and intentionally created, then printed, then included with products sold in the United States, the DVD-C350/DVD-C350XAA user manual marked with expired United States Patent No. 5,060,220.

749.    On information and belief, Samsung first sold its DVD-C500 and DVD-C550 model products in the United States on or after March 18, 2010.

750.    Samsung did not sell its DVD-C500 and DVD-C550 products in the United States before March 18, 2010.

751.    Samsung did not sell its DVD-C500 and DVD-C550 products in the United States before July 5, 2009.

752.    Samsung marked the DVD-C500 and DVD-C550 and/or the user manuals that accompanied those products with the '220 Patent.

753.    Excerpts from those manuals showing Samsung's statement that the DVD-C500 and DVD-C550 products are licensed under expired United States Patent 5,060,220:

> • The product unit accompanying this user manual is licensed under certain intellectual property rights of certain third parties. In particular, this product is licensed under the following US patents: 5,060,220 5,457,669 5,561,649 5,705,74 5,987,417 6,043,912 6,222,983 6,272,096 6,377,524 6,377,531 6,385,587 6,389,570 6,408,408 6,466,532 6,473,736 6,477,501 6,480,829 6,556,520 6,556,521 6,556,522 6,578,163 6,594,208 6,631,110 6,658,588 6,674,697 6,674,957 6,687,455 6,697,307 6,707,985 6,721,243 6,721,493 6,728,474 6,741,535 6,744,713 6,744,972 6,765,853 6,765,853 6,771,890 6,771,891 6,775,465 6,778,755 6,788,629 6,788,630 6,795,637 6,810,201 6,862,256 6,868,054 6,894,963 6,937,552.

754.    The '220 Patent expired on July 5, 2009 prior to any first sale of the DVD-C500 and DVD-C550 products by Samsung.

755.    Samsung marked its DVD-C500 and DVD-C550 products with United States Patent No. 5,060,220 after it expired.

756.   True and correct images of portions of the back of a Samsung DVD-C500 product follows, showing a portion of the metal case listing expired United States Patent Nos. 5,060,220, and a sticker adjacent to the marking containing a manufacturing date of March 2010:



757.   Samsung included user manuals with its DVD-C500 and DVD-C550 products sold in the United States, claiming that those products were licenses under U.S. Patent Nos. 5,060,220.

758.   Samsung sold its DVD-C500 and DVD-C550 products in the United States marked with the patent number of the '220 Patent, after it expired.

759.   Because the '220 Patent expired before Samsung's first sale of any DVD-C500 and DVD-C550 product in the United States, Samsung did not have and never could have had a reasonable belief that the '220 Patent covered the DVD-C500 and DVD-C550.

760.   Because at the time it falsely marked the DVD-C500 and DVD-C550 products Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the DVD-C500 and DVD-C550 with United States Patent No. 5,060,220 knowingly and with the intent to deceive the public.

761.   Samsung knowingly and intentionally created, then printed, then included with products sold in the United States, the DVD-C500 and DVD-C550 user manual marked with expired United States Patent No. 5,060,220.

762.   On information and belief, Samsung manufactured DVD-V9800 units after July 5, 2009.

763.    On information and belief, Samsung sold DVD-V9800 units in the United States after July 5, 2009.

764.    Samsung marked the DVD-V9800 and/or the user manuals that accompanied the BD-4600 with the '220 Patent.

765.    True and correct images of a portion of the back of a Samsung DVD-V9800 product follows, showing a portion of the metal case listing expired United States Patent Nos. 5,060,220, and a sticker adjacent to the marking containing a manufacturing date of August 2009:



766.    Excerpts from those manuals show Samsung's statement that the DVD-V9800 is licensed under United States Patent No. 5,060,220:

• The product unit accompanying this user manual is licensed under certain intellectual property rights of certain third parties. In particular, this product is licensed under the following US patents: 5,060,220 5,457,669 5,561,649 5,705,762 5,987,417 6,043,912 6,222,983 6,272,096 6,377,524 6,377,531 6,385,587 6,380,570 6,408,408 6,466,532 6,473,736 6,477,501 6,480,829 6,556,520 6,556,521 6,556,522 6,578,163 6,594,208 6,631,110 6,658,588 6,674,697 6,674,957 6,687,455 6,697,307 6,707,985 6,721,243 6,721,493 6,728,474 6,741,535 6,744,713 6,744,972 6,765,853 6,765,853 6,771,800 6,771,801 6 775,465 6,778,755 6,788,620 6,788,630 6,705,637 6,810,201 6,862,256 6,868,054 6,894,963 6,937,552, 6,836,549; 6,381,747; 7,050,698; 6,516,132; and 5,583,936.

767.    The '220 Patent expired on July 5, 2009 prior to the manufacture of several DVD-V9800 products by Samsung.

768.    Samsung included user manuals with its DVD-V9800 products sold in the United States, manufactured after July 5, 2009, claiming that the DVD-V9800 is licensed under United States Patent No. 5,060,220.

769.     Samsung sold DVD-V9800 products in the United States with the patent number of the '220 Patent, after it expired.

770.     Because the '220 Patent expired before Samsung's sale of DVD-V9800 products in the United States manufactured after July 5, 2009, Samsung did not have and could not have had a reasonable belief that the '220 Patent covered the DVD-V9800.

771.     Because at the time it falsely marked the DVD-V9800 products Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the DVD-V9800 with United States Patent No. 5,060,220 knowingly and with the intent to deceive the public.

772.     At the time Samsung placed or caused to be placed the sticker on the back of each DVD-V9800 showing the manufacturing date after July 5, 2009, it would not have been an undue burden on Samsung to place or cause to be placed a sticker over the adjacent section on the back of the DVD-V9800 to cover and/or correct the false patent marking.

773.     It would not have been an undue burden on Samsung to edit the user manual it included with DVD-V9800 products manufactured after July 5, 2009 to delete its false claim that the DVD-V9800 was covered by the '220 Patent.

774.     Samsung knowingly and intentionally printed DVD-V9800 user manuals marked with expired United States Patent No. 5,060,220 after July 5, 2009 and included such manuals with products shipped after July 5, 2009.

775.     On information and belief, Samsung first sold its DVD-VR375 model products in the United States on or after August 26, 2009.

776.     Samsung did not sell its DVD-VR375 products in the United States before August 26, 2009.

777.     Samsung did not sell its DVD-VR375 products in the United States before July 5, 2009.

778.   Samsung marked the DVD-VR375 and/or the user manuals that accompanied those products with the '220 Patent.

779.   Excerpts from those manuals show Samsung's statement that the DVD-VR375 products are covered by expired United States Patent 5,060,220:

> ■ This product is covered by one or more of the following U.S. patents:
> 5,060,220 5,467,669 5,561,649 5,706,762 6,043,012 6,438,099
> 6,467,061 6,556,521 6,578,163 6,697,307 6,728,474 6,771,891
> 6,094,903 6,095,593 6,937,015 6,996,327 7,009,920 7,005,221
> 7,088,640 7,092,327 7,096,666 7,123,684 7,142,403 7,142,405
> 7,145,861 7,146,624 7,151,729 7,161,879 7,164,647 7,167,437
> 7,173,091 7,177,250 7,194,107 7,203,091 7,209,423 7,210,007
> 7,228,062 7,245,668 7,245,667 7,257,065 7,263,045 7,260,110
> 7,272,086 7,272,106 7,280,460 7,283,729 7,286,454 7,304,938

780.   The '220 Patent expired on July 5, 2009 prior to any first sale of the DVD- DVD-VR375 products by Samsung.

781.   Samsung marked its DVD-VR375 products with United States Patent No. 5,060,220 after it expired.

782.   A true and correct image of a portion of the back of a Samsung DVD-VR375 product follows, showing a portion of the metal case listing expired United States Patent Nos. 5,060,220:



783.   Samsung included user manuals with its DVD-VR375 products sold in the United States, claiming that those products were covered by U.S. Patent Nos. 5,060,220.

784.     Samsung sold its DVD-VR375 products in the United States marked with the patent number of the '220 Patent, after it expired.

785.     Because the '220 Patent expired before Samsung's first sale of any DVD-VR375 product in the United States, Samsung did not have and never could have had a reasonable belief that the '220 Patent covered the DVD-VR375 products.

786.     Because at the time it falsely marked the DVD-VR375 products Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the DVD-VR375 with United States Patent No. 5,060,220 knowingly and with the intent to deceive the public.

787.     Samsung knowingly and intentionally created, then printed, then included with products sold in the United States, the DVD-VR375 user manual marked with expired United States Patent No. 5,060,220.

788.     On information and belief, Samsung first sold its DVD-1080P7/XAA model products in the United States on or after April 12, 2007.

789.     Samsung marked the DVD-1080P7/XAA and/or the user manuals that accompanied those products with the '220 Patent.

790.     Excerpts from those manuals show Samsung's statement that the DVD-1080P7/XAA products are covered by expired United States Patent 5,060,220:

> • The product unit accompanying this user manual is licensed under certain intellectual property rights
> of certain third parties. In particular, this product is licensed under the following US patents: 5,060,220
> 5,457,669 5,561,649 5,705,762 5,987,417 6,043,912 6,222,983 6,272,096 6,377,524 6,377,531
> 6,385,587 6,389,570 6,408,408 6,466,532 6,473,736 6,477,501 6,480,829 6,556,520 6,556,521
> 6,556,522 6,578,163 6,594,208 6,631,110 6,658,588 6,674,697 6,674,957 6,687,455 6,697,307
> 6,707,985 6,721,243 6,721,493 6,728,474 6,741,535 6,744,713 6,744,972 6,765,853 6,765,853
> 6,771,890 6,771,891 6,775,465 6,778,755 6,788,629 6,788,630 6,795,637 6,810,201 6,862,256
> 6,868,054 6,894,963 6,937,552 6,836,549; 6,381,747; 7,050,698; 6,516,132; and 5,583,936.

791.     Samsung marked its DVD-1080P7/XAA products with United States Patent No. 5,060,220 after it expired.

792.   Samsung included user manuals with its DVD-1080P7/XAA products sold in the United States, claiming that those products were covered by U.S. Patent Nos. 5,060,220.

793.   Samsung sold its DVD-1080P7/XAA products in the United States marked with the patent number of the '220 Patent, after it expired.

794.   Because the '220 Patent expired before Samsung's sale of the DVD-1080P7/XAA product in the United States, Samsung did not have and never could have had a reasonable belief that the '220 Patent covered the DVD-1080P7/XAA products after the patent expired.

795.   Because at the time it falsely marked the DVD-1080P7/XAA products Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked the DVD-1080P7/XAA with United States Patent No. 5,060,220 knowingly and with the intent to deceive the public.

796.   Samsung knowingly and intentionally created, then printed, then included with products sold in the United States, the DVD-1080P7/XAA user manual marked with expired United States Patent No. 5,060,220.

797.   On information and belief, Samsung sells and/or advertised for sale certain Samsung TVs, including FP-T5094W, FP-T5894W, which it has falsely marked or falsely marks by marking upon , affixing to, or using in advertising in connection with such products one or more of the patent numbers, including U.S. Patent Nos. 4,972,484 ("the '484 patent"); 4,930,160 ("the '160 patent"); and 4,930,158 (the "158 patent").

798.   Samsung provided user manuals and/or user guides (or the equivalent thereto) to customers who purchased the Samsung Products and included or caused to be included therein the following, or similar, copyright and patent notices:

**U.S.A Only**

The product unit accompanying this user manual is licensed under certain intellectual property rights of certain third parties. In particular, this product is licensed under the following US patents: 5,991,715, 5,740,317, 4,972,484, 5,214,678, 5,323,396, 5,539,829, 5,606,618, 5,530,655, 5,777,992, 6,289,308, 5,610,985, 5,461,643, 5,544,247, 5,960,037, 6,023,490, 5,878,080, and under US Published Patent Application No. 2001-44713-A1.

This license is limited to private non-commercial use by end-user consumers for licensed contents. No rights are granted for commercial use. The license does not cover any product unit other than this product unit and the license does not extend to any unlicensed product unit or process conforming to ISO/IEC 11172-3 or ISO/IEC 13818-3 used or sold in combination with this product unit. The license only covers the use of this product unit to encode and/or decode audio files conforming to the ISO/IEC 11172-3 or ISO/IEC 13818-3. No rights are granted under this license for product features or functions that do not conform to the ISO/IEC 11172-3 or ISO/IEC 13818-3.

## Using the V-Chip

**U.S.A Only**
This product is covered by the following U.S. patents: US4,930,158 US4,930,160

The V-Chip feature automatically locks out programs that are deemed inappropriate for children. The user must enter a PIN (personal ID number) before any of the V-Chip restrictions are set up or changed.

799.    The '484 patent expired on November 20, 2007; the '160 patent expired on May 29, 2007; and the '158 patent expired on May 29, 2007, prior to the sale of at least some of Samsung TVs, including FP-T5094W, FP-T5894W.

800.    Samsung marked at least some of its Samsung TVs, including FP-T5094W, FP-T5894W, FP-T5094W, FP-T5894W, HP-T4234, HP-T5034, HP-T5044, HP-T4254, HP-T5054, HP-T4264, HP-T5064, HP-S4273, HP-S5073, HP-S6373, FP-T5094W, FP-T5894W, FP-T5084, FP-T6374, FP-T5884, Series4 400, Series6 650, Series7 760, PL-42P5HD, PL-50P5HD, Series4 430, Series4 450, HP-R4252, HP-R5052, HP-R4262, HP-R5012, HP-R4272, HP-R5072, HP-R6372, SP-S4223, SP-S4233, SP-S5033, SP-S4253, SP-S5053, Series5 530, Series5 540, Series5 550 560 590, Series6 650, Series4 450, Series5 500, Series5 530 540 550, Series5 580, Series6 630 650 670, Series7 750, Series9 950, LN-T4061F, LN-T4065F, LN-T4661F, LN-T4665F, LN-T5265F, LN-T4081F, LN-T4681F, LN-T5281F, LN-T2781F, Series8 850, LN-T2342H, LN-T2642H, LN-T3242H, LN-T4042H, LN-T4642H, LN40F81BD, LN46F81BD, LN52F81BD, LN40M81BD, LN40N81BD, LN46M81BD, LN46N81BD, LN52N81BD, LN23S81BD, LN26S81BD, LN32S81BD, LN40S81BD, LN46S81BD, LN40S71BD, Series6 630 640 650, Series6 6000, Series8 8000, Series8 8500, HL-R5688W, HL-R5078W, HL-R5678W, HL-R6178W,

HL-R7178W, HL-R4667W, HL-R5067W, HL-R5667W, HL-R6167W, HL-R6767W, HL-R5668W, HL-R6168W, HL-R6768W, HL-R4656W, HL-R5056W, HL-R5656W, HL-R6156W, HL-S4265W, HL-S5065W, HL-S5665W, HL-S6165W, HL-S6765W, HL-S5055W, HL-S4266W, HL-S4666W, HL-S5066W, HL-S5666W, HL-S6166W, HL-S5086W, HL-S5686W, HL-S6186W, HL-S6167W, HL-S6767W, HL-S5087W, HL-S5687W, HL-S6187W, HL-T4675S, HL-T5075S, HL-T5675S, HL-T5656W, HL-T6156W, HL-T6756W, HL-T5076S, HL-T5676S, HL-T6176S, HL-T5089S, HL-T5689S, HL-T6189S, HL-T5087S, HL-T5687S, HL-T6187S, Series 5 510, Series 6 650, Series 7 750, HL-T7288W, HL-T5055W, HL-T5655W, HL-S5088W, HL-S5688W, HL-S6188W, HL-S7178W, and HL-S5679W, with the U.S. Patent Nos. '484, '160 and '158 patents after these patents expired.

801.   Samsung included user manuals with its Samsung TVs sold in the United States, claiming that those products were covered by U.S. Patent Nos. '484, '160, and '158.

802.   Samsung sold at least some of its Samsung TVs in the United States marked with U.S. patent Nos. '484, '160 and '158, after these patents expired.

803.   Because the '484, '160 and '158 patents expired before Samsung's first sale of at least some of the Samsung TVs, in the United States, Samsung did not have and never could have had a reasonable belief that these patents covered Samsung TVs.

804.   Because at the time it falsely marked certain of the Samsung TVs, Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked these products with United States Patent Nos. '484, '160 and '158 knowingly and with the intent to deceive the public.

805.   Samsung knowingly and intentionally created, then printed, then included with products sold in the United States, the Samsung TVs, user manual marked with expired United States Patent Nos. '484, '160 and '158.

806.    On information and belief, Samsung sells and/or advertised for Samsung Camcorders, including SC-DC171, SC-DC173(U), SC-DC175, SC-DC575, SC-DC563, and SD-DC565, which it has falsely marked or falsely marks by marking upon , affixing to, or using in advertising in connection with such products one or more of the patent numbers, including U.S. Patent Nos. 4,415,844 ("the '844 patent").

807.    Samsung provided user manuals and/or user guides (or the equivalent thereto) to customers who purchased the Samsung Camcorders and included or caused to be included therein the following, or similar, copyright and patent notices:

**Owner's Instruction Book**
Before operating the unit, please read this Instruction Book thoroughly, and retain it for future reference.

**US PATENT 4415844**

808.    The '844 patent expired on November 15, 2000.

809.    Samsung marked at least some of the Samsung Camcorders with the '844 patent after it expired.

810.    Samsung included user manuals with its Samsung Camcorders, sold in the United States, claiming that those products were covered by the '844 patent.

811.    Samsung sold at least some of the Samsung Camcorders, in the United States marked with the patent number of the '844 patent, after it expired.

812.    Because the '844 patent expired before Samsung's sale of at least some of the Samsung Camcorders in the United States, Samsung did not have and never could have had a reasonable belief that the '844 patent covered those products after the patent expired.

813.    Because at the time it falsely marked at least some of the Samsung Camcorders, Samsung knew that the claims of an expired patent cannot afford patent protection, Samsung falsely marked those products with the '844 patent knowingly and with the intent to deceive the public.

814.   Samsung knowingly and intentionally created, then printed, then included with products sold in the United States, Samsung Camcorders, user manual marked with expired '844 patent.

815.   On information and belief, Samsung falsely marked the Samsung Products knowingly and with the intent to deceive the public.

816.   Samsung claims ownership of a copyright in the user guides for the Samsung Products.

817.   Samsung places copyright notices in its user guides for the Samsung Products to notify the public that it owns a copyright in the guide.

## THE FALSE MARKING OF SIERRA PRODUCTS

818.   On information and belief, Sierra Wireless sells, offers to sell, has sold, and/or has offered to sell the following products (the "Sierra Products") which it has falsely marked with expired or inapplicable patents in the United States: AirCard 510; BE-300; AirCard 555 AirCard 750; AirCard 700 Series; AirCard 580; AirCard 800 Series (including 850, 860, 875(U), 880U, 881, 881U); AirCard 880E+ (including product sold as Telstra Turbo7+ Series Express Card); AirCard 597E; Compass 597/597U; Compass 885 (including product sold as USBConnect Mercury); USB598/598U; AirCard 402 (2n1); NextG USB Modem; AirCard USB 310 (including product sold as Telstra Turbo); AirCard USB 305/305U (including product sold as USBConnect Lightning); AirCard USB 306/306U (including product sold as Telstra Elite); AirCard USB 307/307U; AirCard USB 308/308U (including product sold as USBConnect Shockwave); AirCard USB 309/309U (including product sold as USBConnect Shockwave); AirCard USB 310/310U; AirCard USB 312/312U (including product sold as Telstra Ultimate); AirCard 503 (Elite Express); W801 (including products sold as Overdrive, Clearspot 4G+, and/or TWC IntelliGo); AirCard 595/595U; MP700; MP555; Airlink Junxion Box (1x0); AirLink PinPoint (and all related product family versions); AirLink Raven (and all related product family versions); AirLink Fastrack Supreme;

AirLink Redwing; AirLink GL61x0; AXIS Modems; MP890; AirLink Helix; Host RJ-11 Gateway; MP 3G Modems; MP875; MP880W; MP881W; MP595; MP895; MP597; Softbank C01SW; Softbank C02SW; AirPrime MC Series; AirPrime Q24 Series; AirPrime Q26(xy); AirPrime Q64; AirPrime SL501x; AirPrime SL6087; AirPrime SL808x; AirPrime SL809x; AirPrime WISMO2x8; AirPrime WMP50; AirPrime WMP1x0; AirPrime XM0110; and AirPrime Integra M2106 Plus.

819.   In packaging, labeling, user guides or other documentation, or advertising materials related to the Sierra Products, Sierra Wireless included references to expired or inapplicable patents, including one or more of the following U.S. Patents: 4,901,307; 5,056,109; 5,101,501; 5,109,390; 5,617,106;  6,516,204;  6,327,154;  6,199,168;  6,191,741;  6,847,830;  6,359,591;  6,653,979; D367,062;  D372,248;  D372,701;  D416,857;  D452,495;  D452,496;  D459,303;  D442,170; D559,256; and D560,911.

820.   In packaging, labeling, user guides and/or other documentation, and/or advertising materials for the Sierra Products, Sierra Wireless has also referred to or otherwise made mention of the word "patent" or other terms importing that the same is/are patented.

821.   Sierra Wireless's references to the patents identified above, and/or the word "patent" or other terms importing patent coverage, in packaging, labeling, user guides or other documentation, or in advertising accompanying or related to the Sierra Products constitutes a violation of 35 U.S.C. § 292 because it constitutes or constituted the marking of unpatented articles with expired patents or patents that do not cover the Sierra Products, which was done for the purpose of deceiving the public.

822.   Sierra Wireless falsely marked its products with inapplicable design patents to discourage competitors from developing similar products.

## THE FALSE MARKING OF HTC PRODUCTS

823.    On information and belief, HTC sells, offers to sell, has sold, or has offered to sell cellular phones and devices, including to Verizon, AT&T, T-Mobile, Cellular South, U.S. Cellular and Alltel, which it has falsely marked by marking upon, affixing to, or using in advertising in connection with such products numbers of expired patents or patents that do not cover the products, incuding one or more of the patent numbers of the expired '307, '109, '501, and '390 patents. Such false marking has occurred in the United States in the past five years and has been done in association with at least the following products: Droid Eris, Imagio, Touch Pro 2, Ozone, Verizon Wireless XV6800, Verizon Wireless XV6900, Aria, Desire, HD2, Hero, Pure, S743, Shift, Tilt 2, Touch, Touch Pro 2, Wildfire, T-Mobile myTouch 3G, T-Mobile myTouch 3G Slide, T-Mobile Dash 3G, T-Mobile Shadow HotSpot, and P6500 (the "HTC phones").

824.    HTC included and includes patent numbers in the user guides accompanying the HTC Phones in an effort to provide constructive notice to the public under 35 U.S.C. § 287 that those products were covered by the included patents.

825.    The HTC Phones could not be reasonably marked with all of the patent numbers listed in the accompanying user guides due to the small character of the products.

826.    HTC knows that consumers sometimes consult the user guide for its products, including the HTC Phones, before they purchase such products.

827.    HTC knows that consumers sometimes review user guides to learn about and evaluate the features of its products, including the HTC Phones, when making purchasing decisions.

828.    HTC utilizes the user guides for its products to provide consumers with notices and information regarding its products, including the HTC Phones.

829.    HTC posts user guides on its website to provide consumers with information regarding its products, including the HTC Phones.

830.   HTC sometimes releases the user guide for a product before the product is available for purchase.

831.   On information and belief, HTC first began selling: the Droid Eris in or about November 2009; the Imagio in or about October 2009; the Touch Pro 2 in or about August 2009; the Ozone in or about June 2009; the Verizon Wireless XV6800 in or about December 2007; the Verizon Wireless XV6900 in or about April 2008; the Aria in or about June 2010; the Desire in or about September 2010; the HD2 in or about March 2010; the Hero in or about October 2009; the Pure in or about October 2009; the S743 in or about February 2009; the Shift in or about February 2009; the Tilt 2 in or about October 2009; the Touch in or about June 2007; the Wildfire in or about October 2010; the T-Mobile myTouch 3G in or about August 2009; the T-Mobile myTouch 3G Slide in or about June 2010; the T-Mobile Dash 3G in or about July 2009; the T-Mobile Shadow HotSpot in or about January 2009; and the P6500 in or about April 2008.

832.   On information and belief, HTC provided user manuals and/or user guides (or the equivalent thereto) to customers who purchased the HTC Phones, and included or caused to be included therein copyright and patent notices that listed all of the patent numbers of the '307, '390, '501, and '109 patents.

833.   On information and belief, one or more of the '307, '390, '501, or '109 patents that were included in each HTC Phone user guide expired prior to HTC's first sale of the respective HTC Phone.

834.   On information and belief, HTC sold HTC Phones with accompanying user guides or user manuals which included the patent number of the '307, '390, '501, or '109 patents after the '307, '390, '501, or '109 patents expired.

835.     Because the '307, '390, '501, or '109 patents expired prior to HTC's first sale of the HTC Phones, HTC did not have a reasonable belief that such expired patents covered any of the HTC Phones.

836.     On information and belief, HTC falsely marked the HTC Phones knowingly and with the intent to deceive the public.

## COUNT I - CLAIM FOR RELIEF AGAINST SPRINT

837.     Americans incorporates Paragraphs 1-836 of this Complaint as if fully set forth in this paragraph.

838.     On information and belief, despite the fact that the claims of an expired patent cannot afford patent protection, Sprint knowingly and intentionally marked upon, affixed to, or used in advertising in connection with the Sprint-Sierra Products, the Airave, the Sprint-Samsung Phones, the Sprint LG Phones, and the Sprint HTC Phones the patent number of one or more expired patents after their expiration with the intent to deceive the public.

839.     Additionally, on information and belief, Sprint knowingly and intentionally marked upon, affixed to, or used in advertising in connection with many of the Sprint-Sierra Products patent numbers which do not cover the marked product, as described above, with the intent to deceive the public.

840.     Sprint knew or reasonably should have known that marking its products with expired patents or inapplicable patents violated federal patent marking laws which authorize marking or advertising only existing and enforceable patent or patent pending claims on a "patented" article.

841.     On information and belief, Sprint intended to and has deceived the public by falsely marking (or causing to be marked) the patent protection status of the Sprint-Sierra Products, the Airave, the Sprint-Samsung Phones, the Sprint LG Phones, and the Sprint HTC Phones.

842.    On information and belief, each false marking by Sprint identified in this Complaint is likely to discourage or deter persons and companies from commercializing competing products or pursuing research and development of competing products and or related products, which injures Americans and the public by stifling competition and increasing the cost of goods.

843.    On information and belief, Sprint's false marking of the Sprint-Sierra Products, the the Airave, the Sprint-Samsung Phones, the Sprint LG Phones, and the Sprint HTC Phones has wrongfully quelled competition with respect to such products thereby causing harm to Americans, the United States, and the public.

844.    On information and belief, Sprint has wrongfully and illegally asserted patent monopolies which it does not possess and, as a result, has benefited by limiting competition with respect to its products referenced in this Complaint – such benefit coming at the expense of Americans and the public.

845.    Sprint has engaged in a pattern of falsely marking large numbers of its products with design patents that do not cover the product and with expired patents.

846.    As detailed herein, Sprint has marked at least 36 different product models with inapplicable or expired patents.

847.    Sprint's actions are in violation of 35 U.S.C. § 292.

848.    Sprint and Samsung are jointly and severally liable for the false marking of the Sprint-Samsung Phones and the Airave described above.

849.    Sprint and Samsung are alternatively liable for the false marking of the Sprint-Samsung Phones and the Airave described above.

850.    Sprint and Sierra Wireless are jointly and severally liable for the false marking of the Sprint-Sierra Products described herein.

-131-

851.    Sprint and Sierra Wireless are alternatively liable for the false marking of the Sprint-Sierra Products described herein.

852.    Sprint and LG are jointly and severally liable for the false marking of the Sprint LG Phones described above.

853.    Sprint and LG are alternatively liable for the false marking of the Sprint LG Phones described above.

854.    Sprint and HTC are jointly and severally liable for the false marking of the Sprint HTC Phones described above.

855.    Sprint and HTC are alternatively liable for the false marking of the Sprint HTC Phones described above.

## COUNT II - CLAIM FOR RELIEF AGAINST VERIZON

856.    Americans incorporates Paragraphs 1-855 of this Complaint as if fully set forth in this paragraph.

857.    On information and belief, Verizon knowingly and intentionally marked upon, affixed to, or used in advertising in connection the AirCard 595 (the "Verizon Product") patent numbers which do not cover the AirCard 595 with the intent to deceive the public.

858.    Verizon knew or reasonably should have known that marking the Verizon Product with inapplicable patents violated federal patent marking laws which authorize marking or advertising only existing and enforceable patent or patent pending claims on a "patented" article.

859.    On information and belief, Verizon intended to and has deceived the public by falsely marking (or causing to be marked) the patent protection status of the Verizon Product.

860.    On information and belief, each false marking by Verizon identified in this Complaint is likely to discourage or deter persons and companies from commercializing competing

products or pursuing research and development of competing products and or related products, which injures Americans and the public by stifling competition and increasing the cost of goods.

861.     On information and belief, Verizon's false marking of the Verizon Product has wrongfully quelled competition with respect to such products thereby causing harm to Americans, the United States, and the public.

862.     On information and belief, Verizon has wrongfully and illegally asserted patent monopolies which it does not possess and, as a result, has benefited by limiting competition with respect to its products referenced in this Complaint – such benefit coming at the expense of Americans and the public.

863.     Verizon's actions are in violation of 35 U.S.C. § 292.

864.     Verizon and Sierra Wireless are jointly and severally liable for the false marking of the AirCard 595 sold by Verizon as described above.

865.     Verizon and Sierra Wireless are alternatively liable for the false marking of the AirCard 595 sold by Verizon as described above.

## COUNT III -- CLAIM FOR RELIEF AGAINST SAMSUNG

866.     Americans incorporates Paragraphs 1-865 of this Complaint as if fully set forth in this paragraph.

867.     On information and belief, despite the fact that the claims of an expired patent cannot afford patent protection, Samsung knowingly and intentionally marked upon, affixed to, or used in advertising in connection with the Sprint-Samsung Phones, the Airave, and the Samsung Products the patent number of one or more expired patents after their expiration with the intent to deceive the public.

868.     Samsung knew or reasonably should have known that marking the Sprint-Samsung Phones, the Airave, and the Samsung Products with expired patents or inapplicable patents violated

federal patent marking laws which authorize marking or advertising only existing and enforceable patent or patent pending claims on a "patented" article.

869.    On information and belief, Samsung intended to and has deceived the public by falsely marking (or causing to be marked) the patent protection status of the Sprint-Samsung Phones, the Airave, and the Samsung Products.

870.    On information and belief, each false marking by Samsung identified in this Complaint is likely to discourage or deter persons and companies from commercializing competing products or pursuing research and development of competing products or related products, which injures Americans and the public by stifling competition and increasing the cost of goods.

871.    On information and belief, Samsung's false marking of the Sprint-Samsung Phones, the Airave, and the Samsung Products has wrongfully quelled competition with respect to such products thereby causing harm to Americans, the United States, and the public.

872.    On information and belief, Samsung has wrongfully and illegally asserted patent monopolies which it does not possess and, as a result, has benefited by limiting competition with respect to its products referenced in this Complaint – such benefit coming at the expense of Americans and the public.

873.    Samsung has engaged in a pattern of falsely marking large numbers of its products with expired patents.

874.    Samsung's actions are in violation of 35 U.S.C. § 292.

## COUNT IV - CLAIM FOR RELIEF AGAINST SIERRA WIRELESS

875.    Americans incorporates Paragraphs 1-874 of this Complaint as if fully set forth in this paragraph.

876.    On information and belief, despite the fact that the claims of an expired patent cannot afford patent protection, Sierra Wireless knowingly and intentionally marked upon, affixed to, or

used in advertising in connection with the Sprint-Sierra Products and the Sierra Products the patent number of one or more expired patents after their expiration with the intent to deceive the public.

877.    Additionally, on information and belief, Sierra Wireless knowingly and intentionally marked upon, affixed to, or used in advertising in connection with many of the Sprint-Sierra Products, the Sierra Products, and the AirCard 595 sold by Verizon patent numbers which do not cover the marked product, as described above, with the intent to deceive the public.

878.    Sierra Wireless knew or reasonably should have known that marking its products with expired patents or inapplicable patents violated federal patent marking laws which authorize marking or advertising only existing and enforceable patent or patent pending claims on a "patented" article.

879.    On information and belief, Sierra Wireless intended to and has deceived the public by falsely marking (or causing to be marked) the patent protection status of the Sprint-Sierra Products, the Sierra Products and the AirCard 595 sold by Verizon.

880.    On information and belief, each false marking by Sierra Wireless identified in this Complaint is likely to discourage or deter persons and companies from commercializing competing products or pursuing research and development of competing products and or related products, which injures Americans and the public by stifling competition and increasing the cost of goods.

881.    On information and belief, Sierra Wireless's false marking of the Sprint-Sierra Products, the Sierra Products and the AirCard 595 sold by Verizon has wrongfully quelled competition with respect to such products thereby causing harm to Americans, the United States, and the public.

882.    On information and belief, Sierra Wireless has wrongfully and illegally asserted patent monopolies which it does not possess and, as a result, has benefited by limiting competition

with respect to the Sprint-Sierra Products, the Sierra Products and the AirCard 595 sold by Verizon, such benefit coming at the expense of Americans and the public.

883.   Sierra Wireless has engaged in a pattern of falsely marking large numbers of its products with design patents that do not cover its products and with expired patents.

884.   Sierra Wireless's actions with respect to the Sprint-Sierra Products, the Sierra Products, and the AirCard 595 sold by Verizon are in violation of 35 U.S.C. § 292.

## COUNT V - CLAIM FOR RELIEF AGAINST HTC

885.   Americans incorporates Paragraphs 1-884 of this Complaint as if fully set forth in this paragraph.

886.   On information and belief, despite the fact that the claims of an expired patent cannot afford patent protection, HTC knowingly and intentionally marked upon, affixed to, or used in advertising in connection with the Sprint HTC Phones and the HTC Phones the patent number of one or more expired patents after their expiration with the intent to deceive the public.

887.   HTC knew or reasonably should have known that marking its products with expired patents or inapplicable patents violated federal patent marking laws which authorize marking or advertising only existing and enforceable patent or patent pending claims on a "patented" article.

888.   On information and belief, HTC intended to and has deceived the public by falsely marking (or causing to be marked) the patent protection status of the Sprint HTC Phones and the HTC Phones.

889.   On information and belief, each false marking by HTC identified in this Complaint is likely to discourage or deter persons and companies from commercializing competing products or pursuing research and development of competing products and or related products, which injures Americans and the public by stifling competition and increasing the cost of goods.

890.     On information and belief, HTC's false marking of the Sprint HTC Phones and the HTC Phones has wrongfully quelled competition with respect to such products thereby causing harm to Americans, the United States, and the public.

891.     On information and belief, HTC has wrongfully and illegally asserted patent monopolies which it does not possess and, as a result, has benefited by limiting competition with respect to its products referenced in this Complaint – such benefit coming at the expense of Americans and the public.

892.     HTC has engaged in a pattern of falsely marking large numbers of its products with expired patents.

893.     HTC's actions are in violation of 35 U.S.C. § 292.

## COUNT VI - CLAIM FOR RELIEF AGAINST LG

894.     Americans incorporates Paragraphs 1-893 of this Complaint as if fully set forth in this paragraph.

895.     On information and belief, despite the fact that the claims of an expired patent cannot afford patent protection, LG knowingly and intentionally marked upon, affixed to, or used in advertising in connection with the Sprint LG Phones the patent number of one or more expired patents after their expiration with the intent to deceive the public.

896.     LG knew or reasonably should have known that marking its products with expired patents or inapplicable patents violated federal patent marking laws which authorize marking or advertising only existing and enforceable patent or patent pending claims on a "patented" article.

897.     On information and belief, LG intended to and has deceived the public by falsely marking (or causing to be marked) the patent protection status of the Sprint LG Phones.

898.     On information and belief, each false marking by LG identified in this Complaint is likely to discourage or deter persons and companies from commercializing competing products or

pursuing research and development of competing products and or related products, which injures Americans and the public by stifling competition and increasing the cost of goods.

899.   On information and belief, LG's false marking of the Sprint LG Phones has wrongfully quelled competition with respect to such products thereby causing harm to Americans, the United States, and the public.

900.   On information and belief, LG has wrongfully and illegally asserted patent monopolies which it does not possess and, as a result, has benefited by limiting competition with respect to its products referenced in this Complaint – such benefit coming at the expense of Americans and the public.

901.   LG has engaged in a pattern of falsely marking large numbers of its products with expired patents.

902.   LG's actions are in violation of 35 U.S.C. § 292.

## JURY DEMAND

Americans requests a jury trial for all issues triable by a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Americans respectfully requests that this Court:

a)      find that Sprint and/or Sierra Wireless falsely marked the Sprint-Sierra Products in violation of 35 U.S.C. §292(a) and render judgment in favor of Americans and against Sprint and/or Sierra Wireless;

b)      order an accounting for the past five years of all falsely marked Sprint-Sierra Products and fine, either jointly and severally or in the alternative, Sprint and/or Sierra Wireless $500, or such other amount as the Court determines, per falsely marked product to penalize Sprint and/or Sierra Wireless for their violation of

§292(a) and deter Sprint and/or Sierra Wireless and others from violating §292(a) in the future;

c)      find that Sprint and/or Samsung falsely marked the Sprint-Samsung Phones and the Airave in violation of 35 U.S.C. §292(a) and render judgment in favor of Americans and against Sprint and/or Samsung;

d)      order an accounting for the past five years of all falsely marked Sprint-Samsung Phones and Airaves and fine, either jointly and severally or in the alternative, Sprint and/or Samsung $500, or such other amount as the Court determines, per falsely marked product to penalize Sprint and/or Samsung for their violation of §292(a) and deter Sprint and/or Samsung and others from violating §292(a) in the future;

e)      find that Sprint and/or LG falsely marked the Sprint LG Phones in violation of 35 U.S.C. §292(a) and render judgment in favor of Americans and against Sprint and/or LG;

f)      order an accounting for the past five years of all falsely marked Sprint LG Phones and fine, either jointly and severally or in the alternative, Sprint and/or LG $500, or such other amount as the Court determines, per falsely marked product to penalize Sprint and/or LG for their violation of §292(a) and deter Sprint and/or LG and others from violating §292(a) in the future;

g)      find that Sprint and/or HTC falsely marked the Sprint HTC Phones in violation of 35 U.S.C. §292(a) and render judgment in favor of Americans and against Sprint and/or HTC;

h)      order an accounting for the past five years of all falsely marked Sprint HTC Phones and fine, either jointly and severally or in the alternative, Sprint and/or HTC $500, or such other amount as the Court determines, per falsely marked product to penalize

Sprint and/or HTC for their violation of §292(a) and deter Sprint and/or HTC and others from violating §292(a) in the future;

i)     direct that half of the fine be paid to the United States government pursuant to 35 U.S.C. § 292;

j)     find that Verizon and/or Sierra Wireless falsely marked the AirCard 595 sold by Verizon in violation of 35 U.S.C. §292(a) and render judgment in favor of Americans and against Verizon and/or Sierra Wireless;

k)     order an accounting for the past five years of all such falsely marked AirCard 595s and fine, either jointly and severally or in the alternative, Verizon and/or Sierra Wireless $500, or such other amount as the Court determines, per falsely marked product to penalize Verizon and/or Sierra Wireless for their violation of §292(a) and deter Verizon and/or Sierra Wireless and others from violating §292(a) in the future;

l)     direct that half of the fine be paid to the United States government pursuant to 35 U.S.C. § 292;

m)     find that Samsung falsely marked the Samsung Products in violation of 35 U.S.C. §292(a) and render judgment in favor of Americans and against Samsung;

n)     order an accounting for the past five years of all such falsely marked Samsung Products and fine Samsung $500, or such other amount as the Court determines, per falsely marked product to penalize Samsung for its violation of §292(a) and deter Samsung and others from violating §292(a) in the future;

o)     direct that half of the fine be paid to the United States government pursuant to 35 U.S.C. § 292;

p)    find that Sierra Wireless falsely marked the Sierra Products in violation of 35 U.S.C. §292(a) and render judgment in favor of Americans and against Sierra Wireless;

q)    order an accounting for the past five years of all such falsely marked Sierra Products and fine Sierra Wireless $500, or such other amount as the Court determines, per falsely marked product to penalize Sierra Wireless for its violation of §292(a) and deter Sierra Wireless and others from violating §292(a) in the future;

r)    direct that half of the fine be paid to the United States government pursuant to 35 U.S.C. § 292;

s)    find that HTC falsely marked the HTC Phones in violation of 35 U.S.C. §292(a) and render judgment in favor of Americans and against HTC;

t)    order an accounting for the past five years of all such falsely marked HTC Phones and fine HTC $500, or such other amount as the Court determines, per falsely marked product to penalize HTC for its violation of §292(a) and deter HTC and others from violating §292(a) in the future;

u)    direct that the remaining half of the fine be paid to Americans pursuant to 35 U.S.C. § 292;

v)    order the Defendants to develop and implement procedures, approved by the Court, to mitigate against false marking of their products in the future;

w)    order the Defendants to notify, to the extent reasonable, all the Defendants' customers who received any of the falsely marked products identified in this Complaint of the erroneous nature of the patent markings;

x)    enjoin the Defendants from further distributing any of the afore mentioned products with patent markings of expired patents or inapplicable patents;

y)      enjoin the Defendants, their officers, directors, agents, employees, and assigns from

mismarking or distributing products mismarked with the expired or inapplicable

patents enumerated herein in the future in violation of 35 U.S.C. § 292; and

z)      find this case exceptional with respect to Sprint, Verizon and Samsung under 35

U.S.C. § 285 and award Americans reasonable costs, expenses and attorneys' fees.

Dated this 29th day of April, 2011

By:    */s/ Reese McKnight*_____
       Reese P. McKnight (TX Bar # 24046400)
       rmcknight@fblawllp.com
       Adam V. Floyd (TX Bar # 00790699) (Lead Attorney)
       **F&B LLP**
       5113 S.W. Parkway, Suite 140
       Austin, Texas 78735
       Tel: (512) 681-1500
       Fax: (512) 681-1590

       ***Attorneys for Plaintiff***
       ***Americans for Fair Patent Use, LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2011, all counsel of record who are deemed to have consented to electronic service have been served with a copy of this document via the Court's CM/ECF system.

I also hereby certify that I served an electronic copy of this document on the following counsel for HTC Corp., who has consented to electronic service on its counsel.

Ramsey M. Al-Salam
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
ralsalam@perkinscoie.com

/s/ Dawn Crider
Dawn Crider, Paralegal
F&B LLP

23145v3